BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

HARRISON PATTERSON & O'CONNOR LLP
JAMES R. PATTERSON (211102)
ALISA A. MARTIN (224037)
402 West Broadway, 29th Floor
San Diego, CA 92101
Telephone: 619/756-6990
619/756-6991 (fax)
jpatterson@hpolaw.com
amartin@hoplaw.com

BONNETT FAIRBOURN FRIEDMAN
& BALINT, PC
TODD D. CARPENTER (234463)
600 West Broadway Suite 900
San Diego, CA 92101
Telephone: 619/756-6978
602/274-1199 (fax)
tcarpenter@bffb.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP R. CORVELLO, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY, <br><br> Defendant. | Case No.:  3:10-CV-05072-JSW <br><br> CLASS ACTION <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT <br><br> Date:  March 4, 2011 <br> Time:  1:30 p.m. <br><br> Courtroom: 11, 19th Floor <br> Judge:  Honorable Jeffrey S. White <br> Date Filed:  November 9, 2010 <br> Trial Date:  TBD |

BLOOD HURST & O'REARDON, LLP

TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................... 2

        A.      Wells Fargo's Participation in the HAMP ........................................ 2

        B.      Plaintiff's and Wells Fargo's HAMP Modification Agreement .......... 3

III.    STANDARD OF REVIEW ....................................................................... 4

IV.     ARGUMENT .............................................................................................. 4

        A.      Federal Law Does Not Preempt Plaintiff's State Law Claims............. 4

        B.      Plaintiff Does Not Bring a Direct Claim for Violation of HAMP ....... 8

        C.      Plaintiff Properly Alleges Breach of Contract .................................... 9

                1.      Mutual Consent ..................................................................... 10

                2.      The TPPA Contains Definite and Certain Terms.................... 11

                3.      Plaintiff Has Alleged Facts Showing Consideration.............. 12

                4.      Plaintiff Adequately Alleged Damages for Breach of Contract............ 14

                5.      The Statute of Frauds Does Not Apply and in Any Event, Wells
                        Fargo Would Be Estopped from Relying on Such a Defense................ 14

        D.      Plaintiff Is An Intended Third-Party Beneficiary of the SPA (Count II)........... 17

        E.      Plaintiff Properly Alleges Breach of The Implied Covenant (Count IV) .......... 21

        F.      Plaintiff States a Claim for Promissory Estoppel (Count III) ............................ 21

        G.      Plaintiff States a Claim Under the UCL (Count V) ......................................... 22

V.      CONCLUSION ........................................................................................... 25

00025192

BLOOD HURST & O'REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A. J. Industries, Inc. v. Ver Halen,*
    75 Cal. App. 3d 751 (1977)..................................................................................... 13

*Adams v. U.S. Bank,*
    No. 10-10567, 2010 U.S. Dist. LEXIS 65411
    (E.D. Mich. July 1, 2010) (Motion at 8) ................................................................ 8

*Aleem v. Bank of America,*
    No. 09-01812, 2010 U.S. Dist. LEXIS 11944
    (C.D. Cal. Feb. 9, 2010) ......................................................................................... 24

*Arce v. Kaiser Found. Health Plan, Inc.,*
    181 Cal. App. 4th 471 (2010)................................................................................. 23

*Ashcroft v. Iqbal,*
    129 S.Ct. 1937 (2009) ............................................................................................... 4

*Bank of America v. City and County of San Francisco,*
    309 F.3d 551 (9th Cir. 2002).................................................................................... 5

*Barnett Bank of Marion County, N.A. v. Nelson,*
    517 U.S. 25 (1996) .................................................................................................... 6

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) .................................................................................................. 5

*Blakemore v. Superior Court,*
    129 Cal. App. 4th 36 (2005).................................................................................... 24

*Byrne v. Laura,*
    52 Cal. App. 4th 1054 (1997).................................................................................. 16

*Colvig v. RKO General, Inc.,*
    232 Cal. App. 2d 56 (1965)..................................................................................... 14

*County of Santa Clara v. Astra USA, Inc.,*
    588 F.3d 1237 (9th Cir. 2009)............................................................................ 18, 19

*Cuomo v. Clearing House Association, L.L.C.,*
    129 S. Ct. 2710 (2009)............................................................................................... 5

*Curcio v. Wachovia Mortgage Corp.,*
    No. 09-1498, 2009 U.S. Dist. LEXIS 96155
    (S.D. Cal. Oct. 14, 2009)........................................................................................... 7

BLOOD HURST & O'REARDON, LLP

00025192

*DeLeon v. Wells Fargo Bank, N.A.,*
  No. 10-01390, 2010 WL 4285006
  (N.D. Cal. Oct. 22, 2010) ...................................................................................... 7

*Durmic v. J.P. Morgan Chase Bank, NA,*
  No. 10-10380, 2010 U.S. Dist. LEXIS 124603
  (D. Mass. Nov. 24, 2010) ............................................................................ 13, 21, 22

*Farmers Ins. Exchange v. Superio Court*
  2 Cal. 4th 377, 383 (1992) .................................................................................. 24

*Faulkner v. Onewest Bank, FSB,*
  No. 10-12, 2010 U.S. Dist. LEXIS 59688
  (N.D. W.Va. June 16, 2010) ............................................................................ 11, 15

*Fenning v. Glenfed, Inc.,*
  40 Cal. App. 4th 1285 (1995) ............................................................................. 6, 8

*Gaitan v. Mortgage Elec. Registration Sys.,*
  No. EDCV 09-1009, 2009 U.S. Dist. LEXIS 97117
  (C.D. Cal. Oct. 5, 2009) ....................................................................................... 9

*Gibson v. World Savings and Loan Association,*
  103 Cal. App. 4th 1291 (2002) ............................................................................. 6

*Grant v. Aurora Loan Services, Inc.,*
  No. 09-08174, 2010 U.S. Dist. LEXIS 98034
  (C.D. Cal. Sept. 10, 2010) .................................................................................. 12

*Hanson v. Wells Fargo Home Mortgage,*
  No. 10-00318, 2010 U.S. Dist. LEXIS 85629
  (E.D. Ark. Aug. 10, 2010) ............................................................................. 16, 22

*Harris v. Time, Inc.,*
  191 Cal. App. 3d 449 (1987) ............................................................................... 13

*House v. Lala,*
  214 Cal. App. 2d 238 (1963) ........................................................................... 12-13

*In re Diego's Inc.,*
  88 F.3d 775 (9th Cir. 1996) ................................................................................ 16

*Iorio v. Allianz Life Ins. Co. of N. Am.,*
  No. 05-633, 2008 U.S. Dist. LEXIS 118344
  (S.D. Cal. July 8, 2008) ...................................................................................... 24

*Jefferson v. Chase Home Finance,*
  No. 06-6510, 2008 U.S. Dist. LEXIS 101031
  (N.D. Cal. April 29, 2008) .................................................................................... 6

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   *Kasky v. Nike, Inc.*,
2       27 Cal. 4th 939 (2002) ........................................................................... 24

3   *Klamath Water Users Protective Ass'n v. Patterson*,
        204 F.3d 1206 (9th Cir. 2000)................................................................. 18
4
5   *Kroske v. U.S. Bank Corp.*,
        432 F.3d 976 (9th Cir. 2005).................................................................... 5

6   *Lucero v. Countrywide Bank N.A.*,
        No. 09-1742, 2010 U.S. Dist. LEXIS 45340
7       (S.D. Cal. May 10, 2010) ......................................................................... 24

8   *Marques v. Wells Fargo Home Mortgage Inc.*,
        No. 09-CV-1985, 2010 U.S. Dist. LEXIS 81879
9       (S.D. Cal. August 12, 2010)................................................... 9, 17, 19, 20
10
    *Martinez v. Wells Fargo Home Mortg., Inc.*,
11      5898 F.3d 549 (9th Cir. 2010)......................................................... 5, 6, 7, 8

12  *McCurdy v. Wells Fargo Bank, N.A.*,
        No. 10-00880, 2010 U.S. Dist. LEXIS 110769
13      (D. Nev. Oct. 15, 2010) ............................................................................ 6

14  *McKell v. Washington Mut., Inc.*,
15      142 Cal. App. 4th 1457 (2006)............................................................ 7, 24

16  *Mehta v. Wells Fargo Bank, N.A.*,
        No. 10-944, 2010 U.S. Dist. LEXIS 88336
17      (S.D. Cal. Aug. 26, 2010)......................................................................... 13

18  *Morey v. NextFoods, Inc.*,
        No. 10-761, 2010 U.S. Dist. LEXIS 67990
19      (S.D. Cal. June 7, 2010) .................................................................... 14, 25

20  *Munson v. Del Taco, Inc.*,
21      46 Cal. 4th 661 (2009) ............................................................................. 24

22  *Newsom v. Countrywide Home Loans, Inc.*,
        714 F. Supp. 2d 1000 (N.D. Cal. 2010) ................................................... 7
23
24  *Quinteros v. Aurora Loan Services*,
        No. 09-2200, 2010 U.S. Dist. LEXIS 108449
25      (E.D. Cal. September 30, 2010) ............................................................... 17

26  *Raedeke v. Gibraltar Savings & Loan Ass'n*,
        10 Cal.3d 665 (1974) ........................................................................ 13, 15
27
28  *RDF Media Ltd. v. Fox Broadcasting Co.*,
        372 F. Supp. 2d 556 (C.D. Cal. 2005).......................................................4

*Reyes v. Saxon Mortgages Services, Inc.*,
  No. 09-1366, 2009 U.S. Dist. LEXIS 125235
  (S.D. Cal. Nov. 5, 2009) ............................................................................. 17

*Sampson v. Wells Fargo Home Mortgage, Inc.*,
  No. 10-08836, 2010 U.S. Dist. LEXIS 137635
  (C.D. Cal. Nov. 19, 2010) ...................................................................... 17, 19

*Sanders v. Kennedy*,
  794 F.2d 478 (9th Cir. 1986) ...................................................................... 22

*Santana Row Hotel Partners, L.P. v. Zurich America Ins. Co.*,
  446 F. Supp. 2d 1108 (N.D. Cal. 2006) ...................................................... 12

*Saunders v. Superior Court*,
  27 Cal. App. 4th 832 (1994) ....................................................................... 24

*Secrest v. Security National Mortgage Loan Trust 2002-2*,
  167 Cal. App. 4th 544 (2008) ...................................................................... 17

*Singh v. Wash. Mut. Bank*,
  No. 09-2771, 2009 U.S. Dist. LEXIS 73315
  (N.D. Cal. Aug. 19, 2009) ........................................................................... 25

*Sipe v. Countrywide Bank*,
  690 F. Supp. 2d 1141 (E.D. Cal. 2010) ...................................................... 12

*Smith v. Jackson*,
  84 F.3d 1213 (9th Cir. 1996) ......................................................................... 4

*Smith v. Wells Fargo Bank, N.A.*,
  135 Cal. App. 4th 1463 (2006) .................................................................... 24

*Snyder v. Wachovia Mortgage Corp.*,
  No. 10-1168, 2010 WL 2736945 (E.D. Cal. July 12, 2010) .......................... 7

*Stanton v. Ocwen Loan Servicing, LLC*,
  No. 1:10CV2, 2010 U.S. Dist. LEXIS 102525
  (D. Utah Sept. 28, 2010) ............................................................................. 17

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
  17 Cal. 4th 553 (1998) ................................................................................ 24

*StreamCast Networks, Inc. v. IBIS LLC*,
  No. 05-04239, 2006 U.S. Dist. LEXIS 97607
  (C.D. Cal. May 1, 2006) .............................................................................. 14

*Sutherland v. Barclays America/Mortgage Corp.*,
  53 Cal. App. 4th 299 (1997) ....................................................................... 16

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*U.S. Ecology, Inc. v. State,*
   129 Cal. App. 4th 887 (2005)..................................................................... 21

*Village of DePue, Ill. v. Exxon Mobil Corp.,*
   537 F.3d 775 (7th Cir. 2008)........................................................................ 5

*Vissuet v. Indymac Mortg. Svcs.,*
   No. 09-2321, 2010 U.S. Dist. LEXIS 26241
   (S.D. Cal. Mar. 19, 2010)........................................................... 15, 16, 17

*Warren v. Merrill,*
   143 Cal. App. 4th 96 (2006)....................................................................... 15

*Watters v. Wachovia Bank, N.A.,*
   550 U.S. 1 (2007)........................................................................................... 5

*White v. Wachovia Bank, N.A.,*
   563 F. Supp. 2d 1358 (N.D. Ga. 2008) ...................................................... 6

*Williams v. Geithner,*
   No. 09-1959, 2009 U.S. Dist. LEXIS 104096
   (D. Minn. Nov. 9, 2009)............................................................................... 8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 8 ........................................................................................................ 14

12 U.S.C. (2010)
   §5201............................................................................................................ 2
   §5219........................................................................................................ 2, 3

15 U.S.C.
   §3009.......................................................................................................... 24

Business & Professions Code
   §17200................................................................................................. *passim*
   §17204........................................................................................................ 23

Civil Code
   §1572.......................................................................................................... 24
   §1573.......................................................................................................... 24
   §1698.......................................................................................................... 15
   §1698(c)...................................................................................................... 15
   §1698(d)...................................................................................................... 16
   §1709.......................................................................................................... 24
   §1710.......................................................................................................... 24
   §1711.......................................................................................................... 24

12 C.F.R.
§34.4(a)(10)............................................................................................................... 5, 6

**SECONDARY AUTHORITY**

*Restatement (Second) of Contracts* (2009)
§205.............................................................................................................................. 21

BLOOD HURST & O'REARDON, LLP

1    Plaintiff Phillip Corvello files this opposition to Defendant Wells Fargo Bank N.A.

2    d/b/a Wells Fargo Home Mortgage d/b/a America's Servicing Company's ("Defendant" or

3    "Wells Fargo") Motion to Dismiss Plaintiff's Class Action Complaint (the "Motion").[1]    For

4    the reasons set forth below, the Motion should be denied.

5    ## I.    INTRODUCTION

6    Wells Fargo contractually agreed to provide plaintiff with a permanent mortgage loan

7    modification as long as plaintiff made three "trial plan" payments, documented his income and

8    met the objective criteria for eligibility.  The contract, known as the Trial Period Plan

9    Agreement ("TPPA"), was drafted and offered by Wells Fargo and accepted by plaintiff.

10    Plaintiff fulfilled his contractual obligations, but Wells Fargo did not provide the permanent

11    loan modification.  Instead, Wells Fargo collected months of trial plan payments, repeatedly

12    made unnecessary and duplicative information requests, repeatedly misevaluated plaintiff's

13    plan and delayed.  Now, Wells Fargo seeks to escape liability for its breach by hiding behind

14    the very law which spurred the creation of the contract.

15    Further, under a separate breach of contract theory, plaintiff is the third-party

16    beneficiary of a contract between Wells Fargo and Fannie Mae.  As a condition to receiving

17    money and a host of other benefits from the federal government through the Troubled Asset

18    Relief Program or "TARP," Wells Fargo agreed to participate in the federal Home Affordable

19    Modification Program ("HAMP").  To participate, Wells Fargo entered into a Servicer

20    Participation Agreement ("SPA") with Fannie Mae.  The SPA required Wells Fargo to offer

21    plaintiff and others like him a loan modification program in accordance with the criteria set

22    forth in the SPA.  ¶¶3-4 and Ex. A (the SPA).  Plaintiff is an intended third-party beneficiary

23    of the SPA.  By failing to provide plaintiff with a permanent loan modification, collecting

24    more than three months of trial plan payments, making unnecessary and duplicative

25    information requests, misevaluating plaintiff's plan and delaying, Wells Fargo breached its

26    contractual obligations under the SPA, thereby harming plaintiff.

27

28    ---

[1]    The Class Action Complaint (Dkt. No. 1) is referred to as the "Complaint."  All "¶"
references are to the Complaint; all "Ex." references are to exhibits attached to the Complaint.

BLOOD HURST & O'REARDON, LLP

The Complaint asserts claims for breach of TPPA contract (Counts I), breach of the SPA contract (Count II), promissory estoppel (Count III), breach of the implied covenant of good faith and fair dealing (Count IV), violations of the Unfair Competition Law, Cal. Business & Professions Code §17200 *et seq.* (the "UCL") (Count V) and declaratory relief (Count VI). Wells Fargo seeks dismissal of Counts I through V. Its Motion should be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    Wells Fargo's Participation in the HAMP

In the aftermath of the collapse of the U.S. housing market and foreclosure crisis, Congress created the HAMP by passing the Emergency Economic Stabilization Act, as amended by the American Recovery and Reinvestment Act, 12 U.S.C. §§5201, *et seq.* (2010). HAMP authorized the Treasury Department to enter into SPAs with the nation's largest mortgage servicers, including Wells Fargo, to "facilitate loan modifications and to prevent avoidable foreclosures." 12 U.S.C. §5219 (2010).

The SPA at issue requires Wells Fargo to perform a number of actions to benefit homeowners whose mortgages it services. Ex. A (SPA). Under the terms of the SPA, Wells Fargo "***shall perform***" loan modifications and other foreclosure prevention services described in all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" that the Treasury Department or its agents issue. *Id.* at §§1.A., 2.A. The Supplemental Directives ("SD") issued by the Treasury Department details the loan modification process and the rights and obligations of participating servicers and borrowers. Ex. F (SD 09-01).

Wells Fargo must determine HAMP eligibility for all loans it services that are more than 60 days delinquent or for which a borrower requests an evaluation. Ex. F (SD 09-01) at 3-4. For possible HAMP eligible loans, Wells Fargo must run a Net Present Value ("NPV") test to determine if modifying the loan will be profitable for the beneficial owners of the notes. *Id.* at 4; ¶¶52-53. If the outcome of the NPV test is "deemed positive … [Wells Fargo] ***MUST offer***" the borrower a TPPA during which the borrower will pay reduced monthly mortgage

BLOOD HURST & O'REARDON, LLP

1    payments on a trial basis. *Id.* (emphasis added). Upon successful completion of the TPPA's

2    term, Wells Fargo is required to offer the qualified borrower a permanent loan modification.

3    Ex. F (SD 09-01) at 18; ¶¶60-63. No provision of the SPA authorizes Wells Fargo to refuse to

4    extend an offer of a permanent loan modification to a qualifying borrower.

5                    **B.    Plaintiff's and Wells Fargo's HAMP Modification Agreement**

6            In May 2009, plaintiff Phillip Corvello sought a loan modification from Wells Fargo

7    because he was struggling to make his mortgage payments. ¶72. On May 27, 2009, Wells

8    Fargo sent Mr. Corvello information about the permanent loan modification program and how

9    to request assistance. ¶73, Ex. J (letter from Wells Fargo to plaintiff). Wells Fargo also

10   required that plaintiff complete an application seeking personal financial information and

11   submit copies of paystubs if plaintiff wanted to participate in the program. Ex. J. On June 25,

12   2009, Wells Fargo sent plaintiff a "Financial Worksheet," which plaintiff completed and

13   returned along with the other requested information on July 10, 2009. ¶74.

14           On July 17, 2009, Wells Fargo sent plaintiff the TPPA with a cover letter stating, "If

15   you qualify under the federal government's Home Affordable Modification program and

16   comply with the terms of the Trial Period Plan, *we will modify* your mortgage loan and you

17   can avoid foreclosure." ¶75, Ex. K (emphasis added). Wells Fargo's offer instructed plaintiff

18   to "Act Now!" and that "To accept this offer, and see if you qualify for a Home Affordable

19   Modification, send the 5 items listed below … not later than 08/16/2009." *Id.* The TPPA

20   offered by Wells Fargo and signed by plaintiff stated that "If I am in compliance with this

21   Loan Trial Period and my representations in Section 1 continue to be true in all material

22   respects, then the Lender *will provide me* with a Loan Modification Agreement." Ex. G.

23   (emphasis added). Plaintiff timely complied with all of these requirements, including signing

24   and returning the TPPA. ¶¶76, 78, 79. As required by the terms of the TPPA, plaintiff made

25   trial plan payments of $2,185.22 on August 16, 2009, October 1, 2009, and November 1, 2009.

26   *Id.*

27           Although plaintiff complied with all of the TPPA requirements, Wells Fargo never

28   offered him a permanent mortgage modification.

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    **III.    STANDARD OF REVIEW**

2          Under Rule[2] 12(b)(6), "[a]ll allegations of material facts are taken as true and construed

3    in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217

4    (9th Cir. 1996). A motion to dismiss for failure to state a claim "is generally viewed with

5    disfavor and is rarely granted." *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d

6    556, 560 (C.D. Cal. 2005) (citing *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249

7    (9th Cir. 1997)). If a complaint contains well-pleaded factual allegations, a court "should

8    assume their veracity and then determine whether they plausibly give rise to an entitlement to

9    relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). The Complaint easily meets this

10   standard.

11   **IV.    ARGUMENT**

12         **A.    Federal Law Does Not Preempt Plaintiff's State Law Claims**

13         Wells Fargo argues that the National Banking Act ("NBA") and a regulation of the

14   Office of the Comptroller of the Currency ("OCC") preempt plaintiff's state law claims

15   because the claims would impinge on its ability to service mortgage loans. Motion at 6. Wells

16   Fargo's arguments fail. Plaintiff's claims are entirely consistent with these laws and

17   regulations. No regulation permits Wells Fargo to engage in deceptive, manipulative and

18   unfair conduct, breach the terms of its contractual obligations, or ignore HAMP's mandates.

19   Plaintiff is not attempting to use state law to dictate how Wells Fargo must service its loans

20   and application of the state laws would not otherwise significantly impair Wells Fargo's

21   servicing abilities. In fact, the HAMP Handbook expressly states that HAMP servicers are

22   subject to "all federal, state, and local laws … that apply to any of its practices related to

23   HAMP," including laws that prohibit unfair or deceptive acts or practices. Ex. C (Handbook)

24   at 13-14. Moreover, under controlling Ninth Circuit authority the claims are not preempted.[3]

25

26   [2]    Unless otherwise stated, references to "Rules" are to the Federal Rules of Civil
     Procedure.

27

28   [3]    Wells Fargo's preemption argument fails to distinguish and analyze plaintiff's state law
     claims separately. Counts I – IV regard defendant's breaches of the TPPA and SPA contracts.
     Count V is for violations of the UCL's unlawful, unfair, fraudulent, and false advertising

1    The "[b]usiness activities of national banks are controlled by the National Bank Act ...

2    and regulations promulgated thereunder by the Office of the Comptroller of the Currency."

3    *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 6 (2007). However, the NBA does not preempt

4    the field of banking. *Martinez v. Wells Fargo Home Mortg., Inc.,* 5898 F.3d 549, 555 (9th Cir.

5    2010). "Federally chartered banks are subject to state laws of general application in their daily

6    business to the extent such laws do not conflict with the letter or the general purposes of the

7    NBA." *Watters,* 550 U.S. at 11; *see also Cuomo v. Clearing House Association, L.L.C.,* 129 S.

8    Ct. 2710, 2720 (2009) ("States ... have always enforced their general laws against national

9    banks"); *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 558-59 (9th Cir.

10   2002) (state regulation of national banks is permissible "when it does not prevent or

11   significantly interfere with the national bank's exercise of its powers"). Specifically, states

12   "retain some power to regulate national banks in areas such as contracts, debt collection,

13   acquisition and transfer of property, and taxation, zoning, criminal, and tort law." *Bank of*

14   *America,* 209 F.3d at 559. "In fact, the OCC has specifically cited the UCL in an advisory

15   letter cautioning banks that they may be subject to [] laws that prohibit unfair or deceptive acts

16   or practices." *Martinez,* 598 F.3d at 555 (citing OCC advisory letter). Moreover, there is a

17   presumption against federal preemption, which Wells Fargo must overcome. *Bates v. Dow*

18   *Agrosciences LLC,* 544 U.S. 431, 449 (2005); *Village of DePue, Ill.,* 537 F.3d at 786. The

19   presumption remains in effect when the state legislation, such as the UCL, is a law of general

20   application which was enacted pursuant to the State's historic police powers. *Kroske v. U.S.*

21   *Bank Corp.,* 432 F.3d 976, 981 (9th Cir. 2005).

22   Defendant here focuses on an OCC regulation that allows national banks to "make real

23   estate loans ... without regard to state law limitations concerning ... [p]rocessing, origination,

24   servicing, sale or purchase of, or investment or participation, mortgages." 12 C.F.R.

25   §34.4(a)(10). Defendant argues that "[f]ederal law thus preempts any actions that obstruct a

26   national bank's ability to fully exercise its real estate lending powers, including its right to

27

28   prongs. Wells Fargo bears the burden of establishing that each of the claims are preempted.
*Village of DePue, Ill. v. Exxon Mobil Corp.,* 537 F.3d 775, 786 (7th Cir. 2008).

BLOOD HURST & O'REARDON, LLP

00025192

1    service its loans without state law interference." Motion at 6. To establish preemption of state

2    laws under its conflict preemption theory defendant is required to show that application of the

3    particular state laws would "forbid, or … impair significantly, the exercise of a power that

4    Congress explicitly granted." *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 33

5    (1996). Thus, the conflict preemption test requires two findings: (1) that conduct for which

6    defendant asserts preemption involves some power expressly authorized by the NBA, or

7    incidental to such power, and (2) that application of the state law would forbid or significantly

8    impair the exercise of that power.

9        Wells Fargo fails to establish either of these elements of conflict preemption. Contrary

10    to defendant's characterization of plaintiff's claims, they make no effort to dictate whether and

11    under what circumstances it should modify a loan. Motion at 6. Rather, plaintiff's claims

12    relate to defendant's failure to abide by its own agreements under the TPPA and SPA to

13    extend mortgage modifications, its failure to follow the letter and spirit of applicable laws, and

14    its deceptive and manipulative conduct with respect to plaintiff's application for a loan

15    modification. ¶¶6, 11-12, 64-70. Nothing in the NBA permits Wells Fargo to engage in its

16    conduct. "Laws of general application, which merely require all businesses (including banks)

17    to refrain from misrepresentations and abide by contracts and representations to customers do

18    not impair a bank's ability to exercise its lending powers." *Jefferson v. Chase Home Finance*,

19    No. 06-6510, 2008 U.S. Dist. LEXIS 101031, at *29 (N.D. Cal. April 29, 2008) (UCL claims

20    concerning mortgage prepayment misrepresentations were not preempted due to 12 C.F.R.

21    §34.4(a)(10)).[4]  Moreover, claims to enforce the mandates of HAMP cannot be preempted.

22

23    [4]   *Martinez*, 598 F.3d at 556 (collecting cases holding that state laws claims about
deceptive practices are not preempted); *Gibson v. World Savings and Loan Association*, 103
24    Cal. App. 4th 1291, 1303-4 (2002) (UCL claims requiring defendant to comply with its
contracts and refrain from deceptive conduct not preempted by the NBA); *Fenning v. Glenfed,*
25    *Inc.*, 40 Cal. App. 4th 1285, 1299 (1995) (claims that brokerage engaged in fraud,
misrepresentation, and deceptive advertising were not preempted); *White v. Wachovia Bank,*
26    *N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008) (claim under Georgia Fair Business Practices Act
that bank manipulated the posting of transactions to an account in order to impose overdraft
27    fees not preempted); *McCurdy v. Wells Fargo Bank, N.A.*, No. 10-00880, 2010 U.S. Dist.
LEXIS 110769, at *12-*13 (D. Nev. Oct. 15, 2010) (citing *Martinez* and stating that a claim
28    that "merely requires Wells Fargo to exercise its lending powers fairly and honestly" is not
preempted by the NBA).

BLOOD HURST & O'REARDON, LLP

1    *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1485-86 (2006) ("Insofar as

2    plaintiffs are using the UCL to enforce federal law as set forth in RESPA, they are not seeking

3    to enforce 'state laws affecting the operations of federal savings associations.'"). Thus,

4    conflict preempt does not bar plaintiff's state law claims.

5         Wells Fargo relies solely on inapplicable opinions about unfair and undisclosed

6    mortgage fees and failing to provide notices before foreclosure to support its straw-man

7    argument that plaintiff's state law claims would interfere with defendant's right to service

8    loans. Motion at 7-8. For example, in *Newsom v. Countrywide Home Loans, Inc.*, 714 F.

9    Supp. 2d 1000, 1010-11 (N.D. Cal. 2010), the court found conflict preemption where

10   plaintiff's allegations concerned hidden and unfair loan terms. *See also* Motion at 7-8 (citing

11   *Nguyen v. Wells Fargo Bank, N.A.*, No. 10-4081, 2010 U.S. Dist. LEXIS 113246, at *27, *30

12   (N.D. Cal. Oct. 27, 2010) (defendant failed to properly disclose loan terms and improperly

13   approve him for a loan)); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-01390, 2010 WL

14   4285006, at *6-*7 (N.D. Cal. Oct. 22, 2010) (claims that defendant failed to provide

15   appropriate notice of a trustee sale were preempted, but fraud or violation of a contractual

16   agreement may not be preempted); *Snyder v. Wachovia Mortgage Corp.*, No. 10-1168, 2010

17   WL 2736945 (E.D. Cal. July 12, 2010) (claims preempted in a complaint which failed to

18   specify the terms of a modification agreement or even if it was written or oral)). Wells Fargo

19   states that the court in *Curcio v. Wachovia Mortgage Corp.*, No. 09-1498, 2009 U.S. Dist.

20   LEXIS 96155 (S.D. Cal. Oct. 14, 2009), found preemption because state law claims about

21   refusing to modify loans conflicted with Wachovia's loan servicing rights. Motion at 7.

22   Importantly, and different than here, *Curcio* is not about Wachovia's failure to comply with

23   the terms of a mortgage or modification agreement, rather, plaintiff alleged that Wachovia

24   should have modified his loan because (1) he could afford to make payments if Wachovia did

25   so, and (2) modification of his loan would be more profitable for Wachovia than foreclosure.

26   *Curcio*, 2009 U.S. Dist. LEXIS 96155 at *16-*18.[5]

27

28   [5]   Wells Fargo does not cite *Martinez*, 598 F.3d 549, where the Ninth Circuit recently
     affirmed preemption of UCL claims because the underlying allegations were that Wells

BLOOD HURST & O'REARDON, LLP

00025192

1  Wells Fargo ignored eligible HAMP participants; promised to modify mortgages and

2  accepted trial period payments, and then reneged on those promises; and manipulated the

3  underwriting process and NPV criteria, resulting in the improper rejection of modification

4  applicants.  ¶¶6, 11-12, 64-70.  As one California appellate court noted, "the state cannot

5  dictate to [a] Bank how it can or cannot operate, but it can insist that, however [a] Bank

6  chooses to operate, it do so free from fraud and other deceptive practices." *Fenning*, 40 Cal.

7  App. 4th at 1299.  Plaintiff's claims exclusively focus on defendant's practices with respect to

8  agreements it made and obligations it undertook.  Accordingly, the NBA does not preempt

9  plaintiff's state law claims.

10  **B.    Plaintiff Does Not Bring a Direct Claim for Violation of HAMP**

11  Wells Fargo argues that plaintiff cannot directly sue under HAMP.  Motion at 8-11.

12  Whether or not plaintiff can, he does not seek to do so here.  Instead, plaintiff sues for breach

13  of the TPPA, a private contract between plaintiff and Wells Fargo.  He also sues as a third-

14  party beneficiary under the SPA, a private contract between Wells Fargo and Fannie Mae.

15  Because plaintiff does not seek to bring a private right of action under HAMP, Wells Fargo's

16  argument fails.

17  The case upon which Wells Fargo principally relies, *Williams v. Geithner*, No. 09-

18  1959, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009), is inapplicable because

19  plaintiff does not allege a constitutionally protected property right in a permanent

20  modification.  Similarly, *Adams v. U.S. Bank*, No. 10-10567, 2010 U.S. Dist. LEXIS 65411

21  (E.D. Mich. July 1, 2010) (Motion at 8), does not address a loan servicer's duties under a

22  TPPA or SPA.  Instead, the *Adams* court dismissed the claim alleging fraud because the

23  plaintiff failed to allege the fraud elements of reliance or injury.  *Id.* at *8-10.

24

25

26  Fargo's mortgage settlement fees were too high.  *Id.* at 556-57.  The Ninth Circuit held that

27  plaintiff's claims under the UCL were preempted because of OCC regulations relating to setting fees.  *Id.* ("the OCC has clearly provided how these fees are to be determined").  In

28  stark contrast, the underlying facts here are about breaches of contracts and deceptive conduct that do not impair a bank's ability to exercise its real estate lending powers.  *Id.* at 555.

00025192

BLOOD HURST & O'REARDON, LLP

1    Wells Fargo also cites *Gaitan v. Mortgage Elec. Registration Sys.*, No. EDCV 09-

2    1009, 2009 U.S. Dist. LEXIS 97117 (C.D. Cal. Oct. 5, 2009). Motion at 9. However, the

3    plaintiff in *Gaitan* did not allege a violation of HAMP. Instead, the opinion addressed whether

4    a private right of action was created under a wholly different state statute. *See Gaitan*, 2009

5    U.S. Dist. LEXIS 97117, at *20 n. 5.

6    Undaunted, Wells Fargo contends that it would be discouraged from participating in

7    HAMP, thereby weakening HAMP, if borrowers could enforce their (separate) contractual

8    rights by filing lawsuits. Motion at 10. Plaintiff does not seek to impose new obligations on

9    Wells Fargo, but only to enforce the promises that Wells Fargo made. Of course, permitting

10   borrowers to enforce Wells Fargo's contractual obligations under the TPPA and SPA actually

11   furthers the goals of HAMP, in addition to allowing plaintiff to obtain the benefit of his

12   bargain.

13   At any rate, private enforcement of these private contracts is the only way plaintiff and

14   the class can recover for Wells Fargo's breach. *See Marques v. Wells Fargo Home Mortgage*

15   *Inc.*, No. 09-CV-1985, 2010 U.S. Dist. LEXIS 81879 (S.D. Cal. August 12, 2010). As the

16   *Marques* court explained, Fannie Mae's role in overseeing servicer compliance is "designed to

17   ensure [the servicer's] accountability and protect the Treasury from overpaying for loans

18   which were modified, paying for modifying ineligible loans, or being otherwise overcharged."

19   *Marques*, 2010 U.S. Dist. LEXIS 81879, at *17. This role is independent from, and

20   compatible with, private enforcement of the SPA and TPPA because Fannie Mae's

21   enforcement power does not apply to "disputes between [a servicer] and borrowers which arise

22   when [the servicer] refuses to modify a loan." *Id.* Since Fannie Mae's oversight powers do

23   not apply to a servicer's refusal to modify a loan, these powers also do not preclude private

24   enforcement of the SPA and TPPA contracts. *Id.*

25   **C.    Plaintiff Properly Alleges Breach of Contract**

26   Wells Fargo next makes a "kitchen sink" argument concerning the contract claims: (1)

27   mutual consent to a permanent loan modification was not alleged; (2) the TPPA does not

28   contain definite and certain terms; (3) facts showing "consideration" where not alleged; (4)

BLOOD HURST & O'REARDON, LLP

00025192

PLTF'S OPP TO DEF'S MOTION TO DISMISS – Case No. 3:10-CV-05072-JSW                    9

1   damages caused by the breach where not alleged; and (5) the statute of frauds bars the contract

2   claim. The arguments are built on fantasy rather than the Complaint's allegations.

### 1.   Mutual Consent

4   Wells Fargo first argues that TPPA cannot constitute an enforceable contract because

5   the parties did not mutually consent to a contract whereby plaintiff's loan would be

6   permanently modified. It claims that the Complaint alleges that anyone who obtained a

7   written TPPA is guaranteed a permanent modification if the trial plan payments are made and

8   the requested documents are submitted, without more. Motion at 12. Nonsense. The

9   Complaint alleges that Wells Fargo is contractually obligated to provide a permanent loan

10  modification if plaintiff timely submitted trial period payments and the specified

11  documentation, ***and*** otherwise meets the qualifications for a permanent loan modification

12  pursuant to the terms of the TPPA. ¶¶1, 60-63; Ex. G (TPPA). As plaintiff alleges, under the

13  TPPA, Wells Fargo "will provide" plaintiff a permanent loan modification if he made his trial

14  period payments and remained financially eligible under the criteria specified by the TPPA.

15  ¶¶13, 61; Ex. G (TPPA).

16  Wells Fargo's reference to certain HAMP guidelines is a red herring. Those guidelines

17  merely state that servicers may use recent verbal financial information to assess borrower

18  eligibility, but that eligibility must be verified before a permanent modification is given. *See*

19  Ex. F (SD 09-01) at 5, 1 ("Supplemental Directive 09-01 gave servicers the option of placing a

20  borrower into a trial period plan based on verbal financial information obtained from the

21  borrower, subject to later verification during the trial period."); *id.* at 1 ("Further, a servicer

22  must not execute the Trial Period Plan or return it to the borrower until after confirming the

23  borrower meets all eligibility criteria based on the borrower's verified documentation."). The

24  point is, once that information was verified, plaintiff should have received a permanent loan

25  modification pursuant to the terms of the TPPA. Failure to do so was a breach of the TPPA.

26  Not only is this what plaintiff alleges, but it is precisely what the guidelines provided:

27  "***If the borrower complies with the terms and conditions of the Trial Period Plan, the loan***

28

BLOOD HURST & O'REARDON, LLP

1    *modification will become effective* on the first day of the month following the trial period as

2    specified in the Trial Period Plan." *Id.* at 17-18 (emphasis added).

3        Wells Fargo further contends that "nowhere" has plaintiff alleged that his income

4    qualified him for a permanent modification. Motion at 13. Not true. ¶19 ("plaintiff was

5    eligible for a loan modification"); ¶¶74-80, 93 ("Plaintiff ... satisfied all conditions precedent

6    of Wells Fargo's contract offer, including ... maintaining the representations made in Section

7    1 of the Trial Period Plan Agreement.").

8                    **2.    The TPPA Contains Definite and Certain Terms**

9        Continuing its "Alice in Wonderland" approach to its motion to dismiss, Wells Fargo

10    next claims that plaintiff does not allege definite and certain terms of the TPPA. Motion at 14-

11    15. Wells Fargo states: "Specifically, plaintiff has alleged no document or other evidence that

12    provides the principal amount of the modified loan, the term of the modified loan, the monthly

13    payment amount, the applicable interest rate, or the amount of escrow payments owed, if

14    any.... It is not enough for plaintiff to simply argue that Wells Fargo promised to provide a

15    permanent modification." Motion at 14. Actually, it is enough. Plaintiff alleges that Wells

16    Fargo breached the TPPA because it promised to provide a permanent loan modification with

17    all of these terms, but never did. The terms of the TPPA were clear and unambiguous:

18    plaintiff agreed to make timely trial period payments and maintain financial eligibility. ¶¶13,

19    61, 78, 93; Ex. G (TPPA). In exchange, Wells Fargo "will provide" a permanent loan

20    modification, but it failed to do so. *Id.* A plaintiff states a valid claim for breach of contract

21    where he complied with all conditions of the loan modification agreement, but the bank

22    refused to modify the loan. *See Faulkner v. Onewest Bank, FSB*, No. 10-12, 2010 U.S. Dist.

23    LEXIS 59688 at *22-*23 (N.D. W.Va. June 16, 2010).

24        Wells Fargo dubs the TPPA a "loan agreement," but the TPPA was *not* the permanent

25    loan modification agreement. It was an agreement to offer a permanent loan modification –

26    with the terms of the permanent loan modification already dictated by a predetermined

27    formula. ¶¶50, 61-62; *see, e.g.*, Ex. F (SD 09-01) at 4, 6, 8-10, 19, 20, 29, 33-35.

28

BLOOD HURST & O'REARDON, LLP

00025192    PLTF'S OPP TO DEF'S MOTION TO DISMISS – Case No. 3:10-CV-05072-JSW          11

1    Wells Fargo's citations to non-HAMP cases are unavailing. Motion at 14. *Sipe v.*
2  *Countrywide Bank*, 690 F. Supp. 2d 1141, 1159-60 (E.D. Cal. 2010) involved an alleged
3  agreement to provide "an affordable loan," with no further details. In *Grant v. Aurora Loan*
4  *Services, Inc.*, No. 09-08174, 2010 U.S. Dist. LEXIS 98034, at *4-5 (C.D. Cal. Sept. 10,
5  2010), the plaintiff alleged that an agreement to delay the foreclosure sale of his home arose
6  from a letter stating that if certain documentation was not provided, the foreclosure sale would
7  go forward. In both cases, essential terms were left to be determined. Here, they are not.

8    Wells Fargo's citations to cases pertaining to the terms of loan agreements are also
9  irrelevant. Motion at 14 (citing *Laks v. Coast Federal Savings & Loan Ass'n*, 60 Cal. App. 3d
10  885, 892 (1976) (pertaining to a "breach of contract for the purchase or sale of real property");
11  *Peterson Dev't Co. v. Torrey Pines Bank*, 233 Cal. App. 3d 103 (1991) (pertaining to loan
12  agreement)).

13              **3.    Plaintiff Has Alleged Facts Showing Consideration**

14    Wells Fargo next argues that plaintiff has not alleged facts showing consideration
15  because he had a preexisting duty to perform under the terms of his original mortgage. Motion
16  at 16. First, plaintiff need not allege consideration to state a claim for breach of contract. *See,*
17  *e.g.*, *Santana Row Hotel Partners, L.P. v. Zurich America Ins. Co.*, 446 F. Supp. 2d 1108,
18  1115 (N.D. Cal. 2006) ("The Court agrees with Plaintiff's statement that it need not allege
19  consideration in pleading breach of contract."). Second, plaintiff has alleged facts showing
20  consideration:

21        If the bargained-for performance which is rendered includes something that is
        not within the requirements of a preexisting duty, the law of consideration is
22        satisfied. It makes no difference that the agreed consideration consists almost
        wholly of a performance that is already required and that this performance is
23        the main object of the promisor's desire. It is enough that some small
        additional performance is bargained for and given.
24
        Consideration is not insufficient because of the fact that the party giving the
25        consideration is then bound by a duty... to render some performance similar to
        that given or promised, if the act or forbearance given or promised as
26        consideration differs in any way from what was previously due. (citing Rest.,
        Contracts, §84(c)).
27

28

BLOOD HURST & O'REARDON, LLP

1    *House v. Lala*, 214 Cal. App. 2d 238, 243 (1963) (internal citations omitted). Further, "courts

2    do not weigh the quantum of the consideration as long as it has some value." *A. J. Industries,*

3    *Inc. v. Ver Halen*, 75 Cal. App. 3d 751, 761 (1977).

4        Defendant's argument has been rejected under similar facts. In *Durmic v. J.P. Morgan*

5    *Chase Bank, NA*, No. 10-10380, 2010 U.S. Dist. LEXIS 124603 (D. Mass. Nov. 24, 2010), the

6    court found consideration where the plaintiffs provided financial documentation for their

7    TPPA because they were under no preexisting legal obligation to do so and because it entailed

8    a trouble or inconvenience. *Id.* at *10-12; *see also Raedeke v. Gibraltar Savings & Loan*

9    *Ass'n*, 10 Cal.3d 665, 674 (1974) (act that was not originally part of the bargain and

10   constituted detriment "through the expenditure of time and energy" was sufficient

11   consideration).

12       *Durmic* also found consideration existed because, as here, where plaintiff provided

13   financial documentation, it allowed defendant "to predict with greater certainty their ability to

14   pay" under a permanent HAMP modification. *Durmic*, 2010 U.S. Dist. LEXIS 124603 at *11-

15   *12. The same benefit to Wells Fargo arose here, as consideration for the TPPA included

16   Wells Fargo's ability to demand that borrowers attend credit counseling under HAMP. Ex. F

17   (SD 09-01) at 11. Moreover, Wells Fargo was entitled to further benefits in the event that

18   HAMP modifications failed because it would retain all late fees and other servicing fees

19   associated with reinitiating foreclosure. ¶12; Ex. G (TPPA); Ex. C (Handbook) at 49. It also

20   received substantial incentive payments from the federal government for agreeing to offer

21   borrowers HAMP modifications. ¶¶1, 6; Ex. A (SPA). All of these benefits to Wells Fargo

22   constituted valid consideration. *See Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 456 (1987)

23   (recipient's act of opening envelope found to be sufficient consideration for sender).[6]

---

[6]    Wells Fargo may cite in reply *Mehta v. Wells Fargo Bank, N.A.*, No. 10-944, 2010 U.S.
Dist. LEXIS 88336 (S.D. Cal. Aug. 26, 2010). However, in *Mehta*, the defendant's promise
not to conduct a trustee sale was unrelated to the plaintiff's provision of documents to support
his loan modification application. Because the promise "placed no conditions or expectations
on Plaintiff," the court held that the consideration had not induced the promise to perform, and
therefore was insufficient. *Id.* at *26-27.

BLOOD HURST & O'REARDON, LLP

00025192

#### 4. Plaintiff Adequately Alleged Damages for Breach of Contract

Focusing on just four paragraphs of the lengthy Complaint, Wells Fargo argues that "Plaintiff has alleged no harm caused to him by Wells Fargo." Motion at 17 (citing ¶¶91-94). In fact, the Complaint alleges that "[a]s a direct result of Wells Fargo's unlawful and unfair conduct … including its breach of contract, plaintiff suffered injury in fact and lost money or property." ¶19; *see also* ¶100 ("As a direct and proximate result of Wells Fargo's breach of contract – both the direct loan modification contract, and the Servicer Participation Agreement contract – plaintiff and Class members have been damaged in amounts to be proven at trial, and continue to be damaged."); ¶107 ("Plaintiff and members of the Class lost money and the opportunity to engage other remedies, solutions or strategies to effectuate a resolution to their mortgage payment difficulties.").

"Damages which may be said to be the normal and natural result of the breach complained of may be denominated general damages and pleaded accordingly…. The question as to how general damages from the breach of a contract have arisen otherwise than as disclosed by the general allegation of damages, is the subject of evidence, rather than pleading." *Colvig v. RKO General, Inc.*, 232 Cal. App. 2d 56, 68-69 (1965). Plaintiff has pled general damages. "Under Rule 8, the fact of damage – and the type of damage – can be alleged in conclusory terms." *StreamCast Networks, Inc. v. IBIS LLC*, No. 05-04239, 2006 U.S. Dist. LEXIS 97607, at *16 (C.D. Cal. May 1, 2006); *Morey v. NextFoods, Inc.*, No. 10-761, 2010 U.S. Dist. LEXIS 67990, at *4 (S.D. Cal. June 7, 2010) (allegation that plaintiff "was exposed to and saw [defendant's] claims by reading the product label, purchased GoodBelly products in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition" was sufficient.). Thus, plaintiff properly alleges damages.

#### 5. The Statute of Frauds Does Not Apply and in Any Event, Wells Fargo Would Be Estopped from Relying on Such a Defense

Wells Fargo's statute of frauds argument is without merit. First, as explained above, plaintiff does not allege that the TPPA is the permanent mortgage modification. Because the

BLOOD HURST & O'REARDON, LLP

1  TPPA is not "an agreement to modify a contract that is within the statute of frauds," the statute

2  of frauds does not apply.  Motion at 17.

3      Second, Civil Code §1698(c) states that "a contract in writing may be modified by an

4  oral agreement supported by new consideration."  In *Vissuet v. Indymac Mortg. Svcs.*, No. 09-

5  2321, 2010 U.S. Dist. LEXIS 26241 (S.D. Cal. Mar. 19, 2010), for example, the lender orally

6  informed the borrower that it would postpone the trustee's sale of her home if she completed

7  and submitted a loan modification application.  *Id.* at *3.  After the lender refused to postpone

8  the trustee's sale, the borrower sued for breach of contract.  Pursuant to Civil Code §1698(c),

9  the court rejected the lender's statute of frauds defense on the grounds that the plaintiff's

10 completion and submission of a loan modification application "was not something Plaintiff

11 was required to do under the original contract, and if not for the application, Plaintiff alleges

12 she would have spent the time pursuing alternate measures to avoid the foreclosure."  *Id.* at

13 *12-*13.  Because the borrower had sufficiently alleged new consideration for the oral

14 modification of her contract, the statute of frauds did not bar her breach of contract claim.  *Id.*;

15 *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal.3d 665, 673 (1974) (where borrower

16 promised to obtain buyer, oral contract to postpone foreclosure sale enforceable because

17 promise to obtain buyer constituted sufficient new consideration under Civil Code §1698).  As

18 set forth above, plaintiff has sufficiently alleged new consideration for the TPPA.

19     Third, the part performance exception to the statute of frauds defense applies.  In

20 reliance on the TPPA agreement plaintiff timely submitted, and Wells Fargo accepted, detailed

21 financial information and all three of his trial period payments of $2,185.22 each.  ¶¶75-80;

22 *Faulkner v. OneWest Bank*, No. 3:10-CV-12, 2010 U.S. Dist. LEXIS 59688, at *n.4 (N.D. W.

23 Va.) (June 16, 2010) (because defendant accepted plaintiff's HAMP trial period payments the

24 part performance exception to the statute of frauds applied); *Warren v. Merrill*, 143 Cal. App.

25 4th 96, 113 (2006) ("part performance of the oral contract by paying $77,000 for the down

26 payment on the condominium would satisfy the statute of frauds").

27     Fourth, Wells Fargo is estopped from asserting the statute of frauds defense.  "The

28 doctrine of estoppel to assert the statute of frauds applies where unconscionable injury would

BLOOD HURST & O'REARDON, LLP

1    result from denying enforcement of the oral contract after one party has been induced by the

2    other seriously to change his position in reliance on the contract...." *In re Diego's Inc.*, 88

3    F.3d 775, 778 (9th Cir. 1996); *see also Byrne v. Laura*, 52 Cal. App. 4th 1054, 1068 (1997)

4    ("Equitable estoppel may preclude the use of a statute of frauds defense."); Civil Code

5    §1698(d) ("Nothing in this section precludes in an appropriate case the application of rules of

6    law concerning estoppel...."). Plaintiff clearly alleges reasonable reliance upon the TPPA

7    offered by Wells Fargo, and submitted trial period payments in accordance with the TPPA

8    despite the fact that the existing mortgage remained in full force and effect. ¶¶19, 74-80.

9    Because plaintiff changed his position in reliance on the TPPA, Wells Fargo is now estopped

10    from asserting the statute of frauds defense.

11    *Hanson v. Wells Fargo Home Mortgage*, No. 10-00318, 2010 U.S. Dist. LEXIS 85629

12    (E.D. Ark. Aug. 10, 2010) is directly on point. In *Hanson*, plaintiffs applied to Wells Fargo

13    for a HAMP loan modification and were orally assured that their application had been

14    accepted and that they should begin making reduced monthly mortgage payments. After

15    making reduced monthly mortgage payments and suffering negative credit implications, Wells

16    Fargo threatened to foreclose on the plaintiffs if they did not pay the full arrearage owed under

17    their original mortgage. *Id.* at *2-*3. The Hanson Plaintiffs sued for breach of contract,

18    promissory estoppel and statutory violations. Wells Fargo asserted the same statute of frauds

19    defense it does here, and the court ruled that Wells Fargo was estopped from doing so pursuant

20    to the *Restatement (Second) of Contracts*. The court found that the plaintiffs sufficiently

21    alleged that Wells Fargo's conduct induced action or forbearance on their parts, which should

22    have been reasonably expected by Wells Fargo. The court rejected at the pleading stage Wells

23    Fargo's arguments that the plaintiffs did not justifiably rely on the oral representations. *Id.* at

24    *6-7; *see also Sutherland v. Barclays America/Mortgage Corp.*, 53 Cal. App. 4th 299 (1997)

25    (borrower relied to her detriment on lender's verbal confirmation that she could postpone three

26    mortgage payments; "Having orally agreed to such a postponement, [loan servicer] cannot rely

27    on the absence of a *written* agreement in order to declare [borrower] in default for missing

28    those payments"); *Vissuet*, 2010 U.S. Dist. LEXIS 26241 at *13-*16 (lender estopped from

1   asserting statute of frauds defense where it orally agreed to postpone trustee's sale if borrower

2   submitted loan modification application, and borrower reasonably relied on promise by

3   submitting application and foregoing the pursuit of alternative measures to avoid foreclosure);

4   *Stanton v. Ocwen Loan Servicing, LLC*, No. 1:10CV2, 2010 U.S. Dist. LEXIS 102525, at *11-

5   12 (D. Utah Sept. 28, 2010) (lender stopped from statute of frauds defense regarding a

6   mortgage modification agreement).[7] Thus, Wells Fargo is estopped from asserting a statute of

7   frauds defense here.

8   **D.   Plaintiff Is An Intended Third-Party Beneficiary of the SPA (Count II)**

9   Defendant argues that plaintiff's third-party beneficiary claim fails because he is an

10   incidental and not intended third-party beneficiary. Motion at 18-19. Wells Fargo recently

11   lost this argument in *Marques*, 2010 U.S. Dist. LEXIS 81879, and *Sampson v. Wells Fargo*

12   *Home Mortgage, Inc.*, No. 10-08836, 2010 U.S. Dist. LEXIS 137635, at *6-7 (C.D. Cal. Nov.

13   19, 2010).[8] The argument defies logic – plaintiff and other distressed borrowers like him are

14   intended third-party beneficiaries of Wells Fargo's SPA with Fannie Mae. ¶¶4, 97-98. The

15   purpose of HAMP is to help "at-risk homeowners … by reducing monthly payments to

16   sustainable levels." Ex. K (SD 09-01) at 1; *see also Sampson*, 2010 U.S. Dist. LEXIS 137635,

17   at *6-7 ("[T]he very purpose of HAMP would indicate to the court that Plaintiff is more than

18   an incidental beneficiary of the agreement.").

19

20   ───────────────

   [7]   Two of Wells Fargo's citations acknowledge that equitable estoppel may prevent the

21   statute of frauds defense. *See Secrest v. Security National Mortgage Loan Trust 2002-2*, 167
   Cal. App. 4th 544, 555-57 (2008) and *Quinteros v. Aurora Loan Services*, No. 09-2200, 2010

22   U.S. Dist. LEXIS 108449, at *20-21 (E.D. Cal. September 30, 2010). While the statute of
   frauds was applied in both cases, the cases are distinguishable because the borrowers did not

23   allege any change in position or new consideration to support their promissory estoppel claim.
   *Id.* (noting that the payments made were required under the original terms of his mortgage

24   anyway); *Secrest* at 556-57 ("The Secrests do not assert they changed their position in reliance
   on the January 2002 Forbearance Agreement in any way other than by making the

25   downpayment… The Secrests have legal means to recover that money if they are entitled to
   its return or have not received credit for it."). *See also Vissuet*, 2010 U.S. Dist. LEXIS 26241

26   at *16 n.7 (distinguishing *Secrest*).

27   [8]   *See also Reyes v. Saxon Mortgages Services, Inc.*, No. 09-1366, 2009 U.S. Dist. LEXIS
   125235, at *5-6 (S.D. Cal. Nov. 5, 2009) (plaintiff, borrower, is an intended third party

28   beneficiary of Saxon's SPA with Fannie Mae).

BLOOD HURST & O'REARDON, LLP

An intended third-party beneficiary under a contract has a claim where "the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000)). The SPA is intended to benefit individual borrowers by providing them with a uniform loan modification protocol. The SPA's stated intent and unambiguous instructions regarding loan modifications show that plaintiff is an intended third-party beneficiary of the SPA. Ex. A (SPA) at §1.A. ("Servicer shall perform the loan modification and other foreclosure prevention servicers."); §2.A. (same); RJN, Ex. B (SD 09-07) ("Under HAMP, servicers apply a uniform loan modification process to provide eligible borrowers with affordable monthly payments for their first lien mortgage loans.").[9]

The SPA between Wells Fargo and Fannie Mae is analogous to the contracts considered in *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009), where the Ninth Circuit found intended beneficiary status and standing to sue.[10] In *Astra*, drug manufacturers contracted with the federal Health Resources and Services Administration to charge a certain price when selling drugs to federally funded medical clinics. *Id.* at 1242. The contracts ("PPAs") specified how the manufacturers were to determine the price of each drug. In examining the text of the contracts, the court found that manufacturers undertook a specific

---

[9]    "RJN" refers to the concurrently filed Plaintiff's Request for Judicial Notice in Support of Opposition to Defendant's Motion to Dismiss Plaintiff's Class Action Complaint. SD 09-07 and SD 09-08 are attached as Exhibits A and B, respectively.

[10]    *Astra* differs from *Klamath v. Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206 (9th Cir. 2000), the case on which the cases cited by Wells Fargo rely. Motion at 18-19. In *Klamath*, the court held that borrowers were incidental beneficiaries to a contract governing management of a dam. In *Klamath*, irrigators in the Klamath Basin claimed to be intended beneficiaries of a government contract formed 40 years earlier between the United States Bureau of Reclamation and a power company. *Klamath*, 204 F.3d at 1211. The contract did not require either party to engage the irrigators or perform any action directly involving the irrigators; in fact, the contract did not mention the irrigators. *Id.* at 1211-12. In contrast to the contract at issue in *Klamath*, the SPA singles out aiding at-risk borrowers as the purpose of the contract and contains provisions obligating Wells Fargo to take specific actions for the direct benefit of eligible borrowers (*e.g.*, solicit eligible borrowers, maintain adequate staffing for processing documents, and suspend foreclosure proceedings during evaluation). ¶¶38, 42-43; Ex. F (SD 09-01) at 13, 15, Ex. B (Summary of Guidelines).

BLOOD HURST & O'REARDON, LLP

1    responsibility toward the clinics, or "covered entities." *Id.* at 1245. It pointed to

2    "unambiguous, concrete" instructions on how manufacturers were to calculate prices, maintain

3    records, and the like, and then held that these instructions demonstrated intent to benefit the

4    covered entities. *Id.* at 1246.

5          The Ninth Circuit stated that it was "unable to discern any substantial purpose of the

6    PPA other than to grant eligible covered entities a discount on covered drugs." *Id.* The

7    "governing statute" itself reinforced this interpretation because it was enacted to require

8    manufacturers to extend price reductions; by enacting the statute, Congress intended to

9    "enable" covered entities to obtain lower prices. *Id.* The court concluded that the covered

10   entities were intended beneficiaries of the PPA and were entitled to bring suit to enforce its

11   provisions. *Id.* at 1249, 1252. The same analysis and conclusion apply in this case.

12         In *Marques*, 2010 U.S. Dist. LEXIS 81879, the court recently followed *Astra* and

13   concluded that eligible borrowers were third-party beneficiaries of Wells Fargo's SPA. The

14   *Marques* court held that the SPA "expresses a clear intent to directly benefit the eligible

15   borrowers," and that eligible borrowers have standing to sue under the SPA. *Id.*, at *17. The

16   court's decision was based, in part, on similarities between the "unambiguous, concrete"

17   instructions in the PPAs at issue in *Astra* and the unambiguous, concrete instructions in Wells

18   Fargo's SPA. *Marques*, 2010 U.S. Dist. LEXIS 81879, at *12-16.

19         As the *Marques* court noted, Wells Fargo's SPA expressly provides that lenders "shall"

20   perform "loan modification and other foreclosure prevention services" described in the

21   Program Documentation, "for all mortgage loans its services." *Marques*, 2010 U.S. Dist.

22   LEXIS 81879, at *12 (citing SPA §2.A); *see also* Ex. A (SPA) §1.B and Financial Instrument;

23   ¶5(c) (Wells Fargo covenants that the loan modification and foreclosure prevention services

24   "will be offered to borrowers … in accordance with the applicable Program Documentation.").

25   The SPA recites that its "primary purpose" is "the modification of first lien mortgage loan

26   obligations and the provision of loan modification and foreclosure prevention services relating

27   thereto." Ex. A (SPA) at 1; *see also* Ex. K (SD 09-01) at 1 (purpose of HAMP is to help "at-

28   risk homeowners … by reducing monthly payments to sustainable levels"); *see also Sampson*,

BLOOD HURST & O'REARDON, LLP

1    2010 U.S. Dist. LEXIS 137635, at *6-7 ("It seems logical to the court that the intended

2    beneficiaries of [HAMP], whose objective is to modify mortgages and to prevent foreclosures,

3    are homeowners at risk of foreclosure."); ¶72 (plaintiff was at risk of foreclosure).

4         The Supplemental Directives, incorporated by reference into Wells Fargo's SPA,

5    provide unambiguous, concrete instructions about the way Wells Fargo is to determine

6    eligibility, generate potential loan terms, and maintain records of modifications. Ex. A (SPA)

7    §B.3; Ex. K (SD 09-01) at 13. The Program Documentation creates specific protections that

8    benefit only homeowners: it protects against foreclosure during the application process and

9    Trial Period, prohibits Wells Fargo from forcing borrowers to waive their legal rights,

10   prohibits Wells Fargo from charging certain fees, and requires Wells Fargo to provide written

11   denials that explain the reasons therefor. Ex. K (SD 09-01) at 2, 13, 14, 22; RJN, Ex. A (SD

12   09-07) at 7; RJN, Ex. B (SD 09-08) at 2-3.

13        As the *Marques* court concluded, "[u]pon a fair reading of the [Servicer Participation]

14   Agreement in its entirety and in the context of its enabling legislation, it is difficult to discern

15   any substantial purpose other than to provide loan modification services to eligible borrowers."

16   *Marques*, 2010 U.S. Dist. LEXIS 81879, at *16 (citing *Astra*, 588 F.3d at 1246). In other

17   words, eligible borrowers are intended third-party beneficiaries of the SPA.

18        Wells Fargo argues that the SPA does not manifest an intent to benefit borrowers (and

19   borrowers cannot reasonably rely on that intent) because the SPA does not require it to modify

20   any particular loan. Motion at 19. However, plaintiff does not claim that the SPA entitles him

21   to a loan modification; instead, plaintiff claims that the SPA is intended to benefit him by

22   requiring Wells Fargo to follow a prescribed set of loan modification procedures, procedures

23   that Wells Fargo is not following. ¶¶4, 7-9. The SPA intends to benefit borrowers with a

24   "uniform loan modification process," an objective, fair set of procedures. ¶¶4-5, 97-98; Ex. K

25   (SD 09-01) at 1. As an intended third-party beneficiary of the SPA, plaintiff has a legal right

26   to enforce Wells Fargo's adherence to this uniform process.

27        Moreover, Wells Fargo is not free to deny loan modifications to eligible borrowers.

28   This idea is directly at odds with the SPA. The SPA states that lenders "shall" perform "loan

BLOOD HURST & O'REARDON, LLP

1  modification and other foreclosure prevention services" described in the Program

2  Documentation.  Ex. A (SPA) at §2.A.  Wells Fargo is required to consider "all eligible

3  mortgage loans" (Ex. K (SD 09-01) at 1), and it must offer the borrower a permanent

4  modification if the borrow complies with the terms of the trial plan (*id.* at 18).  Wells Fargo

5  did not do so here.

6      Wells Fargo did not play by the rules of its SPA, and as a result plaintiff suffered

7  damages.  ¶¶99-100.  As a third-party beneficiary, plaintiff has the right to enforce the SPA by

8  demanding that Wells Fargo evaluate and process HAMP applications according to the

9  procedures it has agreed to follow.

10     **E.     Plaintiff Properly Alleges Breach of The Implied Covenant (Count IV)**

11     Wells Fargo repeats its contract-based arguments to argue that plaintiff cannot state a

12 claim for breach of the implied covenant of good faith and fair dealing.  Motion at 20 (the

13 Complaint fails to allege a valid contract, and is barred by the statute of frauds).

14     Wells Fargo has breached the implied covenant by delaying the underwriting process,

15 manipulating the NPV formula, charging for and collecting trial period payments, and never

16 offering permanent modifications.  ¶¶11, 110, 117; *Restatement (Second) of Contracts* §205

17 (2009) ("Every contract imposes upon each party a duty of good faith and fair dealing in its

18 performance and its enforcement."); *Durmic*, 2010 U.S. Dist. LEXIS 124603, at *16-*18

19 (rejecting argument that no contract existed for an implied covenant claim in a factually

20 similar HAMP action).  Thus, plaintiff states a claim for breach of the implied covenant.

21     **F.     Plaintiff States a Claim for Promissory Estoppel (Count III)**

22     Defendant lodges merits-based attacks, and in so doing argues that the Complaint fails

23 to plead the elements for promissory estoppel.  The merits-based argument is improper at this

24 stage.  Moreover, all required elements are properly pled.

25     The elements of a claim for promissory estoppel are: (1) a clear, unambiguous promise;

26 (2) reasonable, foreseeable reliance; and (3) resulting injury.  *U.S. Ecology, Inc. v. State*, 129

27 Cal. App. 4th 887, 901 (2005).  Defendant makes two arguments in support of its motion to

28 dismiss this claim:  (1) that the representations made by defendant in the TPPA did not

BLOOD HURST & O'REARDON, LLP

00025192

1    constitute a clear, unambiguous promise; and (2) that plaintiff suffered no damages as a result

2    of his alleged reliance upon the TPPA.

3        First, as discussed above, defendant's representations in the TPPA did constitute a

4    clear contractual agreement with plaintiff. The TPPA specified, as per HAMP rules, that if

5    plaintiff complied with the conditions of defendant's offer, defendant *will* modify his home

6    loan. ¶92; Ex. G (TPPA). Plaintiff complied with all necessary conditions, and the Complaint

7    pleads as much. ¶93. Wells Fargo lost this argument before. The court in *Hanson*, 2010 U.S.

8    Dist. LEXIS 85629, where plaintiff alleged making trial period payments under Wells Fargo's

9    TPPA only to be denied a permanent modification, rejected Wells Fargo's motion to dismiss a

10   promissory estoppel claim because disputing whether plaintiff reasonably relied on TPPA

11   representations was an inappropriate question at the motion to dismiss stage. *Id.* at *6-7.

12   Accordingly, plaintiff has more than sufficiently pled the element of a clear, unambiguous

13   promise.

14       Second, improperly, defendant disputes plaintiff's factual allegations regarding their

15   damages, arguing that plaintiff suffered no detriment as a result of entering the trial

16   modification. Motion at 21. In fact, defendant goes so far as to argue that plaintiff is *better*

17   *off* after their participation in the trial modification. *Id.* Such an argument is clearly improper

18   on a motion to dismiss, in which all material allegations in the complaint must be taken as true.

19   *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). Regardless, the Complaint sufficiently

20   alleges that plaintiff is in a worse position now because he relied on defendant's promises,

21   both in a direct financial sense and because plaintiff's participation in HAMP cost him the

22   opportunity to pursue other remedies or solutions. ¶107; Ex. K at 3 (agreeing to the TPPA

23   negatively affected plaintiff's credit rating). *See Durmic*, 2010 U.S. Dist. LEXIS 124603, at

24   *10-12, 18-19 (the legal and financial detriments of a TPPA is consideration). Plaintiff has

25   thus appropriately pled the damages element of his claim for promissory estoppel.

26       **G.    Plaintiff States a Claim Under the UCL (Count V)**

27       Plaintiff makes claims under the unlawful, unfair, fraudulent, and false advertising

28   prongs of the UCL. ¶123. Ignoring the distinctions among the UCL's prongs, defendant

BLOOD HURST & O'REARDON, LLP

1   posits several reasons why the UCL claim fails: (1) the UCL claim is wholly reliant on the

2   other counts which themselves falsely assume Wells Fargo has a legal obligation to

3   permanently modify plaintiff's loan; (2) the UCL cannot be used to enforce a federal law that

4   does not permit a private right of action; and (3) plaintiff fails to adequately allege losing

5   money or property as a result of the conduct.  Motion at 30-32.  According to the HAMP

6   Handbook, Wells Fargo is subject to state laws "that apply to any of its practices related to

7   HAMP," including laws prohibiting unfair and deceptive acts or practices.  Ex. C (Handbook)

8   at 13-14.  Wells Fargo's arguments lack factual and legal support.

9       First, Wells Fargo has simply made up its argument that plaintiff's UCL claim is

10  wholly predicated on the other claims, which themselves falsely assume Wells Fargo has a

11  legal obligation to permanently modify plaintiff's loan.  Motion at 21-22.  While Wells Fargo

12  does breach its contractual obligations under the TPPA and SPA contracts, Wells Fargo also

13  misleads borrowers into making trial period payments before it completes the underwriting

14  process, manipulates the underwriting process resulting in the rejection of eligible borrowers,

15  violates the public policies behind HAMP, and collects trial period payments from borrowers

16  it knows will not qualify for a permanent loan modification.  ¶¶10-11, 65-68, 117.  These latter

17  allegations are independent of Wells Fargo's breach of the TPPA and SPA contracts.

18  Nevertheless, to the extent the UCL allegations overlap with the breach of contracts

19  allegations, plaintiff has an independent claim under the unfair prong because "a systematic

20  breach of certain types of contracts (*e.g.*, breaches of standard consumer or producer contracts

21  involved in a class action) can constitute an unfair business practice under the UCL." *Arce v.*

22  *Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 490 (2010).

23      Second, Wells Fargo devotes a single sentence and cites just one unpublished case for

24  its argument that the UCL cannot be used to enforce a federal law that does not permit a

25  private right of action.  Motion at p. 30-31 (citing *Aleem v. Bank of America*, No. 09-01812,

26  2010 U.S. Dist. LEXIS 11944 (C.D. Cal. Feb. 9, 2010)).  The California Supreme Courts holds

27  that under Business & Professions Code §17204, "a private plaintiff may bring a UCL action

28  even when the conduct alleged to constitute unfair competition violates a statute for the direct

BLOOD HURST & O'REARDON, LLP

1     enforcement of which there is no private right of action." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,

2     950 (2002).[11]  Unless the UCL or the predicate statute ***expressly prohibits*** private enforcement,

3     the statute is a proper unlawful prong predicate. *Stop Youth Addiction, Inc. v. Lucky Stores,*

4     *Inc.*, 17 Cal. 4th 553, 557 (1998).  Because they do not, Wells Fargo does not argue that the

5     UCL or HAMP expressly prohibit private enforcement.  Thus, pursuant to *Kasky* and *Stop*

6     *Youth Addiction*, HAMP is a proper UCL predicate statute.[12]

7             Plaintiff states valid claims under the unlawful prong as well.  By breaching the TPPA

8     and SPA contracts, defendant's conduct constitutes a breach of contract, which is itself an

9     "unlawful prong" predicate violation.  ¶113; *see Iorio v. Allianz Life Ins. Co. of N. Am.*, No.

10    05-633, 2008 U.S. Dist. LEXIS 118344, at *67 (S.D. Cal. July 8, 2008) (a breach of contract

11    may also violate the UCL's unlawful prong).  In fact, under just the unlawful prong, the

12    Complaint alleges predicate violations because defendant violated Civil Code §1572 (actual

13    fraud), §1573 (constructive fraud), and §§1709-1711 (deceit).  ¶113.  The UCL "'borrows'

14    violations of other laws and treats these violations [] as unlawful business practices

15    'independently actionable under section 17200." *Farmers Ins. Exchange v. Superior Court,*

16    2 Cal. 4th 377, 383 (1992).  "Violations of federal as well as state and local law may serve as

17    the predicate for an unlawful practice claim under ... section 17200." *Munson v. Del Taco,*

18    *Inc.*, 46 Cal. 4th 661, 676 (2009).[13]  Thus, although the court in *Lucero v. Countrywide Bank*

19

20    [11]     *Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1481 (2006) (unlawful prong
21    claims predicated on violations of regulations issued by the Office of the Comptroller of the
      Currency); *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, n.17 (2005) (not reaching
22    whether a private right of action existed under 15 U.S.C. §3009 because "a private right of
      action under the predicate statute is not necessary in order to state a UCL violations based on
23    that statute."); *McKell*, 142 Cal. App. 4th at 1475 ("Even if the violation of another law does
      not create a private right of action, if the violation constitutes unfair competition, it is
24    actionable.").

      [12]    Not citing California Supreme Court opinions in *Kasky* and *Stop Youth Addiction*, the
25    court in *Aleem*, the only opinion cited by Wells Fargo on this point, incorrectly holds that
      failing to allege that HAMP provides a private right of action justifies dismissal of the UCL
26    claim to the extent it is based upon HAMP. *Aleem*, 2010 U.S. Dist. LEXIS 11944, at *9-*10.

27    [13]    *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) ("The 'unlawful'
      practices prohibited by section 17200 are any practices forbidden by law, be it civil or
28    criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

1    *N.A.*, No. 09-1742, 2010 U.S. Dist. LEXIS 45340, at *10 (S.D. Cal. May 10, 2010) incorrectly

2    found that HAMP does not require servicers to modify eligible loans, it refused to dismiss

3    plaintiff's UCL claim because other claims, and thus other predicate violations, survived

4    dismissal.

5        Finally, Wells Fargo argues that the Complaint fails to adequately allege that plaintiff

6    lost money or property as a result of defendant's conduct.  Motion at 32.  In addition to

7    alleging that "Plaintiff has suffered injury in fact and has lost money as a result of Wells

8    Fargo's unfair conduct" (¶¶19, 122), the Complaint alleges that along with sending several

9    paystubs, a tax return, and trial period payments, plaintiff completed and sent in a requested

10   "Financial Worksheet" and "Hardship Affidavit" (¶¶19, 74-80), and that "Plaintiff and

11   members of the Class lost money and the opportunity to engage other remedies, solutions or

12   strategies to effectuate a resolution to their mortgage payment difficulties" (¶107).  Thus,

13   plaintiff adequately alleges relying on defendant's promises and conduct, and losing money

14   and property as a result thereof.  *Singh v. Wash. Mut. Bank*, No. 09-2771, 2009 U.S. Dist.

15   LEXIS 73315 at *21-*22 (N.D. Cal. Aug. 19, 2009) (allegations of making payments on

16   deceptively marketed loans satisfied UCL's requirement of losing money or property); *Morey*

17   *v. NextFoods, Inc.*, No. 10-761, 2010 U.S. Dist. LEXIS 67990, at *4 (S.D. Cal. June 7, 2010)

18   (allegation that plaintiff "was exposed to and saw [defendant's] claims by reading the product

19   label, purchased GoodBelly products in reliance on these claims, and suffered injury in fact

20   and lost money as a result of the unfair competition" was sufficient.).

21   **V.    CONCLUSION**

22       For the forgoing reasons, defendant's Motion should be denied.

23       Respectfully submitted,

24   Dated: January 10, 2011                    BLOOD HURST & O'REARDON, LLP
                                                 TIMOTHY G. BLOOD (149343)
25                                               LESLIE E. HURST (178432)
                                                 THOMAS J. O'REARDON II (247952)
26
                                                 By:        s/Timothy G. Blood
27                                                          TIMOTHY G. BLOOD

28

BLOOD HURST & O'REARDON, LLP

600 B Street, Suite 1550
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

HARRISON PATTERSON & O'CONNOR LLP
JAMES R. PATTERSON (211102)
ALISA A. MARTIN (224037)
402 West Broadway, 29th Floor
San Diego, CA  92101
Telephone:  619/756-6990
619/756-6991 (fax)
jpatterson@hpolaw.com
amartin@hpolaw.com

BONNETT FAIRBOURN FRIEDMAN
  & BALINT, PC
TODD D. CARPENTER (234463)
600 West Broadway Suite 900
San Diego, CA  92101
Telephone:  619/756-6978
602/274-1199 (fax)
tcarpenter@bffb.com
                    - and -
BONNETT FAIRBOURN FRIEDMAN
  & BALINT, PC
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (CA 203111)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012-3311
Telephone:  602/274-1100
602/798-5860 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Attorneys for Plaintiff

PLTF'S OPP TO DEF'S MOTION TO DISMISS – Case No. 3:10-CV-05072-JSW

1

CERTIFICATE OF SERVICE

2      I hereby certify that on January 10, 2011, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4  e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have

5  mailed the foregoing document or paper via the United States Postal Service to the non-

6  CM/ECF participants indicated on the Electronic Mail Notice List.

7      I certify under penalty of perjury under the laws of the United States of America that

8  the foregoing is true and correct. Executed on January 10, 2011.

9

10                                    s/Timothy G. Blood
                                   TIMOTHY G. BLOOD

11                        BLOOD HURST & O'REARDON, LLP
12                        600 B Street, Suite 1550
                         San Diego, CA 92101
13                        Telephone: 619/338-1100
                         619/338-1101 (fax)
14                        tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP