HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (Pro Hac Vice)
THOMAS E. LOESER (202724)
1918 Eighth Avenue, Suite 330
Seattle, WA  98101
Tel: 206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com
toml@hbsslaw.com

LAW OFFICE OF PETER FREDMAN PC
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA  94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: (619) 338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILLIP R. CORVELLO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY,<br><br>Defendant. | Case No. 4:10-CV-05072-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><u>CLASS ACTION</u><br><br>Date:  August 10, 2017<br>Time:  10:00 a.m.<br>Judge:  Honorable Vince Chhabria<br>Courtroom: 4, 17th Floor<br><br>Date Filed:  November 9, 2010<br>Trial Date:  June 5, 2017 |
| AMIRA JACKMON, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICA'S SERVICING COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:11-cv-03884-VC<br><br><br>Date Filed:  August 8, 2011 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that in accordance with Federal Rules of Civil Procedure, Rule 23, on August 10, 2017, at 10:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, San Francisco Division, the Honorable Vince Chhabria presiding, Plaintiffs Phillip R. Corvello and Amira Jackmon (collectively "Plaintiffs") and defendant Wells Fargo Bank, N.A. will and hereby do jointly move this Court for an order: (1) granting preliminary approval of the Stipulation and Class Action Settlement Agreement; (2) approving the proposed form, method, and schedule for disseminating Class Notice to the Class; (3) establishing deadlines for the Class Members to object to or request exclusion from the Settlement; and (4) setting a date for the Final Approval Hearing.

The Stipulation and Class Action Settlement is attached as Exhibit A to the Declaration of Timothy Blood filed herewith. The Proposed Order Preliminarily Approving Class Action Settlement is Exhibit B to the Declaration of Timothy Blood.

This joint motion is based upon this notice, Plaintiffs' memorandum of points and authorities submitted herewith, the declarations submitted herewith, upon all papers and pleadings on file herein, and further evidence and argument as the Court may choose to entertain.

Respectfully submitted,

Dated: June 30, 2017        BLOOD HURST & O'REARDON, LLP

By:        *s/ Timothy G. Blood*
            TIMOTHY G. BLOOD

Dated: June 30, 2017        K&L GATES LLP

By:        *s/ David D. Christensen*
            DAVID D. CHRISTENSEN

00122987

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   SUMMARY OF ARGUMENT ................................................................................... 2

III.  HISTORY OF THE LITIGATION ............................................................................. 4

    A.    The Corvello and Jackmon Actions ................................................................ 4

    B.    Discovery Efforts ............................................................................................. 5

    C.    Class Certification and Notice of Pendency ..................................................... 6

    D.    Trial Preparation and Summary Judgment ....................................................... 7

    E.    Settlement Negotiations ................................................................................... 8

IV.   SETTLEMENT TERMS ............................................................................................. 8

    A.    The Settlement Class ........................................................................................ 8

    B.    Relief to Class Members .................................................................................. 8

        1.    Settlement Payments Mailed Directly to Class Members ...................... 8

        2.    Notice and Administration Costs, Attorneys' Fees and Expenses,
            and Class Representative Service Awards ............................................. 10

    C.    Release and Waiver ........................................................................................ 11

    D.    The Class Notice Plan .................................................................................... 11

V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................................. 12

    A.    The Class Action Settlement Process ............................................................. 12

    B.    The Standard for Preliminary Approval ......................................................... 13

    C.    The Settlement Meets the Preliminary Approval Standard .............................. 15

        1.    The Strengths of Plaintiffs' Case and Risks Inherent in
            Continued Litigation and in Securing Certification Favor
            Preliminary Approval ........................................................................... 15

        2.    The Risk, Complexity, Expense, and Duration of the Litigation
            Favor Preliminary Approval ................................................................. 17

        3.    The Automatic Settlement Payments Provided By the Settlement
            Agreement Favors Preliminary Approval .............................................. 19

        4.    The Extent of Discovery and Stage of Proceedings ............................... 19

        5.    The Experience and Views of Counsel ................................................. 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

6.    The Settlement Agreement Is Fair to Plaintiffs and Class Members .................................................................................... 20

VI.    RULE 23(e)(3): SETTLEMENT OF PLAINTIFFS' INDIVIDUAL CLAIMS ............ 21

VII.    THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED ........... 22

VIII.    THE PROPOSED SCHEDULE OF EVENTS ............................................. 24

IX.    CONCLUSION ........................................................................................ 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akins v. Enterprise Rent-A-Car Co.*,
   79 Cal. App. 4th 1127 (2000) ............................................................................................3

*Blankenchip v. CitiMortgage, Inc.*,
   2016 U.S. Dist. LEXIS 115053 (E.D. Cal. Aug. 26, 2016) ..................................................4

*Carr v. Tadin, Inc.*,
   2014 U.S. Dist. LEXIS 179835 (S.D. Cal. Apr. 18, 2014) ..................................................23

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...........................................................................................12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) ...........................................................................................24

*Corvello v. Wells Fargo Bank, N.A.*,
   728 F.3d 878 (9th Cir. 2013) ...............................................................................................4

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016) ...............................................................................2

*Create-A-Card, Inc. v. INTUIT, Inc.*,
   2009 U.S. Dist. LEXIS 93989 (N.D. Cal. Sept. 22, 2009) ..................................................18

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ..........................................................................................................22

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ...........................................................................................10

*Gaudin v. Saxon Mortg. Servs.*,
   297 F.R.D. 417 (N.D. Cal. 2013) .......................................................................................17

*Giordano v. Saxon Mortg. Servs.*,
   2014 U.S. Dist. LEXIS 137703 (D.N.J. Sept. 29, 2014) ......................................................4

*Gonzales v. Arrow Fin. Servs., LLC*,
   660 F.3d 1055 (9th Cir. 2011) ...........................................................................................17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................................19, 22

*Henderson v. Wells Fargo Bank, N.A.*,
   2016 U.S. Dist. LEXIS 9326 (D. Conn. Jan. 27, 2016) ........................................................4

iii

00122987

*Heritage Pacific Financial, LLC v. Monroy*,
    215 Cal. App. 4th 972 (2013)..............................................................................10

*Jack v. Hartford Fire Ins. Co.*,
    2011 U.S. Dist. LEXIS 118764 (S.D. Cal. Oct. 13, 2011)...................................14

*Ketchum v. Moses*,
    24 Cal.4th 1122 (2001) ........................................................................................3

*Kim v. Space Pencil, Inc.*,
    2012 U.S. Dist. LEXIS 169922 (N.D. Cal. Nov. 28, 2012)................................18

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012)...............................................................................14

*Lansburg v. Fed. Home Loan Mortg. Corp.*,
    607 Fed. Appx. 738 (9th Cir. 2015).......................................................................4

*Laughlin v. Bank of Am., N.A.*,
    2014 U.S. Dist. LEXIS 79441 (D.N.J. June 11, 2014) ........................................4

*In re LinkedIn User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015).........................................................................20

*In re M.L. Stern*,
    2009 U.S. Dist. LEXIS 94671 (S.D. Cal. Oct. 9, 2009).....................................21

*Mangold v. California Public Utilities Com'n*,
    67 F.3d 1470 (9th Cir.1995)..................................................................................3

*Markey v. Ditech Fin. LLC*,
    2016 U.S. Dist. LEXIS 129511 (D. Conn. Sept. 22, 2016) ..................................4

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)...............................................................................15

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. Cal. 2010) .......................................................................10

*In re ML. Stern Overtime Litig.*,
    2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ............................14, 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).............................................................................................22

*Nachsin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011)...............................................................................9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).........................................................................19

*In re Netflix Privacy Litig.*,
    2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013) ...................................................14

*Nobles v. MBNA Corp.*,
    2009 U.S. Dist. LEXIS 59435 (N.D. Cal. June 29, 2009) ................................................18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)..................................................................................3, 13, 14, 15

*In re Rambus Inc. Derivative Litig.*,
    2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ................................................13

*Rodriguez v. West Publ'g Co.*,
    563 F.3d 948 (9th Cir. 2009).................................................................................................*passim*

*Rowe v. E.I du Pont De Nemours & Co.*,
    2011 U.S. Dist. LEXIS 96450 (D.N.J. Aug. 26, 2011).......................................................22

*Schrupp v. Wells Fargo Bank, N.A.*,
    2016 U.S. Dist. LEXIS 91177 (E.D. Cal. July 13, 2016) ....................................................4

*Schwarm v. Craighead*,
    814 F. Supp. 2d 1025 (E.D. Cal. 2011) .................................................................................10

*In re Simon v. Toshiba Am.*,
    2010 U.S. Dist. LEXIS 42501 (N.D. Cal. Apr. 30, 2010) ..................................................21

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)...........................................................................................9, 10

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
    2012 U.S. Dist. LEXIS 113641 (W.D. Ky. Aug. 13, 2012)...............................................23

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012)..............................................................................................24

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)...............................................................................................12

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................................................14, 15

*In re Toys "R" Us-Del., Inc. FACTA Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................................3

*United States v. McInnes*,
    556 F.2d 436 (9th Cir. 1977)................................................................................................15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976)...........................................................................................13, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2016 U.S. Dist. LEXIS 145701 (N.D. Cal. Oct. 18, 2016) .................................................... 14

*Wilkins v. Bank of Am., N.A.*,
    2016 U.S. Dist. LEXIS 110955 (E.D. Cal. Aug. 18, 2016) ...................................................... 4

*Williams v. Costco Wholesale Corp.*,
    2010 U.S. Dist. LEXIS 19674 (S.D. Cal. Mar. 4, 2010) .......................................................... 21

*Williams v. Saxon Mortg. Servs.*,
    2014 U.S. Dist. LEXIS 24494 (E.D. Mich. Jan. 13, 2014) ....................................................... 4

*Wilson v. Bank of Am., N.A.*,
    48 F. Supp. 3d 787 (E.D. Pa. Sept. 24, 2014) ......................................................................... 4

**Statutes and Rules**

15 U.S.C. §1692k .................................................................................................................... 16, 17

28 U.S.C. §1715(b) (CAFA) ........................................................................................................ 12

Cal. Bus. & Prof. Code §17200. ......................................................................................... 6, 7, 15

Cal. Civ. Code §1689 .................................................................................................................... 6

Cal. Civ. Code §1788 (Rosenthal Fair Debt Collection Practices Act) ............................. *passim*

Fed. R. Civ. Proc.
    Rule 23(e) ............................................................................................. 2, 3, 12, 13, 21, 22
    Rule 26 ............................................................................................................................ 6

**Other Sources**

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*,
    §11.25 (2002) ............................................................................................................. 2, 12

Manual for Complex Litigation (Fourth) (2004)
    §21.63 ............................................................................................................................ 13
    §21.632 ...................................................................................................................... 2, 15
    §21.633 ............................................................................................................................ 15

1

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

2   In accordance with subsection (e) of Rule 23 of the Federal Rules of Civil Procedure

3 ("Rule 23"), and the Stipulation and Class Action Settlement Agreement (the "Settlement" or

4 "Agreement") filed concurrently, Plaintiffs Phillip R. Corvello and Amira Jackmon

5 ("Plaintiffs") and defendant Wells Fargo Bank, N.A. ("Wells Fargo") seek preliminary

6 approval of a proposed class action settlement on behalf of a certified class of approximately

7 11,506[1] California residential mortgage borrowers who (a) entered a Home Affordable

8 Modification Program ("HAMP") Trial Period Plan ("TPP") with Wells Fargo on or before

9 March 1, 2010, and (b) made the scheduled trial payments, but (c) did not obtain a permanent

10 HAMP loan modification as a result of that TPP (the "Class"). Plaintiffs' Memorandum of

11 Points and Authorities is as follows:[2]

12 **I.  INTRODUCTION**

13   After seven years of litigation, including a landmark appellate opinion in 2013, and

14 class certification in 2016, the parties settled this litigation shortly after the Court's issued its

15 order partially granting Wells Fargo's motion for summary judgment ("MSJ") in May 2017.

16 Under the Class Settlement Agreement, in exchange for a narrow release of the certified

17 claims, the Class recovers $750,000, representing 150% of the maximum monetary relief now

18 available to it, with Class Counsel's attorneys' fees and expenses not to exceed $540,590, and

19 Class notice and administrative costs separately paid by Wells Fargo. *See* Declaration of

20 Timothy Blood in Support of Motion for Preliminary Approval of Class Action Settlement

21 ("Blood Decl."), Ex. A. Under the MSJ order, the only remaining Class claim is for statutory

22 damages under California's Rosenthal Fair Debt Collections Act ("Rosenthal Act"), which are

23 capped at $500,000 plus attorney fees and costs. Class Members also receive a second right to

24 opt out of the Settlement, should they choose to pursue their own claims.

25 ///

26

27 [1]  Class notice went to 11,524 Class Members identified through Wells Fargo records, 18 opted-out of the Class.

28 [2]  Capitalized terms have the same meaning as set forth in the Settlement Agreement.

00122987

1   In addition to the Class Settlement Agreement, the parties negotiated separate

2   individual settlements of the non-certified claims of each representative plaintiff, in order to

3   finally resolve this litigation in its entirety. *See* Blood Decl., Exs. C-D.

4   The Class Settlement Agreement is submitted pursuant to Rule 23(e)(2) for preliminary

5   approval based on the "fair, reasonable, and adequate" standard. *See Cotter v. Lyft, Inc.*, 193 F.

6   Supp. 3d 1030, 1036-37 (N.D. Cal. 2016). As detailed below, the Settlement readily meets this

7   standard because Class Members will receive more than they could receive if the Class claims

8   were tried. Wells Fargo's contemporaneous individual settlements with Corvello and Jackmon

9   are submitted pursuant to the requirement of Rule 23(e)(3) for a "statement identifying any

10   agreement made in connection with the proposal."

11   Wells Fargo's individual settlements with Corvello and Jackmon, which are contingent

12   on final approval of the Class Settlement, represent complete relief on their non-certified

13   contract claims, including contractual and statutory fee shifting. Under his individual

14   settlement, Mr. Corvello receives $6,600 in contractual damages and $1,399,936 for attorney

15   fees and expenses. Under her individual settlement, Ms. Jackmon receives rescission of the

16   foreclosure of her property, reinstatement of her loan with a modification similar to that she

17   would have received under her HAMP, recovery of funds in a trust account into which she has

18   been making monthly security payments, and $1,092,873 for attorney fees and expenses. All

19   totaled, the most that Class Counsel will receive under the three settlements combined is

20   approximately 90% of their actual lodestar incurred. Blood Decl., ¶31.

21   **II.   SUMMARY OF ARGUMENT**

22   At the preliminary approval stage, the Court "make[s] a preliminary determination of

23   the fairness, reasonableness and adequacy of the settlement" so that notice of the Settlement

24   may be given to the Class and a fairness hearing may be scheduled to make a final

25   determination regarding the fairness of the Settlement. *See* 4 Herbert B. Newberg & Alba

26   Conte, *Newberg on Class Actions* ("*Newberg on Class Actions*"), §11.25 (4th ed. 2002);

27   Manual for Complex Litigation (Fourth) (the "*Manual*") §21.632 (2004). In so doing, the

28   Court reviews the Settlement to determine that it is not collusive and, "taken as a whole, is

1  fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688

2  F.2d 615, 625 (9th Cir. 1982); *see also Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th

3  Cir. 2009). "The court's role in reviewing a proposed settlement is to represent those class

4  members who were not parties to the settlement negotiations and agreement." *In re Toys "R"*

5  *Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014).

6      The Class Settlement is fair, reasonable, and adequate because the settlement amount

7  exceeds the total potential Class recovery available at trial. Indeed, the $750,000 to be

8  distributed to the Class Members is 150% of the maximum they could have received at trial. In

9  order to achieve a better result for the Class, Plaintiffs would have had to go through trial

10  solely to reach an appealable judgment, successfully appeal the MSJ order with respect to the

11  restitutionary remedy, *and then* prevail at a second trial. The existence of this unlikely scenario

12  is no basis to disapprove the Class Settlement. To the contrary, the "very essence of a

13  settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"

14  *Officers for Justice*, 688 F.2d at 624.

15      In compliance with Rule 23(e), plaintiffs also submit the contemporaneous individual

16  settlements. These include attorneys' fee payments that significantly exceed the plaintiffs'

17  individual recoveries consistent with California law that attorney fee awards "should be fully

18  compensatory," *Ketchum v. Moses*, 24 Cal.4th 1122, 1133 (2001), and "the joinder of causes

19  of action should not dilute the right to attorney fees," *Akins v. Enterprise Rent-A-Car Co.*, 79

20  Cal. App. 4th 1127, 1133 (2000). *See Mangold v. California Public Utilities Com'n*, 67 F.3d

21  1470, 1478 (9th Cir.1995) (state substantive law governs the award of fees on state law

22  claims). While the Court's role is limited to analyzing the Class Settlement Agreement to

23  determine if it meets the fair, reasonable and adequate standard, separate agreements should

24  also be examined to determine if they negatively impact, either directly or indirectly, the

25  proposed class settlement. Here, because the Class relief far exceeds the maximum available to

26  it at trial, there is no cause to believe that the Class Settlement was negatively impacted by the

27  contemporaneous individual settlements.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   HISTORY OF THE LITIGATION

The Settlement was reached after intense litigation spanning nearly seven years, a trip to the Ninth Circuit resulting in a landmark published ruling reversing an order granting Wells Fargo's motion to dismiss, extensive discovery, obtaining class certification, preparing expert reports and taking discovery on those reports, summary judgment, and trial preparation. These efforts are detailed in the concurrently filed Declaration of Timothy G. Blood. What follows is a brief recitation of the lengthy history in these related actions.

### A.   The Corvello and Jackmon Actions

The Corvello Action was filed on November 9, 2010. Wells Fargo filed a motion to dismiss the Corvello Action in its entirety. The parties fully briefed the motion, and presented oral argument on February 4, 2011. On April 22, 2011, the Hon. Jeffrey S. White granted Wells Fargo's motion, dismissing *Corvello* in its entirety with prejudice.

Corvello timely appealed the dismissal to the Ninth Circuit. On August 8, 2013, the Ninth Circuit reversed the dismissal and remanded the case to this Court. *See Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013). The published Ninth Circuit opinion has proven a landmark decision that has enabled many homeowners to pursue claims against lenders relating to mortgage modification promises.[3]

---

[3]   According to Lexis, the *Corvello* opinion has been cited in 151 decisions, including numerous actions alleging a lender's failure to comply promises in loan modification agreement in general, and HAMP TPP agreements in particular. *See, e.g.*, *Markey v. Ditech Fin. LLC*, 2016 U.S. Dist. LEXIS 129511, at *10-11 (D. Conn. Sept. 22, 2016) (citing *Corvello* and denying motion to dismiss case regarding failure to comply with TPP agreement); *Henderson v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 9326, at *15-16 (D. Conn. Jan. 27, 2016) (same); *Giordano v. Saxon Mortg. Servs.*, 2014 U.S. Dist. LEXIS 137703, at *15-18 (D.N.J. Sept. 29, 2014) (same); *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 811 (E.D. Pa. Sept. 24, 2014) (same); *Laughlin v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 79441, at *22 (D.N.J. June 11, 2014) (same); *Williams v. Saxon Mortg. Servs.*, 2014 U.S. Dist. LEXIS 24494, at *38-44 (E.D. Mich. Jan. 13, 2014); *Lansburg v. Fed. Home Loan Mortg. Corp.*, 607 Fed. Appx. 738, 739 (9th Cir. 2015); *Blankenchip v. CitiMortgage, Inc.*, 2016 U.S. Dist. LEXIS 115053, at *13-15 (E.D. Cal. Aug. 26, 2016) (citing *Corvello* and denying defendant's summary judgment motion); *Wilkins v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 110955, at *13, 25 (E.D. Cal. Aug. 18, 2016) (same re: motion to dismiss); *Schrupp v. Wells Fargo Bank, N.A.*, 2016 U.S. Dist. LEXIS 91177, at *8-10, 18-19 (E.D. Cal. July 13, 2016) (same).

On August 8, 2011, Plaintiff Jackmon filed an individual complaint, which was amended on September 23, 2011, to include class allegations similar to those in the Corvello Action. The Court stayed the Jackmon Action while Corvello was pending before the Ninth Circuit.

### B.   Discovery Efforts

In August 2013, following the Ninth Circuit remand, Plaintiffs Corvello and Jackmon and Wells Fargo engaged in significant fact and expert discovery. On November 13, 2014, the Corvello and Jackmon Actions were deemed related, originally assigned to the Hon. Jeffrey S. White and, from that point forward, litigated together.

In total, Plaintiffs served 68 interrogatories, seven requests for admissions, and 119 document requests. In the course of discovery, and following extensive negotiation of a protocol for the production of electronically stored information, Defendants produced approximately 92,000 pages of documents. Blood Decl., ¶10. Class Counsel created dedicated document databases for this production and reviewed, analyzed and categorized the discovery. *Id.*

Class Counsel also took 12 depositions of Wells Fargo's current and former employees and corporate designees. *Id.*, ¶11. These depositions included Wells Fargo's Head of Wells Home Lending Customer Excellence, Business Initiatives Senior Manager, Collections Manager, the SVP Default Decisioning, and the SVP Default Technology Systems. *Id.*

Wells Fargo also conducted substantial discovery of Plaintiffs. Wells Fargo served interrogatories and document requests and deposed Plaintiffs. *Id.*, ¶12. At various times throughout the Litigation, Plaintiffs searched for and produced supplemental documents and information in response to Wells Fargo's continuing discovery requests. *Id.*, ¶¶12-13.

During the course of the Litigation, Class Counsel communicated with many dozens of potential Class Members who called and wrote in response to class certification and general news articles about the Litigation. Blood Decl., ¶15. Class Counsel collected and analyzed documents and other information from these potential Class Members, including information related to Wells Fargo's servicing of their loans, Wells Fargo's Trial Period Plan ("TPP")

00122987

offers, and the denial of permanent Home Affordable Modification Program ("HAMP") modifications. *Id.* Class Counsel listed some of these absent Class Members on Plaintiffs' witness list disclosures and Wells Fargo deposed them. *Id*. Class Counsel were prepared to call these witnesses at trial.

The Parties also engaged in substantial expert discovery. Seven experts prepared Rule 26 reports and were deposed. Blood Decl., ¶16. In support of the Certified Claims, Plaintiffs retained three experts who provided written reports and deposition testimony, including relating to HAMP's requirements, reasonable borrower behavior, the meaning of the TPP to the least sophisticated borrower, and damages, including Class Member payment-data analysis. Plaintiffs' experts were each highly qualified in their fields. One expert was appointed the California Monitor of the National Mortgage Settlement, and another was the in-house marketing expert for the Bureau of Consumer Protection at the Federal Trade Commission. The latter expert conducted a large consumer survey for this Litigation. Wells Fargo also retained four experts. These experts each provided written reports and were deposed. Their testimony included matters relating to HAMP's requirements, Treasury's intentions, TPP interpretation, and Class Member payment-data analysis. *Id*.

### C.    Class Certification and Notice of Pendency

Class certification was heavily contested. Following full briefing and oral argument, each party submitted two supplemental briefs. Plaintiffs sought certification of a nationwide, or in the alternative, a California-only class for breach of contract. They also sought certification of a California class for claims under the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§1788, *et seq.* ("Rosenthal Act"), California Business & Professions Code §17200, *et seq.* (the "UCL"), and for rescission of the TPP pursuant to Cal. Civ. Code §1689. The motion was fully briefed and again heavily contested. On October 2, 2015, the Court held oral argument concerning the motion for class certification. Following oral argument, the Court requested and the parties provided additional briefing.

On January 29, 2016, the Court issued an order granting in part and denying in part the motion for class certification. The Court granted certification of the Rosenthal Act claim and

the unlawful prong of the UCL, but denied certification of the breach of contract and for rescission of the TPP or restitution of the TPP payments. In March 2016, the Parties submitted supplemental briefing about the scope of the certified claims and Class. The Plaintiffs requested that the Court also certify claims under the UCL's unfair and fraudulent prongs. As a result of this briefing, on April 18, 2016, the Court certified Plaintiffs' claims under all three prongs of the UCL (the UCL and Rosenthal Act claims are the "Certified Claims").

On or about June 28, 2016, the Court-appointed class notice administrator, Garden City Group ("GCG"), mailed the approved class notice to the addresses associated with the 11,524 loans that comprise the Class Members' loans. This is the same Class that is defined in the Settlement Agreement. Eighteen Class Members timely opted out of the Class. In connection with the notice of pendency, the claims administrator established and continues to maintain a website specifically for this Litigation (www.Corvello-JackmonHAMPClassAction.com) where Class Members can obtain documents and other information relating to the Action. The address for the Case Website was listed prominently on the class notice mailed to Class Members, and the Case Website has remained active. This website, which is already known to Class Members, will continue to be used for the proposed Settlement. Agreement, §2.8.

### D.    Trial Preparation and Summary Judgment

On January 27, 2017, Wells Fargo filed a Motion for Summary Judgment on the Certified Claims, as well as the remaining individual claims brought by both Plaintiffs. Wells Fargo also moved to exclude the opinions and testimony of one of Plaintiffs' experts. On May 4, 2017, the Court issued an Order on Summary Judgment in both Actions, entering summary judgment in Wells Fargo's favor as to Plaintiffs' UCL claims, denying the Motion as to Plaintiffs' Rosenthal Act claims, and denying the Motion as to Plaintiffs' individual claims, without prejudice. The Court also found Class Members could not recover their TPP payments on a theory of restitution advocated by Plaintiffs. Thus, the Class was left with only a claim for a maximum award of $500,000 in statutory damages under the Rosenthal Act to be shared among all Class Members.

The Parties have also been preparing for the June 5, 2017 trial. By the time of the order on summary judgment, the Parties had exchanged proposed jury instructions, motions in limine, and exhibit and witness lists. Blood Decl., ¶¶26-28.

### E.    Settlement Negotiations

Over the years, the Parties have periodically engaged in settlement negotiations. On April 27, 2016, the Parties participated in a settlement conference with Magistrate Judge Corley. Further discussions between the Parties and Magistrate Judge Corley took place on May 6, 2016, and May 9, 2016. Despite their good-faith efforts, the Parties were unable to find common ground, with Wells Fargo maintaining that it would not be prepared to enter into meaningful settlement discussions until after summary judgment. Once the Court issued its ruling on summary judgment, the Parties restarted settlement discussions. After numerous discussions and proposals, the Parties ultimately agreed to the proposed Settlement. Blood Decl., ¶29.

## IV.    SETTLEMENT TERMS

### A.    The Settlement Class

The Court previously certified a class of California borrowers. The Settlement Class is the same as the class the Court previously certified: All California residential mortgage borrowers who (a) entered into a Home Affordable Modification Program Trial Period Plan with Wells Fargo Bank, N.A. a/k/a America's Servicing Company effective on or before March 1, 2010, and (b) made the scheduled trial payments, but (c) did not obtain a permanent HAMP loan modification as a result of that TPP. *See* Agreement, §2.5.

As an additional settlement benefit, Class Members are offered another opportunity to opt-out of this Class. *Id*.

### B.    Relief to Class Members

#### 1.    Settlement Payments Mailed Directly to Class Members

Under the Settlement, each Class Member will be paid an equal share of $750,000 (the "Settlement Payments"). Agreement, §4.1. Each Settlement Payment will be about $65, depending on the number of additional opt outs. No one will need to make a claim for his or

1   her payment or take any other action in response to the Class Notice. Instead, the Settlement

2   Administrator will send checks by U.S. mail to each Class Member. *Id.*, §2.2.

3        For any money remaining after distribution, either because of un-cashed checks or a

4   Class Member cannot be located, the amount of money will be redistributed pro rata to those

5   Class Members who cashed their Settlement Payment ("Redistributed Payments"), unless the

6   Redistributed Payments would amount to less than $5 per Class Member, in which case the

7   leftover funds will be distributed *cy pres*. Any monies remaining from the Redistributed

8   Payment checks that are not negotiated within 90 calendar days of issuance will be distributed

9   as a *cy pres* award to the non-profit Community Housing Council of Fresno ("CHC"). *Id.*,

10   §9.2. Thus, none of the $750,000 will be returned to Wells Fargo.

11        Given the direct Mail Notice process, the fact that notice of pendency was recently sent

12   to Class Members at these addresses, the automatic Settlement Payment check process, and a

13   Redistributed Payments provision, the Parties anticipate only a small amount of unclaimed

14   funds. Notwithstanding, CHC is an appropriate *cy pres* recipient in this Litigation. *Nachsin v.*

15   *AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of

16   the lawsuit and the class members, including their location); *Six Mexican Workers v. Ariz.*

17   *Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). CHCF, a 501(c)(3) non-profit and

18   HUD-approved Housing Counseling Agency for Default and Loss Mitigation Counseling,

19   provides counseling and assistance to homeowners throughout the state of California who are

20   struggling with their mortgage obligations. *See* Declaration of John Shore Re: Community

21   Housing Council of Fresno, ¶¶2-7. This includes mortgage default education, workshops and

22   one-on-one advocacy/counseling on behalf of homeowners with lenders and their servicers,

23   including Wells Fargo. *Id.*, ¶¶3, 8. Part of CHC's mission is to educate families about fair

24   housing and lending laws, mortgage fraud and predatory lending. *Id.*, ¶3. There is thus a direct

25   nexus between CHC and the interests of Class Members.

26   ///

27   ///

28   ///

1

2

### 2.  Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Awards

3

4

5

6

7

8

9

All Class Notice and claims administration costs, attorneys' fees and expenses, and the requested Class Representative service awards will be paid Wells Fargo. *See* Settlement Agreement, §10. In connection with final approval, the Class Representatives will make an application for service awards not to exceed $5,000, each, and Class Counsel will make an application for an award of attorneys' fees and expenses for up to $540,590.06 for prosecuting the Certified Claims. Wells Fargo has agreed to pay any awards approved by the Court, up to those amounts. *Id*.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

As discussed in Section V below, the requested fee and expense award is in addition to attorneys' fees and expenses to be paid by Wells Fargo pursuant to the Plaintiffs' settlements of their individual, non-certified claims. The combined fee amounts will result in a fractional multiplier for Class Counsel, meaning Class Counsel seek payment in an amount less than the amounts they incurred. As will be detailed in connection with final approval, the requested class fee and expense award is appropriate under the Rosenthal Act's fee-shifting provision, pursuant to contractual agreement, and under the substantial benefit doctrine. The express purpose of the Rosenthal Act's fee-shifting provision is "to encourage attorneys to pursue…claims despite potentially low recoveries." *Schwarm v. Craighead*, 814 F. Supp. 2d 1025, 1030 (E.D. Cal. 2011). Thus, in appropriate cases, the prosecuting attorneys should receive complete fee recoveries even where only small or even nominal damages are obtained. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012); *Heritage Pacific Financial, LLC v. Monroy*, 215 Cal. App. 4th 972, 1004-1007 (2013) (affirmed $89,489 attorney fees on $1 damage nominal award).

24

25

26

27

Under the proposed final approval briefing scheduled, Class Members will have the opportunity to comment on or object to the fee petition consistent with Ninth Circuit authority and this Court's Civil Standing Order. *See Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 993-94 (9th Cir. Cal. 2010).

28

00122987

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**C.     Release and Waiver**

In consideration for the Settlement's benefits, Class Members will be subject to the following Release, which is limited to the factual predicate at issue in the Litigation and only the claims the Court certified for class treatment:

> Upon the Effective Date, the Releasing Parties shall, by operation of the Judgment, be deemed to have fully, finally, and forever released, relinquished and discharged the Certified Claims in the Corvello Action and the Jackmon Action and shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Released Claim against any Released Party in any court or any forum. For the avoidance of doubt, this Release concerns the Certified Claims, including the allegations that the HAMP TPP or Wells Fargo's use of the HAMP TPP constituted unlawful debt collection or was deceptive, unfair or fraudulent or that the policies, systems, standards, practices, and procedures used by Wells Fargo for reviewing, processing, providing, accepting, denying, or otherwise determining eligibility in connection with Class Members' HAMP loan modification applications or trial plans constituted unlawful debt collection or were deceptive, fraudulent, or unfair in violation of the UCL or Rosenthal Act (collectively, the "Released Claims").

Agreement, §5.1. The Settlement's Release only applies to the Certified Claims regarding a HAMP TPP received from Wells Fargo on or before March 1, 2010. *Id.*, §5.1.1; *see also* Standing Order for Civil Cases Before Judge Vince Chhabria, ¶32. Thus, as made clear to Class Members in the Class Notice, the Release does not apply to claims for breach of contract or any other non-certified claims arising out of the conduct at issue in this litigation. *See* Agreement, Exhibit 2 at 1, 4, 7. The Release is also attached to the Long Form Notice and will be posted on the Settlement Website.

**D.     The Class Notice Plan**

Wells Fargo maintains mailing addresses for many of the Class Members. These addresses were previously used by GCG for mailing the notice of pendency sent to Class Members on or about June 28, 2016. Within twenty days of a preliminary approval order, GCG (the "Settlement Administrator") will send the Mail Notice to the Class Members via first class mail. Agreement, §6.2.1. Before the Mail Notice is sent, the Settlement Administrator will confirm and, as needed, update each address through the National Change of Address database ("NCOA"). *Id*. If any Mail Notices are returned with a forwarding

1    address, the Settlement Administrator will resend the Mail Notice to those addresses. *Id*. This

2    same NCOA address update and remailing process will be used when distributing checks to

3    Class Members. *Id.*, §9.1. Wells Fargo provide notice of the proposed Settlement in

4    accordance with CAFA, 28 U.S.C. §1715(b), to appropriate state and federal government

5    officials. *Id.*, §2.12.

6        The Settlement Administrator will also maintain and administer the nationwide,

7    dedicated Case Website (www.Corvello-JackmonHAMPClassAction.com) to provide

8    potential Class Members with information regarding the Settlement, a general description of

9    the lawsuits, the Settlement relief, important dates and deadlines, and Class Members' legal

10   rights. The Class Website will post the operative complaints in *Corvello* and *Jackmon*, the

11   Settlement Agreement, the Long Form Notice, the Settlement Agreement and its exhibits, an

12   example of the TPP at issue, this memorandum, and, when filed, the Preliminary Approval

13   Order, memorandum in support of the motion for final approval, and memorandum in support

14   of an award of attorneys' fees and reimbursement of costs and expenses, and the Final

15   Approval Order. Agreement, §6.2.2.

16       Finally, the Mail Notice will also direct Class Members to a toll-free telephone number

17   hosted by the Settlement Administrator where they can obtain additional information related to

18   the Settlement. Agreement, §6.2.2.

19   **V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL**

20       **A.    The Class Action Settlement Process**

21       Class actions "may be settled, voluntarily dismissed, or compromised only with the

22   court's approval." Fed. R. Civ. Proc. 23(e). As a matter of "express public policy," federal

23   courts favor and encourage settlements, particularly in class actions, where the costs, delays,

24   and risks of continued litigation might otherwise overwhelm any potential benefit the class

25   could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

26   1992) (noting the "strong judicial policy that favors settlements, particularly where complex

27   class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

28   2008) (same); *see also Newberg on Class Actions*, §11:41 (same, collecting cases). By their

1   very nature, class actions readily lend themselves to compromise; as the difficulties of proof

2   and lengthy duration ratchet up uncertainties regarding the outcome. *Van Bronkhorst v. Safeco*

3   *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly

4   true in class action suits … which frequently present serious problems of management and

5   expense").

6          Rule 23(e) sets forth a "two-step process in which the court first determines whether a

7   proposed class action settlement deserves preliminary approval and then, after notice is given

8   to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v.*

9   *DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Tijero v. Aaron Bros., Inc.*, 2012 U.S.

10  Dist. LEXIS 183238, at *19 (N.D. Cal. 2013) ("The decision of whether to approve a proposed

11  class action settlement entails a two-step process.")); *see also Manual*, §21.63. The

12  preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement

13  made by the court on the basis of written submissions and informal presentations from the

14  settlement parties. *Id.* at §21.632. Nevertheless, the Court's scrutiny of the proposed

15  Settlement will be as rigorous at the preliminary approval stage as at the final approval stage.

16  *See* Standing Order for Civil Cases Before Judge Vince Chhabria, ¶32 (citing *Cotter*, 193 F.

17  Supp. 3d at 1036-37).

18          **B.      The Standard for Preliminary Approval**

19          Rule 23 governs a district court's analysis of the fairness of a class action settlement.

20  *See* Fed. R. Civ. P. 23(e); *see also* Standing Order for Civil Cases Before Judge Vince

21  Chhabria, ¶32. To approve a class action settlement, the Court must determine whether the

22  settlement is "fundamentally fair, adequate and reasonable." *In re Rambus Inc. Derivative*

23  *Litig.*, 2009 U.S. Dist. LEXIS 131845, at *8 (N.D. Cal. Jan. 20, 2009); *see also Officers for*

24  *Justice*, 688 F.2d at 625. "Although Rule 23 imposes strict procedural requirements on the

25  approval of a class settlement, a district court's only role in reviewing the substance of that

26  settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook,*

27  *Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *reh'g denied*, 709 F.3d 791 (2013), *cert. denied*,

28  *Marek v. Lane*, 134 S. Ct. 8 (2013).

If "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). And when class counsel is experienced and supports the settlement, and the agreement was reached after arms-length negotiations, courts should give the settlement a presumption of fairness. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 145701, at *742-43 (N.D. Cal. Oct. 18, 2016); *see also In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286, at *10-11 (N.D. Cal. Mar. 18, 2013) (applying a presumption of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

The Ninth Circuit has articulated six factors to use in evaluating the fairness of a class action settlement: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, 2011 U.S. Dist. LEXIS 118764, at *11 (S.D. Cal. Oct. 13, 2011). "The relative degree of importance to be attached to any particular factor will depend on the unique circumstances of each case." *Officers for Justice*, 688 F.2d at 625.

"Because class members will subsequently receive notice and have an opportunity to be heard," the court "need not review the settlement in detail at this juncture." *In re ML. Stern Overtime Litig.*, 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13, 2009). "[I]nstead, preliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval'" *Id.* at *9-10 (quoting *Newberg on Class Actions*, §11.25); *see also Manual*, §§2l.632, 21.633.

To determine whether a proposed settlement is "within the range of possible approval," the Court must also ensure it is "not the product of fraud or overreaching by, or collusion

between, the negotiating parties." *Id.* at 625; *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Thus, to preliminarily assess the reasonableness of the Parties' proposed settlement, the Court should review both the substance of the deal and the process used to arrive at the settlement. *See In re Tableware*, 484 F. Supp. 2d at 1080.

Because Class Members will automatically receive more through this Settlement than they would achieve after a trial, the Settlement exceeds the requirements for preliminarily approval. All of the relevant factors set forth by the Ninth Circuit for evaluating the fairness of a settlement at the final stage weigh in favor of preliminary approval.

### C. The Settlement Meets the Preliminary Approval Standard

#### 1. The Strengths of Plaintiffs' Case and Risks Inherent in Continued Litigation and in Securing Certification Favor Preliminary Approval

Settlements resolve the inherent uncertainty on the merits, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this regard – the Parties disagree about the merits, and there is substantial uncertainty about the Action's ultimate outcome. While Plaintiffs believe their case is strong, the Court's ruling on Wells Fargo's motion for summary judgment struck a blow to the Class' request for remedies. Nonetheless, the Settlement provides greater relief than the Class could receive after trial.

Assuming that litigation was to proceed, the hurdles that Plaintiffs face prior to a successful verdict at trial are substantial, and the potential upside, limited by the remaining claims and remedies. The Court certified claims under the Rosenthal Act and the UCL for class treatment. Nevertheless, as a result of the summary judgment order, only the Rosenthal Act claim was left for the Class. *See Corvello*, ECF No. 203. The Court also substantially limited this Rosenthal Act claim. The remedies under the Rosenthal Act include statutory and actual damages, restitution, injunctive relief, a statutory penalty, and an award of fees and expenses to the prevailing party. *See* Cal. Civ. Code §1788.17; 15 U.S.C. §1692k(a). But any basis for recovering Plaintiffs' TPP payments as actual damages or restitution under the Rosenthal Act was also foreclosed by the Court's order. While Plaintiffs sought damages and

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    restitution in an amount equaling Class Members' TPP payments, the Court found that a

2    refund of the TPP payments was not appropriate:

3        By making the TPP payments, the borrowers had the right to stay in their
         homes. The plaintiffs do not dispute that class members would have lost this
4        right if they hadn't made the TPP payments. But they have not presented any
         theory of restitution that accounts for this benefit…The potential ability of
5        borrowers to take advantage of Wells Fargo's institutional limitations by
         staying in their homes without making any payments could not possibly justify
6        restitution of the full TPP payment amounts.

7    Order at 5. Left without an ability to recover their TPP payments, the maximum potential

8    recovery for Class Members was a $500,000 statutory penalty award under the Rosenthal Act.

9        There was also some risk that Plaintiffs would not prevail on the merits of the

10   Rosenthal Act claim at trial. The Court's summary judgment order did not decide whether the

11   objective, least sophisticated borrower may have been deceived or misled by the TPP. Indeed,

12   Wells Fargo argued that its conduct complied with HAMP's supplemental directives and

13   Treasury's guidelines, that it was required by Treasury to use the TPP form it used, and that

14   the TPP could not be reasonably read or interpreted to automatically provide all Class

15   Members with a permanent modification at the end of the three or four-month trial period.

16   According to Wells Fargo, because Class Members did not satisfy the TPP's requirements,

17   they could have no claim the TPP was deceptive. *See Corvello*, ECF No. 184 at 3.

18       Wells Fargo retained several experts in support of its arguments. Marcel Bryar, a

19   former Fannie Mae employee who had oversight responsibilities on HAMP's 2009 rollout to

20   Wells Fargo and other participating banks, testified about Treasury's goals and intentions with

21   HAMP, as well as Wells Fargo's requirements under HAMP. According to Mr. Bryar,

22   Plaintiffs' interpretation of the TPP "is inconsistent with HAMP's guidelines and the

23   program's primary goal" and Treasury intended to convey in the TPP that "borrowers were not

24   guaranteed a permanent modification, especially those borrowers who had not yet delivered

25   the documentation necessary to verify their income." Bryar Report, ¶¶17-18. Wells Fargo also

26   retained Professor Bruce Carlin, a consumer finance and financial literacy expert, who opined

27   about rational economic behavior, and the clarity and reasonable borrower interpretation of the

28   TPP. According to Professor Carlin, the TPP "clearly laid out the responsibilities of distressed

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

borrowers [and] the specific actions they had to undertake in order to be eligible for the permanent HAMP modification." Carlin Report, ¶11. Professor Carlin also opined that "it was unlikely that the least sophisticated debtor would conclude" that a TPP decision would be rendered within three or four months, and in any event, it was rational for Class Members to enroll in the TPP to delay foreclosure even though they knew they might not qualify for a permanent modification. *Id.*, ¶¶11, 17.

Although a violation of the Rosenthal Act subjects Wells Fargo to a civil penalty of up to $500,000, the civil penalty that could be awarded is discretionary and no award is automatic. *See* Cal. Civ. Code §1788.17; 15 U.S.C. §§1692k(a)-(b); *Gaudin v. Saxon Mortg. Servs.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013) ("Determining damages from the proposed Rosenthal Act violation may not be as formulaic as Plaintiff suggests. The $500,000 statutory damages amount in 15 U.S.C. §1692k(a)(2)(B) is a ceiling rather than an automatic entitlement."); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011) (affirming jury award of $112,500 to class members on a Rosenthal Act claim). Wells Fargo disputes the evidence supporting the factors that would be considered in determining the statutory damage award. *See* 15 U.S.C. §1692k(b)(2) (factors used to determine the penalty amount include "the frequency and persistence of noncompliance … the nature of noncompliance … and the extent to which the debt collector's noncompliance was intentional"). Thus, even if Plaintiffs had prevailed on the merits there was no guarantee the full Rosenthal Act statutory penalty would be awarded, or any at all.

Given the uncertainties and limited upside of continued litigation, this factor weighs in support preliminary approval of the Settlement Agreement.

## 2. The Risk, Complexity, Expense, and Duration of the Litigation Favor Preliminary Approval

The risk, expense, complexity, and duration of the case if litigated rather than settled weighs heavily in favor of preliminary (and, ultimately, final) approval of the Settlement. Given the posture of the case and the amount of the Settlement, there is little upside to continue litigation. The Settlement achieves now more than the Class could reasonably hope to

00122987

1   obtain in this case, absent success on a risky and lengthy appeal. Meanwhile, significant risk

2   exists, as shown by the Court's ruling on Wells Fargo's motion for summary judgment.

3        Here, the proposed Settlement provides substantial benefits to all Class Members who

4   do not need to do anything to receive the Settlement Payments. The proposed Settlement

5   provides this guaranteed recovery for the Class, while obviating the risks and delays of

6   continued litigation, trial and appeal. *See Create-A-Card, Inc. v. INTUIT, Inc*., 2009 U.S. Dist.

7   LEXIS 93989, at *13 (N.D. Cal. Sept. 22, 2009). The expense, complexity and duration of

8   litigation are significant factors considered in evaluating the reasonableness of a settlement.

9   Litigating this class action through trial would be time-consuming and expensive, only to

10   obtain less than is immediately available through the Settlement. Indeed, should Class Counsel

11   prosecute the Rosenthal Act claims against Wells Fargo to conclusion there is a very real risk

12   that Class Members may receive nothing. That a settlement would eliminate the delay and

13   expenses strongly weighs in favor of approval. *See Nobles v. MBNA Corp*., 2009 U.S. Dist.

14   LEXIS 59435, at *15 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in

15   continued litigation are factors for the Court to balance in determining whether the Settlement

16   is fair."); *Kim v. Space Pencil, Inc.*, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28,

17   2012) ("The substantial and immediate relief provided to the Class under the Settlement

18   weighs heavily in favor of its approval compared to the inherent risk of continued litigation,

19   trial, and appeal, as well as the financial wherewithal of the defendant.").

20        By reaching this Settlement, the Parties establish a means for prompt resolution of

21   Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful

22   benefits to Class Members. Given the alternative of continued, complex litigation before this

23   Court, the risks involved in such litigation that Class Members might get nothing, and the

24   possibility of further appellate litigation, the availability of prompt relief under the Settlement

25   is highly beneficial to the Class.

26

27

28

00122987

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### 3. The Automatic Settlement Payments Provided By the Settlement Agreement Favors Preliminary Approval

The Settlement Agreement provides real relief for the Class. The Settlement Payments will be mailed directly to Class Members by first class mail. Each Class Member will receive a check for approximately $65. This amount is subject to upward adjustment, but not downward adjustment, depending on the number of opt-outs or if Redistribution Payments are made. Agreement, §§4.1, 9.2.

In evaluating the fairness of the consideration offered in settlement, the court should give significant weight to the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

### 4. The Extent of Discovery and Stage of Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528.

On the eve of trial, the Settlement was reached after nearly seven years of hard-fought litigation and extensive discovery. Fact discovery in these Actions was closed at the time the Settlement was reached. Prior to reaching the Settlement, Class Counsel obtained and reviewed approximately 92,000 pages of documents from Wells Fargo, deposed 12 Wells Fargo employees, and four of Wells Fargo's litigation experts. Plaintiffs provided written responses to discovery, produced documents, and sat for their depositions. Additionally, Class

1  Counsel communicated with dozens of absent Class Members, four of whom were listed on

2  Plaintiffs' witness list for trial and were subsequently deposed by Wells Fargo. Blood Decl.,

3  ¶15.

4      The Action also involved substantial expert work. Wells Fargo provided reports from

5  four individuals it designated as experts. Class Counsel deposed each of those individuals.

6  Plaintiffs also retained three of their own experts to provide testimony in support of the

7  Certified Claims. Each of these experts provided written reports and had their depositions

8  taken. One of Plaintiffs' experts, Dr. Thomas Maronick, also conducted a consumer survey for

9  this litigation. Blood Decl., ¶16.

10      The Parties had also engaged in substantial motion practice at the motion to dismiss,

11  class certification, and summary judgment stages. Prior to the summary judgment ruling and

12  reaching the Settlement, the Parties had also prepared or exchanged proposed jury instructions,

13  voir dire questionnaires, exhibit lists, and motions in limine. Blood Decl., ¶¶26-28.

14      The significant discovery and litigation occurring prior to Settlement support

15  preliminary approval of the Settlement. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573,

16  588 (N.D. Cal. 2015).

17            **5.**      **The Experience and Views of Counsel**

18      Class Counsel have substantial experience serving as class counsel in hundreds of

19  actions, and endorse the Settlement as fair, reasonable, and adequate. Blood Decl., ¶33.

20            **6.**      **The Settlement Agreement Is Fair to Plaintiffs and Class Members**

21      The proposed Settlement is fair as to all Class Members in that they need not do

22  anything to receive the Settlement Payments, which exceed the amount that could be received

23  if trial was a complete success. Further, Plaintiffs do not receive any unduly preferential

24  treatment under the Settlement. With the exception of potentially receiving a modest service

25  award to account for their willingness to step forward and represent other Class Members, and

26  to compensate them for their substantial time and effort devoted to prosecuting the Certified

27  Claims, Plaintiffs are treated the same as every other Class Member. Such service awards are

28  "fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958; *see also In re Simon v.*

00122987

1   *Toshiba Am.*, No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr.

2   30, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist.

3   LEXIS 19674, at *10 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service

4   fee for himself which is not available to other class members, the fee appears to be reasonable

5   in light of [plaintiff's] efforts on behalf of the class members."); *In re M.L. Stern*, No. 07cv118

6   BTM (JMA), 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. Oct. 9, 2009) (granting final

7   approval and awarding class representative class enhancement awards of $15,000 per class

8   representative).[4]

9   **VI.   RULE 23(e)(3): SETTLEMENT OF PLAINTIFFS' INDIVIDUAL CLAIMS**

10          Rule 23(e)(3) requires that the parties seeking approval of a class action settlement to

11   "file a statement identifying any agreement made in connection with the proposal." Fed. R.

12   Civ. Proc. 23(e)(3). "This provision does not change the basic requirement that the parties

13   disclose all terms of the settlement or compromise that the court must approve under Rule

14   23(e)(1). It aims instead at related undertakings that, although seemingly separate, may have

15   influenced the terms of the settlement by trading away possible advantages for the class in

16   return for advantages for others. Doubts should be resolved in favor of identification. … The

17   court may direct the parties to provide to the court or other parties a summary or copy of the

18   full terms of any agreement identified by the parties" Advisory Committee Notes to 2003

19   Amendment to Rule 23.

20          In accordance with Rule 23(e)(3), Plaintiffs submit the separate individual settlements

21   that each entered into with Wells Fargo relating to their non-class claims, including their

22   individual breach of contract claims. Under the individual settlement agreements, Plaintiff

---

23   [4]      As will be more fully explained in the petition for fees, expenses, and service awards,

24   Plaintiffs Corvello and Jackmon have devoted substantial time and effort to this Action. By
     way of example, Mr. Corvello has exchanged over 200 emails with Class Counsel since 2010

25   in furtherance of this litigation. Plaintiffs have participated in the discovery process, provided
     written responses to requests, repeatedly checked for and provided requested documents, and

26   despite the length history of this litigation, continued to receive litigation updates on almost a
     monthly basis. Plaintiffs were prepared and committed to devoting substantial time to the

27   upcoming trial as well. Blood Decl., ¶13; *see also id.*, ¶14 (Ms. Jackmon has devoted
     significant time and efforts to this Litigation).

28

00122987

Jackmon (who still possesses her home) will receive a modified mortgage agreement and Plaintiff Corvello (whose home was sold at foreclosure) will receive an amount equaling his three trial payments. In exchange, Plaintiffs will provide Wells Fargo with a complete release of all claims, known and unknown, they could assert against Wells Fargo and others, including the investors of their loans. In addition, Class Counsel will receive amounts for their time and expenses approximated as not devoted solely to the Certified Claims. *See* Blood Decl., ¶30; *see also Rowe v. E.I du Pont De Nemours & Co.*, 2011 U.S. Dist. LEXIS 96450, at *21-22 (D.N.J. Aug. 26, 2011) ("As the parties represented to the Court, these agreements release numerous, individual claims brought by class representatives that were not certified for class treatment.").

The Class settlement is not contingent on these individual settlements. Instead, the individual settlements will only go into effect if the Class Settlement is approved. This provides further evidence of the Class Representatives' commitment to the Class. Further, the individual settlements only relate to individual claims not certified for class treatment.

## VII.   THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement and the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. In this Circuit, it has long been the case that a notice of settlement will be adjudged "'satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill*, 361 F.3d at 575); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present information

00122987

1    "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the

2    settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

3        The proposed Class Notice more than satisfies these requirements. The Parties have

4    negotiated and drafted the Class Notice, which is written in simple terminology and includes:

5    (1) basic information about the Action; (2) a description of the benefits provided by the

6    Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an

7    explanation of how Class Members can exercise their right to opt-out or object to the

8    Settlement; (5) an explanation that any Certified Claims, but only the Certified Claims, against

9    Wells Fargo will be released if the Class Member does not opt-out from the Settlement; (6) the

10   names of Class Counsel and information regarding attorneys' fees, expenses, and the service

11   award; (7) the Final Approval Hearing date; (8) an explanation that each Settlement Class

12   Member has the right to appear at the Final Approval Hearing; and (9) the Class Website

13   address and a toll-free number where additional information can be obtained. *See* Settlement

14   Agreement, Exs. 1-2.

15       The contents of the proposed Class Notice are more than adequate, and comply with

16   the Federal Judicial Center's model class action notices and this Court's Standing Order. *See*

17   http://www.fjc.gov (last visited June 15, 2017); *In re Skechers Toning Shoe Prods. Liab. Litig.*,

18   No. 3:11-MD-2308, 2012 U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky. Aug. 13, 2012)

19   (approving class notices that "comply with the Federal Judicial Center's illustrative class

20   action notices"); Fed. R. Civ. P. 23 Advisory Committee Notes (2003); *Carr v. Tadin, Inc.*,

21   No. 12-cv-3040 JLS(JMA), 2014 U.S. Dist. LEXIS 179835, at *22 (S.D. Cal. Apr. 18, 2014)

22   (approving a notice of class action settlement, observing "the notices . . . 'mirror the exemplar

23   notices set forth in the Federal Judicial Center, Class Action Notice and Claims Process

24   Checklist (2010)'"); Standing Order for Civil Cases Before Judge Vince Chhabria, ¶32. The

25   Class Notice provides Class Members with sufficient information to make an informed and

26   intelligent decision whether to object to the Settlement. As such, it satisfies the content

27   requirements of Rule 23. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*,

28   216 F.R.D. 197, 203 (D. Me. 2003) ("'notice must describe fairly, accurately and neutrally the

1  claims and parties in the litigation . . . entitled to participate, including the right to exclude

2  themselves from the class.'"); *see also Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005

3  (9th Cir. 2012) (enforcing judgment and settlement agreement in prior related action against

4  plaintiff did not violate plaintiff's due process rights where plaintiff was a party to the prior

5  suit and was provided full notice of the release and covenant not to sue provisions of the

6  settlement agreement and rejected opt out opportunity).

7  Additionally, the proposed dissemination of the Class Notice satisfies all due process

8  requirements. The Settlement provides that the independent Settlement Administrator will

9  provide notice to the Class after preliminary approval of the Settlement by the Court. As

10  discussed in Section III.D above, the Settlement Administrator will send Mail Notice directly

11  to the Class Members via first class mail after re-checking and updating address information.

12  Additionally, Class Notice will be available through the Class Website specifically established

13  for this Action.

14  In sum, the contents and dissemination of the proposed Class Notice constitute the best

15  notice practicable under the circumstances and fully complies with Rule 23's requirements.

16  **VIII.   THE PROPOSED SCHEDULE OF EVENTS**

17  The key Settlement-related dates, such as the time to send Mail Notice or to opt-out or

18  object, are based on when preliminary approval of the Settlement is granted, and when the

19  Final Approval Hearing is scheduled. The Settlement-related dates calculated in accordance

20  with the provisions of the Settlement are:

| EVENT | DEADLINE |
| --- | --- |
| Dissemination of Class Notice | Within twenty (20) calendar days after entry of the Preliminary Approval Order |
| Motion for final approval and request for attorneys' fees | No later than forty-five (45) calendar days prior to the Final Approval Hearing |
| Oppositions to final approval and deadlines for objections, opt-outs and notices to appear | No later than thirty (30) calendar days prior to the Final Approval Hearing |
| Replies to final approval and response to objections | No later than seven (7) calendar days prior to the Final Approval Hearing |
| First day Final Approval Hearing can be set | No earlier than ninety-five (95) calendar days after entry of Preliminary Approval Order |

00122987

1    Accordingly, the Parties request that the Court schedule the Final Approval Hearing

2    ninety-five (95) days after entry of its order granting preliminary approval, or as soon

3    thereafter as the Court's schedule permits.

4    **IX.    CONCLUSION**

5    For the reasons set forth above, the Parties respectfully request the Court: (1) grant

6    preliminary approval of the Settlement reached by the Parties; (2) approve the Parties'

7    proposed form, method, and schedule for disseminating Class Notice to the Class; (3) establish

8    deadlines for the Class Members to object to, or request exclusion from the Settlement; and

9    (4) set a date for the Final Approval Hearing.

10                                   Respectfully submitted,

11   Dated: June 30, 2017                BLOOD HURST & O'REARDON, LLP
                                         TIMOTHY G. BLOOD (149343)
12                                       THOMAS J. O'REARDON II (247952)
                                         PAULA R. BROWN (254142)
13

14                                       By:          *s/ Timothy G. Blood*
                                                 TIMOTHY G. BLOOD
15
                                         701 B Street, Suite 1700
16                                       San Diego, CA 92101
                                         Tel: 619/338-1100
17                                       619/338-1101 (fax)
                                         tblood@bholaw.com
18                                       toreardon@bholaw.com
                                         pbrown@bholaw.com
19
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
20                                       STEVE W. BERMAN (Pro Hac Vice)
                                         THOMAS E. LOESER (202724)
21                                       1918 Eighth Avenue, Suite 330
                                         Seattle, WA 98101
22                                       Tel: 206/623-7292
                                         206/623-0594 (fax)
23                                       steve@hbsslaw.com
                                         toml@hbsslaw.com
24                                       LAW OFFICE OF PETER FREDMAN PC
                                         PETER B. FREDMAN (189097)
25                                       125 University Ave., Suite 102
                                         Berkeley, CA 94710
26                                       Tel: 510/868-2626
                                         510/868-2627 (fax)
27                                       peter@peterfredmanlaw.com

                                         *Class Counsel*
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

00122987

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on June 30, 2017, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have

5

mailed the foregoing document or paper via the United States Postal Service to the non-

6

CM/ECF participants indicated on the Electronic Mail Notice List.

7

I certify under penalty of perjury under the laws of the United States of America that

8

the foregoing is true and correct. Executed on June 30, 2017.

9

10

<u>                       s/  Timothy G. Blood                       </u>
TIMOTHY G. BLOOD

11

12

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28