1 | HAGENS BERMAN SOBOL SHAPIRO LLP | BLOOD HURST & O'REARDON, LLP

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (Pro Hac Vice)
THOMAS E. LOESER (202724)
1918 Eighth Avenue, Suite 330
Seattle, WA  98101
Tel: 206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com
toml@hbsslaw.com

LAW OFFICE OF PETER FREDMAN
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA  94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Tel: (619) 338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

*Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| PHILLIP R. CORVELLO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE d/b/a AMERICA'S SERVICING COMPANY,<br><br>Defendant. | Case No. 4:10-CV-05072-VC<br><br>**DECLARATION OF TIMOTHY G. BLOOD IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>CLASS ACTION<br><br>Judge:        Honorable Vince Chhabria<br>Courtroom:  4, 17th Floor<br><br>Date Filed:      November 9, 2010 |
| AMIRA JACKMON, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICA'S SERVICING COMPANY and WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 3:11-cv-03884-VC<br><br><br><br>Date Filed:      August 8, 2011 |

1    I, TIMOTHY G. BLOOD, declare as follows:

2        1.      I am an attorney duly licensed to practice before all courts of the State of

3    California and am admitted to practice in this Court. I am the managing partner at Blood Hurst

4    & O'Reardon, LLP, one of the Class Counsel in *Phillip Corvello v. Wells Fargo Bank, N.A.*,

5    No. 10-cv-05072-VC ("Corvello Action") and *Amira Jackmon v. America's Servicing*

6    *Company, et al.*, 11-cv-03884-VC ("Jackmon Action") (together, the "Action" or

7    "Litigation"). I have personal knowledge of the matters stated herein and, if called upon, I

8    could and would competently testify thereto. I submit this declaration in support of Plaintiffs'

9    Motion for Preliminary Approval of Class Action Settlement.

10       2.      A copy of the Stipulation and Class Action Settlement (the "Settlement" or

11   "Agreement") is attached hereto as Exhibit A. A copy of the proposed Order Granting

12   Preliminary Approval is attached hereto as Exhibit B. The proposed order is also Exhibit 3 to

13   the Settlement Agreement.

14       3.      This Litigation has been hard-fought from the very beginning. The Settlement

15   was reached after intense litigation spanning nearly seven years, a trip to the Ninth Circuit

16   resulting in a published ruling reversing an order granting Wells Fargo's motion to dismiss,

17   extensive discovery that included 26 depositions, a successful motion for class certification,

18   successful opposition to Wells Fargo's Rule 23(f) petition, preparation of expert reports and

19   discovery of the experts, summary judgment, and trial preparation.

20                          **INITIATION OF THE CORVELLO ACTION**

21                          **AND THE NINTH CIRCUIT APPEAL**

22       4.      The Corvello Action was filed on November 9, 2010. (*Corvello* ECF No. 1).

23   Wells Fargo filed a motion to dismiss the Corvello Action in its entirety. (*Corvello* ECF No.

24   13). The parties fully briefed the motion, and presented oral argument on February 4, 2011. On

25   April 22, 2011, the Hon. Jeffrey S. White granted Wells Fargo's motion, dismissing *Corvello*

26   in its entirety with prejudice. (*Corvello* ECF No. 35).

27       5.      Corvello timely appealed the dismissal to the Ninth Circuit. After full briefing

28   and oral argument, on August 8, 2013, the Ninth Circuit reversed the dismissal and remanded

1  the case to this Court. *See Corvello v. Wells Fargo Bank, N.A.*, 728 F.3d 878 (9th Cir. 2013).

2         6.      On March 22, 2016, Corvello filed a motion for leave to file an amended

3  complaint to a claim for violation of the Rosenthal Fair Debt Collection Practices Act, Cal.

4  Civil Code §§1788, *et seq.* ("Rosenthal Act"). (*Corvello* ECF No. 132). On April 5, 2016,

5  Wells Fargo filed its opposition to the motion for leave. (*Corvello* ECF No. 139). On April 7,

6  2016, in connection with the hearing on the contested motion for approval of notice of

7  pendency of the class action, the Court granted Plaintiff's motion for leave. (*Corvello* ECF No.

8  140).

9                              **THE JACKMON ACTION**

10        7.      On August 8, 2011, Plaintiff Jackmon filed an individual complaint, which was

11  amended on September 23, 2011, to include class allegations similar to those in the Corvello

12  Action. (*Jackmon* ECF No. 36). The Court stayed the *Jackmon* Action while *Corvello* was

13  pending before the Ninth Circuit.

14        8.      On November 13, 2014, the Corvello and Jackmon Actions became "related"

15  and the Actions were litigated together (collectively, the "Litigation").

16        9.      After the successful appeal in *Corvello*, the district court found *Jackmon*, *Lucia*

17  *v. Wells Fargo Bank* and *Corvello* actions related and assigned the cases to Judge White.

18             **RELATED ACTIONS: SUMMARY OF DISCOVERY EFFORTS**

19        10.     **Written Discovery and Document Requests:** In total, Plaintiff Corvello

20  served 70 document requests, 15 interrogatories, and 7 requests for admissions. In total,

21  Plaintiff Jackmon served four 30(b)(6) deposition notices totaling 71 categories of examination

22  and including 11 categories of document requests, three sets of interrogatories totaling 53

23  interrogatories, and three sets of documents requests totaling 38 requests. In the course of

24  discovery, and following extensive negotiation of a protocol for the production of

25  electronically stored information, Wells Fargo produced approximately 92,000 pages of

26  documents. Class Counsel coded and analyzed these documents on dedicated document

27  database systems.

28

00122736    BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

11. **Wells Fargo Fact Witness and Rule 30(b)(6) Depositions:** Class Counsel also took 12 depositions of Wells Fargo's current and former employees and corporate designees. These depositions included defendant's Head of Wells Home Lending Customer Excellence (information relating to Wells Fargo's initial participation in and implementation of HAMP, including high-level Treasury communications), Business Initiatives Senior Manager (information relating to Wells Fargo's implementation of HAMP during the class period), Collections Manager (information regarding the management and operation of the Collections Department with respect to HAMP, including placing borrowers on HAMP TPPs during the class period), Wells Fargo's SVP Default Decisioning (led HAMP teams at Wells Fargo in 2009 and Wells Fargo's HAMP program office in 2010), and the SVP Default Technology Systems (was the HAMP technology leader):

| DATE | DEPONENT |
|------|----------|
| 8/24/14 | Paul Brown |
| 9/16/14 | Kerri Crabtree |
| 12/11/14 | Mario Nardi |
| 5/11/15 | Ronnie Rittenhouse |
| 5/12/15 | Ben Windust |
| 5/29/15 | Jeremy Vaught |
| 9/8/16 | Ridge Hottle |
| 9/14/16 | Alan Kuspa |
| 9/15/16 | Jean Larson |
| 9/29/16 | Robert Caruso |
| 10/14/16 | Mary Coffin |
| 1/18/17 | Jeremy Vaught |

12. **Discovery Conducted by Wells Fargo:** Wells Fargo also conducted substantial discovery of Plaintiffs. Wells Fargo served interrogatories, and several sets of document requests, and deposed each Plaintiff. At various times throughout the Litigation, Plaintiffs searched for and produced supplemental documents and information in response to Wells Fargo's continuing discovery requests. Mr. Corvello provided Wells Fargo with substantial documentation, including highly sensitive tax returns, bank statements, and income documentation.

13. **Summary of Plaintiff Corvello's Efforts:** Consistently throughout the Litigation, attorneys and profession staff from my office met and otherwise communicated with Mr. Corvello to keep him informed about the Litigation, obtain his assistance in

BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

responding to discovery requests, assist us in investigating various factual aspects of the case and prepare him for his deposition, which my firm defended. I have found Mr. Corvello to be an exemplary named plaintiff. He has always been ready, willing and able to assist, has remained interested in the case and devoted to his role as class representative and has consistently professed a desire to act in the best interests of the Class. He has been very involved in the litigation and has maintained consistent contact with my firm (particularly with my partner, Thomas O'Reardon), throughout the Litigation. Mr. Corvello has received monthly and at times weekly updates on the Litigation. Between making himself available for strategy calls and case updates at our request, and initiating calls himself, Mr. Corvello has participated in dozens of calls throughout this Litigation. He has also made substantial efforts to maintain contact through email. For example, since October 2011, my office has exchanged over 200 emails with Mr. Corvello in furtherance of the Litigation. Mr. Corvello has repeatedly checked for and provided updated documents in response to Wells Fargo's discovery requests and Class Counsel's own investigation, including through efforts he made himself at his bank, with his employer, and through the IRS. Over the course of the Litigation, Mr. Corvello has driven several hundred miles to deliver documents, fax documents, and attend appointments in furtherance of the Litigation. Mr. Corvello was committed to testifying at trial in support of his own individual claims and of those of the Class.

14. **Summary of Plaintiff Jackmon's Efforts:** On May 27, 2011, Wells Fargo foreclosed on the Ms. Jackmon's property and proceeded to evict her. On August 8, 2011, she filed this action in *pro se* along with a motion for a temporary restraining order and preliminary injunction to prevent her post-foreclosure eviction. *See Jackmon* ECF No. 1-2. On August 22, 2011, the Court granted the preliminary injunction on the grounds that "serious questions going to the merits of whether Defendants breached the [HAMP TPP]". *See Prelim. Inj. Order* at 3 (*Jackmon* ECF No. 21). The Court also invited Plaintiff to file an amended complaint. *Id.* at 4. At that point, plaintiff retained class counsel and agreed to have the case proceed as a class action on behalf of all persons similarly situated pursuant to her first amended complaint filed September 23, 2011. *See* ECF No. 36. She has served tirelessly as a

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    class representative for nearly six years now.

2        15.    **Absent Class Member Communications and Depositions:** During the course

3    of the Litigation, Class Counsel communicated with many dozens of potential Class Members

4    who called and wrote in response to class certification and general news articles about the

5    Litigation. Class Counsel collected and analyzed documents and other information from these

6    potential Class Members, including information related to Wells Fargo's servicing of their

7    loans, Wells Fargo's Trial Period Plan ("TPP") offers, and the denial of permanent Home

8    Affordable Modification Program ("HAMP") modifications. Class Counsel listed some of

9    these absent Class Members on Plaintiffs' witness list disclosures and Wells Fargo deposed

10   four of them. Class Counsel met with each of the absent Class Members, spoke with them on

11   several occasions, and defended each of their depositions. Class Counsel were prepared to call

12   these witnesses at trial.

13       16.    **Expert Discovery Efforts:** The Parties also engaged in substantial expert

14   discovery. Seven experts prepared Rule 26 reports and were deposed on matters relating to the

15   Certified Claims. In support of the Certified Claims, Plaintiffs retained three experts who

16   provided written reports and deposition testimony, including relating to HAMP's

17   requirements, reasonable borrower behavior, the meaning of the TPP to the least sophisticated

18   borrower, and damages, including Class Member payment-data analysis. Plaintiffs' experts

19   were each highly qualified in their fields. One expert was appointed by the California Attorney

20   General as the California Monitor of the National Mortgage Settlement, and another was the

21   in-house marketing expert for the Bureau of Consumer Protection at the Federal Trade

22   Commission. The latter expert conducted a large consumer survey for this Litigation. Wells

23   Fargo also retained four experts. These experts each provided written reports and were

24   deposed. Their testimony included matters relating to HAMP's requirements, Treasury's

25   intentions, TPP interpretation, and Class Member payment-data analysis.

26   ///

27   ///

28   ///

**RELATED ACTIONS:**
**CLASS CERTIFICATION AND NOTICE OF PENDENCY**

17.     Class certification was heavily contested. Following full briefing and oral argument, each party submitted two supplemental briefs. (*Corvello* ECF Nos. 75, 89, 97, 103-104, 124, 129, 136). Plaintiffs sought certification of a nationwide, or in the alternative, a California-only class for breach of contract. They also sought certification of a California class for claims under the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§1788, *et seq*. ("Rosenthal Act"), California Business & Professions Code §17200, *et seq*. (the "UCL"), and for rescission of the TPP pursuant to Cal. Civ. Code §1689. The motion was fully briefed and again heavily contested. On October 2, 2015, the Court held oral argument concerning the motion for class certification. Following oral argument, the Court requested and the parties provided additional briefing.

18.     On January 29, 2016, the Court issued an order granting in part and denying in part the motion for class certification. (*Corvello* ECF No. 114). The Court granted certification of the Rosenthal Act claim and the unlawful prong of the UCL, but denied certification of the breach of contract claim and for rescission of the TPP or restitution of the TPP payments. In March 2016, the Parties submitted supplemental briefing about the scope of the certified claims and the Class. (*Corvello* ECF Nos. 124, 129, 136). The Plaintiffs requested that the Court also certify claims under the UCL's unfair and fraudulent prongs. As a result of this briefing, on April 18, 2016, the Court certified Plaintiffs' claims under all three prongs of the UCL (the UCL and Rosenthal Act claims are the "Certified Claims"). (*Corvello* ECF No. 144).

19.     Following the supplemental order on class certification, Wells Fargo filed a petition for leave to appeal pursuant to Fed. R. Civ. P. 23(f). (*Corvello/Jackmon*, Ninth Circuit Case No. 16-80057, ECF No. 1). On May 11, 2016, Plaintiffs filed their answer to the petition. (*Id.*, ECF No. 2.). The Ninth Circuit denied the petition to appeal on July 25, 2016. (*Id.*, ECF No. 3).

20.     Plaintiffs' motion approval of a class notice plan was also contested and required extensive briefing. (*Corvello* ECF Nos. 125, 130, 134). By order dated April 18,

00122736

BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  2016, which followed oral argument on the motion for class notice, the Court issued a

2  supplemental order on class certification and requested that the Parties submit a revised class

3  notice for the Court's consideration. (*Corvello* ECF No. 144). Thereafter, the Parties submitted

4  a revised class notice proposal, which the Court approved on June 9, 2016. (*Corvello* ECF

5  Nos. 160-161).

6         21.    On or about June 28, 2016, the Court-appointed class notice administrator,

7  Garden City Group ("GCG"), mailed the approved class notice to the addresses associated

8  with the 11,524 loans that comprise the Class members' loans. This is the same Class that is

9  defined in the Settlement Agreement. Eighteen Class Members timely opted out of the Class.

10  In connection with the notice of pendency, the claims administrator established and continues

11  to maintain a website specifically for this Litigation (www.Corvello-

12  JackmonHAMPClassAction.com) where Class Members can obtain documents and other

13  information relating to the Action. The address for the Case Website was listed prominently on

14  the class notice mailed to Class Members, and the Case Website has remained active. This

15  website, which is already known to Class Members, will continue to be used for the proposed

16  Settlement.

17                                     **RELATED ACTIONS:**

18          **WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT**

19         22.    On January 27, 2017, Wells Fargo filed a Motion for Summary Judgment on

20  the Certified Claims, as well as the remaining individual claims brought by both Plaintiffs.

21  (*Corvello* ECF No. 173; *see also id.* at ECF Nos. 178 and 186 (opposition and reply briefing)).

22         23.    On March 13, 2017, Wells Fargo also moved to exclude the opinions and

23  testimony of one of Plaintiffs' experts, Professor Katherine Porter. Plaintiffs submitted their

24  opposition on April 6, 2017. (*Corvello* ECF No. 188; *see also id.* at ECF Nos. 197-198

25  (opposition and reply briefing).

26         24.    On May 4, 2017, the Court issued an Order on Summary Judgment in both

27  Actions, entering summary judgment in Wells Fargo's favor as to Plaintiffs' UCL claims,

28  denying the Motion as to Plaintiffs' Rosenthal Act claims, and denying the Motion as to

7                                          Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC
00122736                BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   Plaintiffs' individual claims, without prejudice. The Court also found Class Members could
2   not recover their TPP payments. (*Corvello* ECF No. 203). Thus, the Class was left with only a
3   claim for a maximum award of $500,000 in statutory damages under the Rosenthal Act to be
4   shared among all Class Members.

5       25.     The Court deferred ruling on Wells Fargo's motion to exclude Professor
6   Porter's testimony until the pretrial conference. (*Corvello* ECF No. 203).

7                    **RELATED ACTIONS: TRIAL PREPARATION**

8       26.     The Parties also have been preparing for the June 5, 2017, trial. By the time of
9   the order on summary judgment, the Parties had exchanged proposed jury instructions,
10  motions in limine, and exhibit and witness lists.

11      27.     On May 3, 2017, Class Counsel sent Wells Fargo 74 pages of proposed jury
12  instructions, replete with legal citations and support for their instructions. Plaintiffs also sent
13  Wells Fargo five motions in limine, including motions to exclude certain expert testimony and
14  to exclude reference to potentially prejudicial evidence about HAMP qualifications, Treasury's
15  involvement in HAMP and approval of the TPP form, and so-called "benefits" of extended
16  occupancy provided to Class Members by virtue of the TPP.

17      28.     Wells Fargo also served five motions in limine on plaintiffs and the Class. One
18  of them sought to exclude Professor Porter's testimony at trial. Thus, there continued to be
19  substantial risks for Plaintiffs even following the Order on Summary Judgment.

20                   **RELATED ACTIONS: SETTLEMENT NEGOTIATIONS**

21      29.     Over the years, the Parties have periodically engaged in settlement negotiations.
22  On April 27, 2016, the Parties participated in a settlement conference with Magistrate Judge
23  Corley. Further discussions between the Parties and Magistrate Judge Corley took place on
24  May 6, 2016, and May 9, 2016. Despite their good-faith efforts, the Parties were unable to find
25  common ground, with Wells Fargo maintaining that it would not be prepared to enter into a
26  meaningful class wide settlement until after summary judgment. Once the Court issued its
27  ruling on summary judgment, the Parties restarted settlement discussions. After numerous
28  discussions and proposals, the Parties ultimately agreed to the proposed Settlement.

30.     Plaintiffs have each entered into settlements with Wells Fargo relating to their individual, non-class claims, including their individual breach of contract claims, which they continued to pursue after certification of the contract claim was denied. Mr. Corvello made three TPP payments of approximately $6,600 in 2010, and thereafter was denied a permanent HAMP modification and lost his home at foreclosure. In connection with the settlement of his individual claims, including for breach of contract (which was not certified for class treatment), Mr. Corvello will receive a refund of his TPP payments. In exchange, Mr. Corvello (unlike absent Class Members) will provide Wells Fargo with a complete release of all claims, known and unknown, that he could assert against Wells Fargo and its affiliated people and entities, including the investors of his loan. In addition, Class Counsel will receive amounts for their time and expenses approximated as not devoted solely to the Certified Claims. The Class settlement is not contingent on these individual settlements. Instead, the individual settlements will only go into effect if the Class Settlement is approved. Copies of those agreements are attached hereto as Exhibits C and D.

31.     All totaled, under the three settlements combined Class Counsel will receive significantly less than their actual lodestar incurred in this litigation. Specifically, after accounting for expense reimbursements, Wells Fargo agreed to pay a total of roughly $2.836 million for $3.05 million in lodestar accrued by Class Counsel as of the date that the parties entered into the agreements in principal. This represents a negative lodestar multiplier of 0.93 as of that date, but the actual negative multiplier will ultimately be less than .90 based on additional time and expenses that will accrue between through the effective dates of the settlements.

32.     Every aspect of this Settlement was heavily negotiated, including each aspect of the Settlement Agreement and Exhibits, the Release, and the Class Notice. As detailed in the concurrent memorandum of points and authorities, the Class Notice and Settlement administration plans are robust and easily satisfy all due process requirements. Under the Settlement, Class Notice and Settlement Payments will be mailed directly to Class Members who do not have to submit a claim to receive the payments. The Class Notices are in easily

1  understandable language, explain the Settlement and Class Member's rights, and were

2  modeled after the Federal Judicial Center's exemplar notices. Class Notice and settlement

3  administration is estimated to cost $42,000 or more and will be paid by Wells Fargo separate

4  and apart from the Settlement Payments.

5      33.    I have significant experience leading consumer protection class action lawsuits,

6  including consumer protection actions involving retail lending and residential mortgage fraud.

7  I have been appointed lead counsel by numerous state and federal courts, including in complex

8  and multi-district litigation involving false advertising claims brought on behalf of consumers.

9  I have also tried, either as assisting counsel or co-counsel, class actions and am responsible for

10  a number of appeals resulting in consumer protection decisions relevant to this case, including

11  the *Corvello* opinion itself. In connection with the successful motion for class certification in

12  this Litigation, I was appointed Class Counsel by the Court. Given the risks and potential

13  benefits of continued Litigation, I believe the Settlement is fair, reasonable and adequate, and

14  in the best interests of the Class.

15      I declare under penalty of perjury under the laws of the United States of America that

16  the foregoing is true and correct. Executed on June 30, 2017, at San Diego, California.

17

18      By:      *s/ Timothy G. Blood*

19               TIMOTHY G. BLOOD

20

21

22

23

24

25

26

27

28

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

00122736

BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on June 30, 2017, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have

5

mailed the foregoing document or paper via the United States Postal Service to the non-

6

CM/ECF participants indicated on the Electronic Mail Notice List.

7

    I certify under penalty of perjury under the laws of the United States of America that

8

the foregoing is true and correct. Executed on June 30, 2017.

9

10

                                        *s/  Timothy G. Blood*
                                     TIMOTHY G. BLOOD

11

                              BLOOD HURST & O'REARDON, LLP
12                            701 B Street, Suite 1700
                              San Diego, CA  92101
13                            Telephone:  619/338-1100
                              619/338-1101 (fax)
14                            tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

00122736

BLOOD DECL ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT