# EXHIBIT C

## SETTLEMENT AGREEMENT AND RELEASE AS TO PLAINTIFF CORVELLO'S INDIVIDUAL CLAIMS AGAINST WELLS FARGO

This Settlement Agreement and Release (the "Agreement") is entered into by and between plaintiff PHILLIP CORVELLO ("Corvello" or "Plaintiff"), an individual residing in the State of California, and defendant WELLS FARGO BANK, N.A. ("Wells Fargo") for the purpose of resolving Corvello's non-certified individual claims against Wells Fargo, as set forth below. Corvello and Wells Fargo are sometimes hereinafter collectively referred to as the "Parties" or individually as "Party."

## RECITALS

**WHEREAS**, on or around on September 24, 2007, Corvello obtained mortgage financing from Wells Fargo in the amount of $399,000 (the "Corvello Loan"), secured by property located at 4784 Brookside Circle, Fairfield, California (the "Property") as reflected by a Deed of Trust, dated September 24, 2007, on the Property;

**WHEREAS**, during all relevant periods, Wells Fargo has been the servicer of the Corvello Loan;

**WHEREAS**, in 2009, Corvello defaulted on the Corvello Loan;

**WHEREAS**, on August 31, 2010, the Property was sold at a trustee's sale;

**WHEREAS**, on or around November 9, 2010, Corvello filed a putative class action complaint against Wells Fargo in the United States District Court for the Northern District of California (the "Court"), styled *Phillip Corvello v. Wells Fargo Bank, N.A.*, Case No. 10-cv-05072-VC (N.D. Cal.) (the "Action" or "Corvello Action");

**WHEREAS**, the complaint was amended on or around April 8, 2016 and added a claim for violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§ 1788, *et seq.* ("Rosenthal Act") (the "Complaint");

**WHEREAS,** Plaintiff alleges that Wells Fargo violated California law when it denied his application for a permanent loan modification under the federal government's Home Affordable Modification Program ("HAMP") in 2010. He alleges that he was placed on a Form 3156 HAMP Trial Period Plan ("TPP"), complied with the terms of the TPP, but failed to receive a permanent HAMP modification. He also alleges that Wells Fargo's use of the form HAMP TPP was deceptive and unfair because it would lead borrowers to believe that Wells Fargo would, at the end of the three or four month trial period, either: (1) give the borrower a permanent loan modification if the borrower met his or her obligations under the TPP; or (2) notify the borrower that he or she did not qualify for a permanent modification, but that Wells Fargo did neither. Corvello asserts causes of action for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the California Business & Professions Code §§ 17200, et seq. ("UCL"); (4) violation of the Rosenthal Act; (5) promissory estoppel; and (6) declaratory relief;

**WHEREAS,** on November 13, 2014, the Corvello Action became "related" to a similar lawsuit styled, *Amira Jackmon v. America's Servicing Company, et al.*, Case No. 11-cv-03884-VC, also pending in the United States District Court for the District of Northern California ("Jackmon Action"). The Corvello Action and Jackmon Action were litigated together but the two Actions were never formally consolidated;

**WHEREAS,** by orders dated January 29, 2016 and April 18, 2016, the Court granted in part and denied in part Jackmon's and Corvello's Joint Motion for Class Certification. The Court denied certification of nationwide and statewide breach of contract and rescission classes but certified claims under the Rosenthal Act and the unlawful, unfair, and fraudulent prongs of the UCL for a class of California borrowers (the "Certified Claims"). Both Corvello and Jackmon

2

became class representatives of the Certified Claims;

**WHEREAS**, Phillip Corvello and Amira Jackmon, in their roles as class representatives for the Class, and Wells Fargo have entered into an agreement to settle and forever resolve the Certified Claims for the members of the Class, on the terms separately set forth in the Stipulation and Class Action Settlement Agreement ("the Class Settlement");

**WHEREAS**, the Class Settlement is subject to preliminary and final approval by the Court;

**WHEREAS**, Wells Fargo denies all wrongdoing, expressly denies the allegations in the Complaint, and denies that Corvello was damaged by any act or omission of Wells Fargo;

**WHEREAS**, notwithstanding the foregoing, the Parties desire to settle all disputes and alleged causes of action possessed by Corvello individually that were asserted or could have been asserted in the Corvello Action, or that relate in any way to the servicing or foreclosure of the Corvello Loan without incurring additional expense and attorneys' fees; and

**WHEREAS**, Corvello and Wells Fargo have reached a settlement of all claims possessed by Corvello individually that were asserted or could have been asserted in the Corvello Action against Wells Fargo, or that relate to the servicing or foreclosure of the Corvello Loan, and Corvello and Wells Fargo have agreed to settle all such individual claims with prejudice.

<u>**TERMS AND PROVISIONS**</u>

**NOW, THEREFORE,** in consideration of the mutual agreements herein contained, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party to the other, and intending to be legally bound hereby, it is hereby stipulated and agreed by the Parties as follows:

1. **Condition Precedent.** This Agreement is conditioned on the occurrence of the Effective Date of the Class Settlement as that term is defined in Section 2.13 of the Class Settlement Agreement (the "Effective Date"). In the event that the Effective Date does not occur or cannot occur (e.g., if the Court denies or an appellate court vacates approval of the Class Settlement Agreement), this Agreement will have no effect and the Parties shall return to the status quo prior to the execution of this Agreement.

2. **Stipulation of Dismissal.** Upon the Effective Date, this Agreement shall become binding and effective, and Wells Fargo's counsel will be expressly authorized to sign and file with the Court the Joint Stipulation and Proposed Order of Dismissal with Prejudice of Corvello's Individual Claims in the form attached hereto as Exhibit A ("Stipulation of Dismissal") on behalf of the Parties.

3. **Payments.** Within thirty (30) days of the later of (a) the Effective Date; (b) the entry of the Stipulation of Dismissal as an order of the Court; or (c) Wells Fargo's receipt of this Settlement Agreement executed by Corvello and a fully-executed and dated IRS form W-9 (revised form 2014) from Corvello and Plaintiff's Counsel, Wells Fargo will: (1) pay to Corvello a total sum of Six Thousand Six Hundred dollars and No cents ($6,600.00), in the form of a check made payable to "Phillip Corvello" (the "Settlement Payment") that shall be delivered to: Blood Hurst & O'Reardon, LLP; and (2) cause a check to be delivered to Plaintiff's Counsel payable to "Blood Hurst & O'Reardon, LLP" in the sum of one million, three hundred ninety-nine thousand, nine hundred thirty-six dollars and sixty-two cents ($1,399,936.62) (the "Fee & Cost Payment"). The Fee & Cost Payment shall be for attorneys' fees and costs of suit. Corvello and Plaintiff's Counsel understand and agree that Wells Fargo will not process the Settlement Payment or the Fee & Cost Payment until Wells Fargo's counsel is in receipt of a fully-executed and dated IRS form

W-9 (revised form 2014) from "Blood Hurst & O'Reardon, LLP" and "Phillip Corvello." The obligation of Wells Fargo under this Agreement to deliver the two checks identified in this section is contingent in its entirety upon the dismissal of Corvello's individual claims against Wells Fargo with prejudice and the Class Settlement becoming effective and Final as set forth in Sections 2.13 and 2.16 of the Class Settlement Agreement.

4. **Full Satisfaction of Individual Claims.** The Parties agree that the Settlement Payment and the Fee & Cost Payment, collectively, are in full satisfaction of all of Corvello's individual claims for damages, attorneys' fees, and/or costs that Corvello or his counsel have or may have incurred in connection with the Corvello Action. Nothing in this Agreement shall be construed to satisfy or release the Certified Claims, including Corvello's certified claims.

5. **Costs and Attorneys' Fees**. Each of the Parties agrees to bear its or their own costs, including, but not limited to, all expenses and attorneys' fees, to the extent not covered by the Settlement Payment and the Fee & Cost Payment, which it or they incurred or may incur in connection with the individual claims in the Corvello Action and the negotiation of this Agreement.

6. **Release.** Upon delivery of the payments described in Section 3, Corvello, on behalf of himself and his successors, assigns, heirs, executors, administrators, representatives, partners, agents, predecessors-in-interest, and counsel, releases, remises, acquits, and forever discharges Wells Fargo and any investor, noteholder, or trustee of a mortgage securitization trust that held, owned, or included the Corvello Loan, and their past, present, and future parents, subsidiaries, predecessors-in-interest, divisions, successors, affiliates, joint venturers, assigns, shareholders, officers, directors, partners, associates, members, employees, agents, and counsel ("Releasees"), from and against any and all rights, duties, claims, cross-claims, counterclaims,

5

demands, damages (including, without limitation, actual, compensatory, punitive, or statutory damages), liabilities, defenses, expenses, attorneys' fees, obligations, actions, causes of action, choses in action, debts, liens, contracts, agreements, or promises of any kind whatsoever, whether arising under local, state, or federal law, whether by statute, regulation, contract, common law, or equity, or whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, or liquidated or unliquidated, that Corvello had, now has, or may have in the future against the Releasees that were, are, or could have been the subject of the Corvello Action or that relate in any way to conduct arising from the servicing of or foreclosure related to the Corvello Loan prior to the date of this Agreement, including without limitation, conduct arising from Corvello's efforts to obtain a modification or other loss mitigation option of the Corvello Loan and any conduct arising from the trustee's sale on the Property or any ensuing unlawful detainer action (the "Release"). This Release is not intended to cover or extend to the Certified Claims, which is separately addressed in the Class Settlement.

7. **Waiver of California Civil Code Section 1542.** Corvello waives and relinquishes, to the fullest extent permitted by law, the benefit of California Civil Code Section 1542 and all similar state or federal statutes or rules of law. California Civil Code Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The within Section 1542 waiver is not intended to be a waiver of any debt, contractual or other account obligation that Corvello may have with Wells Fargo that would arise outside of any

interaction not part of the Corvello Action. Wells Fargo is not providing a release to any Party, person or entity as part of this Agreement.

Corvello is entering into this Agreement freely and voluntarily. Corvello warrants that he has been fully advised by his attorney or has had an opportunity to consult with an attorney with respect to the advisability of executing this Agreement and with respect to the meaning of California Civil Code Section 1542.

Corvello acknowledges that he may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in the Corvello Action or the Release set forth above, and he agrees that (a) the foregoing Release is intended to cover and include any claims Corvello might have based on such different or additional information, and (b) the Agreement shall remain in full force and effect notwithstanding the existence or discovery of any such different or additional facts.

8. **No Admission of Liability**. The Parties acknowledge that this Settlement Agreement is entered into for the purpose of effecting a compromised settlement of disputed claims. The Parties further acknowledge that the acceptance of this Agreement shall not constitute or be deemed an admission of liability on the part of Wells Fargo or the inability to satisfy any element of any claim on the part of Corvello.

9. **Choice of Law**. The Agreement shall be construed in accordance with the laws of the State of California independent of the application of any principles of conflict of or choice of laws.

10. **Capacity and Authority**. All parties entering into the Agreement have the capacity and authority to do so, and no third party has rights that would affect the validity or legality of the Agreement. Corvello represents and warrants that his respective right, title, and interest in and to the claims being released hereby have not been assigned, pledged, conveyed, or

transferred to any other party. Corvello further warrants that, other than the instant action, he has not initiated any proceeding against Wells Fargo or any of the Releasees in any court of law, arbitral facility, or regulatory body.

11. **Assignment of Rights**. Both Corvello and Wells Fargo agree that this Agreement will be binding upon, and shall inure to the benefit of, their respective successors and assigns.

12. **Third Party Rights**. This Agreement is not intended to benefit any person not a party hereto, and the rights and remedies provided herein shall only be enforceable by the party granted such rights hereunder.

13. **Terms of Agreement Negotiated**. The Agreement has been negotiated and drafted by each Party and their representatives and may not be construed in favor of or against any one of the Parties on the basis of authorship. The Parties expressly waive any right to rescind or challenge the validity or enforceability of the Agreement or any provision contained herein.

14. **Headings**. Any descriptive headings in this Agreement are inserted for convenience only and are not intended to indicate all of the matter following them. Accordingly, they shall not control or affect the meaning or construction of any of the provisions hereof.

15. **Modification Only in Writing**. Neither the Agreement nor any provision hereof may be changed, waived, discharged, or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, or termination is sought.

16. **Construction**. The Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would

permit its enforcement but in no event, shall such provision effect, impair, or invalidate any other provision hereof.

17. **Counterparts**. The terms of the Agreement are contractual and not merely a recital. The Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Facsimile and email copies of the Agreement and the signatures hereto may be used with the same force and effect as the original. The Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

18. **Entire Agreement**. The Agreement constitutes the entire understanding of the Parties and supersedes any and all prior promises and understandings, whether written or oral. No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain, or modify any term used herein. The Parties, and each of them, represent and warrant that they have not executed this Agreement or the other documents referred to in this Agreement in reliance on any promise, representation, or warranty not contained in this Agreement and the other documents referred to in this Agreement. Each Party represents and warrants that they are not relying on any other Party for any advice whatsoever, including, without limitation, any tax or bankruptcy advice.

19. **No Waiver.** No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which any Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All

rights and remedies granted to any Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy.

20. **Agreement Not to Challenge.** The Parties agree that neither of the Parties shall in any manner challenge the Agreement. The Parties each agree not to sue or in any way assist or encourage any other person or entity in suing any Party with respect to any claim released herein, except insofar as may be necessary to enforce the terms and provisions of this Agreement. The release contained herein may be pleaded by any of the Releasees as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted in breach of the release contained herein.

21. **Advice of Counsel.** The Parties, and each of them, acknowledge, warrant, represent, and agree that (a) in executing and delivering this Agreement, they do so freely, knowingly, and voluntarily, (b) they had an opportunity to and did discuss the terms of the Agreement and their implications with legal counsel of their choosing, (c) they are fully aware of the contents, effect, and possible tax consequences of the Agreement, and (d) their execution and delivery of the Agreement is not the result of any fraud, duress, mistake, or undue influence whatsoever. Wells Fargo makes no representations or warranties as to the tax consequences or obligations to if any, arising from the consideration specified in this Agreement.

22. **Survival.** The representations and warranties set forth herein shall survive the execution of this Agreement and shall continue in full force and effect thereafter until any claim thereon would be barred by applicable statute of limitations.

23. **Reasonable Best Efforts.** The Parties agree to undertake their reasonable best efforts, including, without limitation, all efforts contemplated by the Agreement, to carry out the

10

terms of this Agreement. In addition to the documents and other matters specifically referenced in the Agreement, the Parties agree to execute or deliver, or cause to be executed or delivered, such other documents or materials necessary to carry out the terms and conditions of this Agreement, as may be reasonably necessary to effect the obligations contemplated by the Agreement.

24. **Time is of the Essence.** As to all obligations hereunder, time is of the essence.

25. **Notice**. All notices required or permitted to be given by law or by the terms of the Agreement shall be in writing and shall be considered given upon receipt by the Party to be served after mailing of such notice by (a) first class United States mail, certified mail, return receipt requested, postage prepaid, or (b) Federal Express, addressed to the Parties as follows:

if to Phillip Corvello:

Timothy G. Blood, Esq.
Blood Hurst & O'Reardon, LLP
701 B Street, Suite 1700
San Diego, CA 92101

if to Wells Fargo:

David D. Christensen, Esq.
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

**IN WITNESS WHEREOF**, the Parties have read and understand the terms of the Agreement, agree to be bound by all of its provisions, and have executed the Agreement on the date shown by their signatures below.

**IT IS SO AGREED.**

***SIGNATURES FOLLOW ON SUBSEQUENT PAGES***

_____
PHILLIP CORVELLO

JUNE 29, 2017
Date

APPROVED AND AGREED TO AS COUNSEL FOR PHILLIP CORVELLO:

_____
Timothy G. Blood
BLOOD HURST & O'REARDON, LLP

*Counsel for plaintiff Phillip Corvello*

Dated: _____

**WELLS FARGO BANK, N.A.**

By: _____
Name

SVP - Servicing
Title

June 29, 2017
Date

_____
PHILLIP CORVELLO

_____
Date


APPROVED AND AGREED TO AS COUNSEL FOR PHILLIP CORVELLO:

_/s/ Timothy G. Blood_____
Timothy G. Blood
BLOOD HURST & O'REARDON, LLP

*Counsel for plaintiff Phillip Corvello*

Dated: __6/29/17__

**WELLS FARGO BANK, N.A.**

By: _/s/_____
Name

__SVP - Servicing__
Title

__June 29, 2017__
Date