# EXHIBIT D

## SETTLEMENT AGREEMENT AND RELEASE AS TO PLAINTIFF JACKMON'S INDIVIDUAL CLAIMS AGAINST WELLS FARGO

This Settlement Agreement and Release (the "Agreement") is entered into by and between plaintiff AMIRA JACKMON ("Jackmon" or "Plaintiff"), an individual residing in the State of California, and defendant WELLS FARGO BANK, N.A. ("Wells Fargo") for the purpose of resolving Jackmon's non-certified individual claims against Wells Fargo, as set forth below. Jackmon and Wells Fargo are sometimes hereinafter collectively referred to as the "Parties" or individually as "Party."

## RECITALS

**WHEREAS**, on or about January 26, 2005, Jackmon obtained a first-lien mortgage loan in the amount of $520,000.00 (the "Jackmon Loan"), secured by property located at 1220-1222 Dwight Way, Berkeley, California (the "Property");

**WHEREAS**, on or about January 26, 2005, Jackmon also obtained a home equity line of credit that was secured by the Property (the "HELOC");

**WHEREAS**, during all relevant periods to this action Wells Fargo was the servicer of the Jackmon Loan;

**WHEREAS**, in 2009, Jackmon defaulted on the Jackmon Loan;

**WHEREAS**, on May 27, 2011, the Property was sold at a trustee's sale (the "Trustee Sale");

**WHEREAS**, on June 3, 2011 a Trustee's Deed Upon Sale was recorded with the Alameda County Recorder as Document ID 2011161986, which conveyed title to U.S. Bank National Association, as Trustee for GSR Mortgage Loan Trust 2005-AR3;

**WHEREAS,** on or around August 8, 2011, Jackmon filed an individual complaint against Wells Fargo (and others) in the United States District Court for the Northern District of California

(the "Court"), styled *Amira Jackmon v. America's Servicing Company, et al.*, 11-cv-03884-VC (the "Action" or "Jackmon Action");

**WHEREAS**, the complaint was amended on or around September 23, 2011 to add, among other things, putative class allegations (the "Complaint");

**WHEREAS**, on December 17, 2010, Jackmon filed a Chapter 7 petition in the United States Bankruptcy Court for the Northern District of California, No. 10-74480 ("Jackmon Bankruptcy"). On May 9, 2011, the Bankruptcy Court granted Jackmon a discharge (the "Discharge");

**WHEREAS**, on November 17, 2014, Wells Fargo executed a full re-conveyance regarding the Deed of Trust securing the HELOC, which was recorded with the Alameda County Recorder as Document ID 2014293433;

**WHEREAS,** the Complaint alleges that Wells Fargo violated California law when it denied Jackmon's application for a permanent loan modification under the federal government's Home Affordable Modification Program ("HAMP") in 2010. Jackmon alleges that she was placed on a Form 3156 HAMP Trial Period Plan ("TPP"), complied with the terms of the TPP, but failed to receive a permanent HAMP modification. She also alleges that Wells Fargo's use of the form HAMP TPP was deceptive and unfair. Jackmon asserts causes of action for: (1) breach of contract; (2) violation of the California Business & Professions Code § 17200, et seq. ("UCL"); (3) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§ 1788, et seq. ("Rosenthal Act"); and (4) restitution and rescission.

**WHEREAS**, on November 13, 2014, the Jackmon Action became "related" to a similar lawsuit styled, *Phillip Corvello v. Wells Fargo Bank, N.A.*, Case No. 10-cv-05072 VC, also pending in the United States District Court for the District of Northern California ("Corvello

Action"). The Corvello Action and Jackmon Action were litigated together but the two Actions were never formally consolidated;

**WHEREAS**, by orders dated January 29, 2016 and April 18, 2016, the Court granted in part and denied in part Jackmon's and Corvello's Joint Motion for Class Certification. The Court denied certification of nationwide and statewide breach of contract and rescission classes but certified claims under the Rosenthal Act and the unlawful, unfair, and fraudulent prongs of the UCL for a class of California borrowers (the "Certified Claims"). Both Jackmon and Corvello became class representatives of the Class Claims;

**WHEREAS**, Phillip Corvello and Amira Jackmon, in their roles as class representatives for the Class, and Wells Fargo have entered into an agreement to settle and forever resolve the Certified Claims for the members of the Class, on the terms separately set forth in the Stipulation and Class Action Settlement Agreement ("the Class Settlement");

**WHEREAS**, the Class Settlement is subject to preliminary and final approval by the Court;

**WHEREAS**, pursuant to a Stipulation Regarding Monthly Security Payments, Jackmon has made monthly payments in the amount of $2,648.85/month, currently totaling $95,358.60 and held in a trust account maintained by her counsel Hagens Berman Sobol Shapiro LLP (the "Trust Fund");

**WHEREAS**, Wells Fargo denies all wrongdoing, expressly denies the allegations in the Complaint, and denies that Jackmon was damaged by any act or omission of Wells Fargo;

**WHEREAS**, notwithstanding the foregoing, the Parties desire to settle all disputes and alleged causes of action that were asserted or could have been asserted in the Jackmon Action, or that relate in any way to the servicing or foreclosure of the Jackmon Loan, except for the Certified

Claims, without incurring additional expense and attorneys' fees; and

**WHEREAS**, Jackmon and Wells Fargo have reached a settlement of all claims possessed by Jackmon individually, that were asserted or could have been asserted in the Jackmon Action against Wells Fargo, or that relate to the servicing or foreclosure of the Jackmon Loan, and Jackmon and Wells Fargo have agreed to settle all such individual claims with prejudice.

## TERMS AND PROVISIONS

**NOW, THEREFORE,** in consideration of the mutual agreements herein contained, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party to the other, and intending to be legally bound hereby, it is hereby stipulated and agreed by the Parties as follows:

1. **Condition Precedent.** This Agreement is conditioned on the occurrence of the Effective Date of the Class Settlement as that term is defined in Section 2.13 of the Class Settlement Agreement (the "Effective Date"). In the event that the Effective Date does not occur or cannot occur (e.g., if the Court denies or an appellate court vacates approval of the Class Settlement Agreement), this Agreement will have no effect and the Parties shall return to the status quo prior to the execution of this Agreement.

2. **Stipulation of Dismissal.** Upon the Effective Date, this Agreement shall become binding and effective, and Wells Fargo's counsel will be expressly authorized to sign and file with the Court the Joint Stipulation and Proposed Order of Dismissal with Prejudice of Jackmon's Individual Claims in the form attached hereto as Exhibit A ("Stipulation of Dismissal") on behalf of the Parties.

3. **Rescission of the Trustee Sale.** Within thirty (30) days of the later of (a) the Effective Date; (b) the entry of the Stipulation of Dismissal as an order of the Court; or (c) Wells

4

Fargo's receipt of this Settlement Agreement executed by Jackmon, and in connection with the modification of the Jackmon Loan, as set forth below in Section 4, Wells Fargo will cause the Trustee Sale to be voided and rescinded by recording a notice of rescission with the Alameda County (CA) Recorder ("Notice of Rescission"). It is the intent of the Parties that the lien on the Property securing the Jackmon Loan shall return to the status quo that existed immediately prior to the Trustee Sale, except (a) Jackmon shall not assume personal liability for any debt discharged in the Jackmon Bankruptcy, including any personal liability on the Modified Loan, and (b) nothing in this Agreement, including the Notice of Rescission, is intended to effect or undo the full re-conveyance of the Deed of Trust securing the HELOC that Wells Fargo executed on November 17, 2014, as described in the recitals above.

4. **Modification of the Jackmon Loan**. As consideration for this settlement, following rescission of the Trustee's Sale as described above, Wells Fargo shall provide Jackmon with a reinstatement and modification of the Jackmon Loan (the "Modified Loan") on the following terms:

(a) The New Principal Balance on the Modified Loan will be an amount equal to the current unpaid principal balance of $514,178.04 *plus* recoverable Wells Fargo fees (a/k/a corporate advances) of $4,539.68 *plus* the current amount of the escrow arrearage based on property tax and hazard insurance ("T&I") payments ($83,849.60 as of June 1, 2017) *plus* any additional T&I payments made by Wells Fargo from June 1, 2017 until the effective date of the Modified Loan *plus* the amount required to fund the T&I escrow account going forward according to RESPA requirements (the "required escrow," currently estimated to be $4,487.09) (collectively, the "New Principal Balance"). Prior to calculation of the New Principal Balance, Wells Fargo shall give Jackmon notice of and the opportunity to pay-down the T&I escrow arrearage and

5

required escrow, or any part of it, in order to reduce the New Principal Balance. Wells Fargo shall forever waive and discharge any and all other interest, fees, or charges due on the Jackmon Loan as of the effective date of the Modified Loan that are not included in the New Principal Balance as calculated above.

(b) The New Principal Balance shall be fully amortized over a 360 month term at a fixed interest rate of 4.5%. In addition to principal and interest, the monthly payment on the Modified Loan shall include monthly T&I escrow payments calculated according to RESPA requirements.

(c) The effective date of the Modified Loan shall be the first day of the month following the later of (a) the Effective Date; or (b) the Court's entry of an Order granting the Stipulation of Dismissal.

(d) The first payment due date of the Modified Loan shall be the first day of the second month following the later of (a) the Effective Date; or (b) the Court's entry of an Order granting the Stipulation of Dismissal.

(e) The Modified Loan will be current as of its effective date.

(f) To implement the Modified Loan, Wells Fargo shall prepare a loan modification agreement ("LMA") based on the above terms for Jackmon's signature and present it to Jackmon's counsel as soon as practicable after the occurrence of the Effective Date.

(g) The obligations of Wells Fargo under this Agreement to rescind the Trustee's Sale as set forth in Section 3 and modify the Jackmon Loan as set forth above are contingent in their entirety upon the dismissal of Jackmon's individual claims against Wells Fargo with prejudice and the Class Settlement becoming Final as defined in Section 2.13 and 2.16 of the Class Settlement Agreement.

5.      **No Personal Liability.** The Parties acknowledge that nothing in this Agreement or the Loan Modification Agreement shall impose any personal liability on Jackmon to repay the Jackmon Loan or the Modified Loan. The Parties also acknowledge that Wells Fargo, and the trustee under the Deed of Trust, retain the right to foreclose its lien under appropriate circumstances after the implementation of the LMA. Nothing herein or in the LMA shall be construed to be an attempt to collect against Jackmon personally or an attempt to revive personal liability on the Jackmon Loan or the Modified Loan. Notwithstanding any monthly payments made under the LMA, the Parties understand and agree that (1) Wells Fargo's sole recourse is the enforcement of its security interest in the Property and any action which may exist in relation to the Property itself and that (2) nothing in this Agreement or the LMA revives or purports to revive any debt or create any personal liability or obligation for a debt that was discharged in bankruptcy, including, but not limited to, the Jackmon Loan and the HELOC.

6.      **Credit Reporting.** The trade line for the Jackmon Loan account has been deleted and thus there will be no further credit reporting on the Jackmon Loan or the Modified Loan.

7.      **Payment of Attorneys' Fees.** Within thirty (30) days of the later of (a) the Effective Date; or (b) the entry of the Stipulation of Dismissal as an order of the Court, Wells Fargo will deliver a check payable to Jackmon's Counsel as attorneys' fees and costs of suit in the sum of One-Million-Ninety-Two-Thousand-Eight-Hundred-Seventy-Three dollars and Thirty-Two cents ($1,092,873.32) (the "Fees & Costs Payment"). The amount shall be paid by check(s) made payable to "Law Office of Peter Fredman PC" and/or "Hagens Berman Sobol Shapiro LLP," as they shall direct. Jackmon and her counsel understand and agree that Wells Fargo will not process the Fees & Costs Payment until Wells Fargo's counsel is in receipt of a fully-executed and dated IRS form W-9 (revised form 2014) from the above listed firm(s) that will be the designated

payee on the Fees & Costs Payment  The obligation of Wells Fargo under this Agreement to deliver the Fees & Costs Payment is contingent in its entirety upon the dismissal of Jackmon's individual claims against Wells Fargo with prejudice and the Class Settlement becoming effective and Final as set forth in Sections 2.13 and 2.16 of the Class Settlement Agreement.

8. **Trust Fund and Court Bond**. Upon the later of (a) the Effective Date; or (b) the entry of the Stipulation of Dismissal as an order of the Court, Jackmon's counsel is authorized to release the money held in the Trust Fund to Jackmon and Jackmon shall be entitled to recover, subject to the Court's approval, the $1,000 that she deposited with the Court as bond in accordance with the temporary restraining order entered in the Jackmon Action on August 11, 2011 (Dkt. Nos. 13, 16).

9. **Full Satisfaction of Individual Claims.** The Parties agree that the Modified Loan, release of monies in the Trust Fund, and the Fees & Costs Payment, collectively, are in full satisfaction of all of Jackmon's individual claims for damages, attorneys' fees, and/or costs that Jackmon or her counsel have or may have incurred in connection with the Jackmon Action. Notwithstanding the foregoing, nothing in this Agreement shall be construed to satisfy or release the Certified Claims, including Jackmon's certified claims.

10. **Acknowledgement of the Jackmon Deed of Trust**. By executing this Agreement, Jackmon hereby acknowledges, admits to, and reaffirms the validity, priority, and effectiveness of the Deed of Trust that shall again secure the Jackmon Loan (and the Modified Loan as reflected in the LMA) upon rescission of the Trustee's Sale in accordance with this Agreement.

11. **Costs and Attorneys' Fees**. Each of the Parties agrees to bear its or her own costs, including, but not limited to, all expenses and attorneys' fees, to the extent not covered by the

8

Fees & Costs Payment, which it or she incurred or may incur in connection with the individual claims in the Jackmon Action and the negotiation of this Agreement.

12.     **Release.**  Upon the effective date of the Modified Loan, Jackmon, on behalf of herself and her successors, assigns, heirs, executors, administrators, representatives, partners, agents, predecessors-in-interest, and counsel, releases, remises, acquits, and forever discharges Wells Fargo, the Trustee, and any investor, noteholder, or trustee of a mortgage securitization trust that held, owned, or included the Jackmon Loan, and their past, present, and future parents, subsidiaries, predecessors-in-interest, divisions, successors, affiliates, joint venturers, assigns, shareholders, officers, directors, partners, associates, members, employees, agents, and counsel ("Releasees"), from and against any and all rights, duties, claims, cross-claims, counterclaims, demands, damages (including, without limitation, actual, compensatory, punitive, or statutory damages), liabilities, defenses, expenses, attorneys' fees, obligations, actions, causes of action, choses in action, debts, liens, contracts, agreements, or promises of any kind whatsoever, whether arising under local, state, or federal law, whether by statute, regulation, contract, common law, or equity, or whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, or liquidated or unliquidated, that Jackmon had, now has, or may have in the future against the Releasees that were, are, or could have been the subject of the Jackmon Action or that relate in any way to conduct arising from the servicing of or foreclosure related to the Jackmon Loan prior to the date of this Agreement, including without limitation, conduct arising from Jackmon's efforts to obtain a modification or other loss mitigation option of the Jackmon Loan and any conduct arising from the Trustee Sale on the Property or the ensuing unlawful detainer action, or that relate to the prohibition on the collection of discharged debts as set forth in the Discharge and as that prohibition relates to the Jackmon Loan and the Modified

Loan (the "Release"). This Release is not intended to cover or extend to the Certified Claims, which is addressed by the Class Settlement.

13. **Waiver of California Civil Code Section 1542.** Jackmon waives and relinquishes, to the fullest extent permitted by law, the benefit of California Civil Code Section 1542 and all similar state or federal statutes or rules of law. California Civil Code Section 1542 provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HER OR HER SETTLEMENT WITH THE DEBTOR.**

The within Section 1542 waiver is not intended to be a waiver of any debt, contractual or other account obligation that Jackmon may have with Wells Fargo that would arise outside of any interaction not part of the Jackmon Action. Wells Fargo is not providing a release to any Party, person or entity as part of this Agreement.

Jackmon is entering into this Agreement freely and voluntarily. Jackmon warrants that she has been fully advised by her attorney or has had an opportunity to consult with an attorney with respect to the advisability of executing this Agreement and with respect to the meaning of California Civil Code Section 1542.

Jackmon acknowledges that she may hereafter discover facts different from or in addition to those now known or believed to be true related to the matters set forth in the Jackmon Action or the Release set forth above, and she agrees that (a) the foregoing Release is intended to cover and include any claims Jackmon might have based on such different or additional information, and (b) the Agreement shall remain in full force and effect notwithstanding the existence or discovery of any such different or additional facts.

14. **No Admission of Liability**. The Parties acknowledge that this Settlement Agreement is entered into for the purpose of effecting a compromised settlement of disputed claims. The Parties further acknowledge that the acceptance of this Agreement shall not constitute or be deemed an admission of liability on the part of Wells Fargo or the inability to satisfy any element of any claim on the part of Jackmon.

15. **Choice of Law**. The Agreement shall be construed in accordance with the laws of the State of California independent of the application of any principles of conflict of or choice of laws.

16. **Capacity and Authority**. All parties entering into the Agreement have the capacity and authority to do so, and no third party has rights that would affect the validity or legality of the Agreement. Jackmon represents and warrants that her respective right, title, and interest in and to the claims being released hereby have not been assigned, pledged, conveyed, or transferred to any other party. Jackmon further warrants that, other than the instant action, she has not initiated any proceeding against Wells Fargo or any of the Releasees in any court of law, arbitral facility, or regulatory body.

17. **Assignment of Rights**. Both Jackmon and Wells Fargo agree that this Agreement will be binding upon, and shall inure to the benefit of, their respective successors and assigns.

18. **Third Party Rights**. This Agreement is not intended to benefit any person not a party hereto, and the rights and remedies provided herein shall only be enforceable by the party granted such rights hereunder.

19. **Terms of Agreement Negotiated**. The Agreement has been negotiated and drafted by each Party and their representatives and may not be construed in favor of or against any

one of the Parties on the basis of authorship. The Parties expressly waive any right to rescind or challenge the validity or enforceability of the Agreement or any provision contained herein.

20. **Headings**. Any descriptive headings in this Agreement are inserted for convenience only and are not intended to indicate all of the matter following them. Accordingly, they shall not control or affect the meaning or construction of any of the provisions hereof.

21. **Modification Only in Writing**. Neither the Agreement nor any provision hereof may be changed, waived, discharged, or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge, or termination is sought.

22. **Construction**. The Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to resolve completely those claims and disputes between the Parties, as more fully described herein. If any provision of this Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would permit its enforcement but in no event, shall such provision effect, impair, or invalidate any other provision hereof.

23. **Counterparts**. The terms of the Agreement are contractual and not merely a recital. The Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute the same instrument. Facsimile and email copies of the Agreement and the signatures hereto may be used with the same force and effect as the original. The Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

24. **Entire Agreement**.  The Agreement constitutes the entire understanding of the Parties and supersedes any and all prior promises and understandings, whether written or oral.  No course of prior dealing between the Parties, no usage of the trade, and no parol or extrinsic evidence of any nature shall be used or be relevant to supplement, explain, or modify any term used herein.  The Parties, and each of them, represent and warrant that they have not executed this Agreement or the other documents referred to in this Agreement in reliance on any promise, representation, or warranty not contained in this Agreement and the other documents referred to in this Agreement.  Each Party represents and warrants that they are not relying on any other Party for any advice whatsoever, including, without limitation, any tax or bankruptcy advice.

25. **No Waiver.**  No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which any Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring.  All rights and remedies granted to any Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy.

26. **Agreement Not to Challenge.**  The Parties agree that none of the Parties shall in any manner challenge the Agreement.  The Parties each agree not to sue or in any way assist or encourage any other person or entity in suing any Party with respect to any claim released herein, except insofar as may be necessary to enforce the terms and provisions of this Agreement.  The release contained herein may be pleaded by any of the Releasees as a full and complete defense to,

13

and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted in breach of the release contained herein.

27.     **Advice of Counsel.**  The Parties, and each of them, acknowledge, warrant, represent, and agree that (a) in executing and delivering this Agreement, they do so freely, knowingly, and voluntarily, (b) they had an opportunity to and did discuss the terms of the Agreement and their implications with legal counsel of their choosing, (c) they are fully aware of the contents, effect, and possible tax consequences of the Agreement, and (d) their execution and delivery of the Agreement is not the result of any fraud, duress, mistake, or undue influence whatsoever.  Wells Fargo makes no representations or warranties as to the tax consequences or obligations if any, arising from the consideration specified in this Agreement.

28.     **Survival.**  The representations and warranties set forth herein shall survive the execution of this Agreement and shall continue in full force and effect thereafter until any claim thereon would be barred by applicable statute of limitations.

29.     **Reasonable Best Efforts.**  The Parties agree to undertake their reasonable best efforts, including, without limitation, all efforts contemplated by the Agreement, to carry out the terms of this Agreement.  In addition to the documents and other matters specifically referenced in the Agreement, the Parties agree to execute or deliver, or cause to be executed or delivered, such other documents or materials necessary to carry out the terms and conditions of this Agreement, as may be reasonably necessary to effect the obligations contemplated by the Agreement.

30.     **Time is of the Essence.**  As to all obligations hereunder, time is of the essence.

31.     **Notice.**  All notices required or permitted to be given by law or by the terms of the Agreement shall be in writing and shall be considered given upon receipt by the Party to be served

after mailing of such notice by (a) first class United States mail, certified mail, return receipt requested, postage prepaid, or (b) Federal Express, addressed to the Parties as follows:

if to Amira Jackmon:

Peter B. Fredman, Esq.
Law Offices of Peter Fredman
125 University Ave., Suite 102
Berkeley, CA 94710

if to Wells Fargo:

David D. Christensen, Esq.
K&L Gates LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111

**IN WITNESS WHEREOF**, the Parties have read and understand the terms of the Agreement, agree to be bound by all of its provisions, and have executed the Agreement on the date shown by their signatures below.

**IT IS SO AGREED.**

\*\*\*SIGNATURES FOLLOW ON SUBSEQUENT PAGES\*\*\*

_(signature)_
AMIRA JACKMON

6/30/2017
Date

APPROVED AND AGREED TO AS COUNSEL FOR AMIRA JACKMON:

_(signature)_
Peter Fredman
LAW OFFICE OF PETER FREDMAN

*Counsel for plaintiff Amira Jackmon*

Dated: 6/30/17

**WELLS FARGO BANK, N.A.**

By: _(signature)_ Perry Hilzendeger

Name

Title: EVP Servicing

Date: June 29, 2017

16