1   HAGENS BERMAN SOBOL SHAPIRO LLP    BLOOD HURST & O'REARDON, LLP
    STEVE W. BERMAN (Pro Hac Vice)     TIMOTHY G. BLOOD (149343)
2   THOMAS E. LOESER (202724)          THOMAS J. O'REARDON II (247952)
    1918 Eighth Avenue, Suite 330      PAULA R. BROWN (254142)
3   Seattle, WA  98101                 701 B Street, Suite 1700
    Tel: 206/623-7292                  San Diego, CA  92101
4   206/623-0594 (fax)                 Tel: (619) 338-1100
    steve@hbsslaw.com                  619/338-1101 (fax)
5   toml@hbsslaw.com                   tblood@bholaw.com
                                       toreardon@bholaw.com
6   LAW OFFICE OF PETER FREDMAN PC     pbrown@bholaw.com
    PETER B. FREDMAN (189097)
7   125 University Ave., Suite 102
    Berkeley, CA  94710
8   Tel: 510/868-2626
    510/868-2627 (fax)
9   peter@peterfredmanlaw.com

10  *Class Counsel*

11              **UNITED STATES DISTRICT COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

13  PHILLIP R. CORVELLO, On Behalf of      Case No. 4:10-CV-05072-VC
    Himself and All Others Similarly Situated,
14                                          **PLAINTIFFS' NOTICE OF MOTION AND**
                   Plaintiff,              **MOTION FOR FINAL APPROVAL OF**
15                                          **CLASS ACTION SETTLEMENT AND**
                                            **REQUEST FOR AWARD OF**
16        v.                                **ATTORNEYS' FEES AND EXPENSES**

17  WELLS FARGO BANK N.A. d/b/a            CLASS ACTION
    WELLS FARGO HOME MORTGAGE
18  d/b/a AMERICA'S SERVICING             Date:      November 30, 2017
    COMPANY,                              Time:      10:00 a.m.
19                                         Judge:     Honorable Vince Chhabria
                   Defendant.             Courtroom: 4, 17th Floor
20
                                          Date Filed:    November 9, 2010
21

22  AMIRA JACKMON, individually, and on    Case No. 3:11-cv-03884-VC
    behalf of others similarly situated,
23
                   Plaintiff,
24
          v.
25
    AMERICA'S SERVICING COMPANY
26  and WELLS FARGO BANK, N.A.,           Date Filed:    August 8, 2011

27                 Defendant.

28

00127101

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC
NOTICE OF MOTION/MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## NOTICE OF MOTION AND MOTION

2     TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3     PLEASE TAKE NOTICE that in accordance with Federal Rules of Civil Procedure,

4     Rule 23, on November 30, 2017, at 10:00 a.m., in Courtroom 4 of the United States District

5     Court for the Northern District of California, San Francisco Division, the Honorable Vince

6     Chhabria presiding, Plaintiffs Phillip R. Corvello and Amira Jackmon (collectively

7     "Plaintiffs") will and hereby do move this Court for an order: (1) granting final approval of the

8     Stipulation and Class Action Settlement Agreement; (2) finding that the Class Notice was the

9     best practicable notice under the circumstances and satisfied all Constitutional and other

10    requirements; (3) entering judgment and dismissing the Litigation with prejudice as provided

11    for by the Stipulation and Class Action Settlement Agreement; (4) directing and authorizing

12    the Parties and their counsel to implement and consummate the Agreement according to its

13    terms and provisions; (5) awarding Case Contribution Awards to the Class Representatives;

14    (6) finding that, by operation of the entry of the Judgment, the Class Representatives and all

15    Settlement Class Members shall be deemed to have forever released, relinquished, and

16    discharged the Released Parties from any and all Released Claims; (7) awarding attorneys'

17    fees and expenses; and (8) issuing any related relief.

18    This motion is based upon this notice, Plaintiffs' memorandum of points and

19    authorities submitted herewith, the declarations submitted herewith, upon all papers and

20    pleadings on file herein, and further evidence and argument as the Court may choose to

21    entertain.

22                                                   Respectfully submitted,

23    Dated: October 16, 2017                         BLOOD HURST & O'REARDON, LLP

24

25                                                   By:        *s/ Timothy G. Blood*
                                                          TIMOTHY G. BLOOD

26

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................... 1

II.     HISTORY OF THE LITIGATION .................................................. 2

III.    THE SETTLEMENT MERITS FINAL APPROVAL ......................... 2

    A.   The Standards for Final Approval of Class Action Settlements ......... 2

    B.   The Settlement Agreement Is Fair, Reasonable and Adequate .......... 4

    C.   The Settlement Was Reached After Serious, Informed, and
        Non-Collusive Arm's-Length Negotiations ........................... 5

    D.   The Strengths of Plaintiffs' Case and Risks Inherent in Continued
        Litigation Favor Approval............................................ 6

    E.   The Risk, Complexity, Expense, and Duration of the Litigation
        Favor Approval .................................................... 8

    F.   The Amount Achieved Under the Settlement Favors Approval ......... 9

    G.   Experience and Views of Counsel Favor Approval.......................... 10

    H.   The Reaction of the Class Members Favors Final Approval ............ 11

IV.    CLASS NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS ........... 12

V.     PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF FEES
    AND EXPENSES .................................................. 13

    A.   Attorneys' Fees and Expenses Under the Rosenthal Act.................. 13

    B.   Attorneys' Fees and Expenses Under C.C.P. §1021.5 .................... 14

    C.   Attorneys' Fees and Expenses Under the Settlement Agreement....... 15

VI.    THE FEE AMOUNT SOUGHT IS REASONABLE ...................... 16

    A.   The Lodestar Method Should Be Used to Calculate Attorneys' Fees ...... 16

    B.   The Requested Fractional Multiplier Fee Award Is Reasonable ........ 16

        1.   The Hourly Rates Are Reasonable.............................. 18

        2.   The Hours Expended Are Reasonable ....................... 20

        3.   The Requested Fees Are Reasonable in Light of the
            *Kerr* Factors ........................................ 21

1

C.      Plaintiffs' Expenses Are Reasonable and Compensable...................................22

2

D.      The Class Representative Service Awards Should Be Approved.....................24

3

VII.    CONCLUSION ..........................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amaral v. Cintas Corp., No. 2*,
    163 Cal. App. 4th 1157 (2008) ...........................................................................15

5

*Anderson v. Nextel Retail Stores, LLC*,
    No. CV 07-4480-SVW, 2010 U.S. Dist. LEXIS 43377

6

    (C.D. Cal. Apr. 12, 2010)........................................................................................5

7

*Bankston v. Phycom Corp.*,

8

    No. C 07-3982 JF (PVT), 2008 U.S. Dist. LEXIS 83073
    (N.D. Cal. Sept. 25, 2008).....................................................................................16

9

*Beane v. Bank of N.Y. Mellon*,

10

    No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS 27504

11

    (S.D.N.Y. Mar. 31, 2009) .......................................................................................24

12

*Blum v. Stenson*,

13

    465 U.S. 886 (1984).........................................................................................19, 22

14

*Buccellato v. AT&T Operations, Inc.*,
    No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699

15

    (N.D. Cal. June 30, 2011) ......................................................................................18

16

*Camacho v. Bridgeport Fin., Inc.*,

17

    523 F.3d 973 (9th Cir. 2008)..................................................................................16

18

*Catala v. Resurgent Capital Servs. L.P.*,
    No. 08cv2401 NLS, 2010 U.S. Dist. LEXIS 63501

19

    (S.D. Cal. June 22, 2010) .......................................................................................14

20

*Cellphone Termination Fee Cases*,
    186 Cal. App. 4th 1380 (2010) ..............................................................................24

21

22

*Chavez v. Netflix*,
    162 Cal. App. 4th 43 (2008) ............................................................................18, 21

23

*Chun-Hoon v. McKee Foods Corp.*,

24

    716 F. Supp. 2d 848 (N.D. Cal. 2010) ...............................................................5, 11

25

*Churchill Village, LLC v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)..................................................................................12

26

*City of Oakland v. Oakland Raiders*,

27

    203 Cal. App. 3d 78 (1988)....................................................................................17

28

00122987

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)..........................................................................3, 4

*Cohorst v. BRE Properties, Inc.*,
No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719
(S.D. Cal. Nov. 14, 2011) ...................................................................................5

*Corvello v. Wells Fargo Bank, NA*,
728 F.3d 878 (9th Cir. 2013)......................................................................*passim*

*Create-A-Card, Inc. v. INTUIT, Inc.*,
No. CV-07-6452 WHA, 2009 U.S. Dist. LEXIS 93989
(N.D. Cal. Sept. 22, 2009)....................................................................................9

*Ctr. for Biological Diversity v. Cal. Fish and Game Comm'n*,
195 Cal. App. 4th 128 (2011) ............................................................................14

*Cuevas v. Check Resolution Servs.*,
No. 2:12-cv-00981 KJM KJN, 2013 U.S. Dist. LEXIS 71375
(E.D. Cal. May 17, 2013)....................................................................................16

*Dennis v. Kellogg Co.*,
No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118
(S.D. Cal. Nov. 14, 2013) ..................................................................................20

*Edwards v. National Milk Producers Federation*,
No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214
(N.D. Cal. June 26, 2017) .............................................................................24, 25

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...........................................................................................12

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980) ...........................................................................10

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977)...................................................................22

*Espejo v. The Copley Press, Inc.*,
13 Cal. App. 5th 329 (2017) ..............................................................................15

*Faigman v. AT&T Mobility, LLC*,
No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825
(N.D. Cal. Feb. 16, 2011)...................................................................................25

*Foos v. Ann, Inc.*,
No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918
(S.D. Cal. Sept. 24, 2013) ..................................................................................22

*Friedman v. 24 Hour Fitness USA, Inc.*,
 No. 06-cv-6282 AHM, 2010 U.S. Dist. LEXIS 143816
 (C.D. Cal. July 12, 2010) ....................................................................................................15

*Galluci v. Boiron, Inc.*,
 No. 11cv2039 JAH (NLS), 2012 U.S. Dist. LEXIS 157039
 (S.D. Cal. Oct. 31, 2012) ....................................................................................................11

*Garcia v. Gordon Trucking, Inc.*,
 No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052
 (E.D. Cal. Oct. 31, 2012) ....................................................................................................12

*Garner v. State Farm Mut. Auto. Ins. Co.*,
 No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
 (N.D. Cal. Apr. 22, 2010) ....................................................................................................25

*Gaudin v. Saxon Mortg. Servs.*,
 297 F.R.D. 417 (N.D. Cal. 2013) ...........................................................................................8

*Glendora Cmty. Redev. Agency v. Demeter*,
 155 Cal. App. 3d 465 (1984) ...............................................................................................18

*Gonzales v. Arrow Fin. Servs., LLC*,
 660 F.3d 1055 (9th Cir. 2011) ...............................................................................................8

*Graham v. Daimler Chrysler Corp.*,
 34 Cal. 4th 553 (2004) .........................................................................................................17

*Gutierrez v. Wells Fargo Bank, N.A.*,
 No. C 07-05923 WHA, 2015 U.S. Dist. LEXIS 67298
 (N.D. Cal. May 21, 2015) ....................................................................................................20

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) .............................................................................................10

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) .............................................................................................17, 23

*Hartless v. Clorox Co.*,
 273 F.R.D. 630 (S.D. Cal. 2011) ....................................................................................13, 20

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
 225 F.R.D. 616 (S.D. Cal. 2004) .........................................................................................21

*Henderson v. J.M. Smucker Co.*,
 No. CV 10-4524-GHK, 2013 U.S. Dist. LEXIS 87030
 (N.D. Cal. June 19, 2013) ....................................................................................................15

*Hensley v. Eckhart*,
 461 U.S. 424 (1983) .............................................................................................................17

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09md2087 BTM (KSC), 2014 U.S. Dist. LEXIS 162106
   (S.D. Cal. Nov. 18, 2014) ................................................................................... 19

*In re Immune Response Securities Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................... 5, 23

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) .................................................................................. 22

*Johns v. Bayer Corp.*,
   No. 09cv1935 AJB (DHB), 2013 U.S. Dist. LEXIS 14933
   (S.D. Cal. Feb. 1, 2013) ....................................................................................... 13

*Johnson v. General Mills, Inc.*,
   No. SACV 10-006 CJC (ANx), 2013 U.S. Dist. LEXIS 90338
   (C.D. Cal. June 17, 2013) ............................................................................... 20, 21

*Keith v. Volpe*,
   501 F. Supp. 403 (C.D. Cal. 1980) ....................................................................... 18

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ............................................................................. 17, 22

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) .................................................................................. 17, 19

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal. App. 4th 170 (2007) ............................................................................... 14

*Kim v. Space Pencil, Inc.*,
   No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922
   (N.D. Cal. Nov. 28, 2012) ...................................................................................... 9

*Kraus v. Trinity Mgmt. Servs., Inc.*,
   23 Cal. 4th 116 (2000) .......................................................................................... 14

*Lealao v. Beneficial Cal., Inc.*,
   82 Cal. App. 4th 19 (2000) ....................................................................... 14, 17, 18

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
   222 F.3d 1142 (9th Cir. 2000) .............................................................................. 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................. 25

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ................................................................................. 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
 339 U.S. 306 (1950) ..........................................................................................12

*Nachshin v. AOL, LLC*,
 663 F.3d 1034 (9th Cir. 2011) ............................................................................5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................12

*Nitsch v. DreamWorks Animation SKG, Inc.*,
 No. 14-CV-04062-LHK, 2017 U.S. Dist. LEXIS 86124
 (N.D. Cal. June 5, 2017) ....................................................................................20

*Nobles v. MBNA Corp.*,
 No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435
 (N.D. Cal. June 29, 2009) ....................................................................................9

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ...........................................................................3, 4

*In re Omnivision Techs.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................23

*In re Online DVD-Rental Antitrust Litig.*,
 779 F.3d 934 (9th Cir. 2015) ............................................................................25

*In re Optical Disk Drive Prods. Antitrust Litig.*,
 No. 3:10-md-2143 RS, 2016 U.S. Dist. 175515
 (N.D. Cal. Dec. 19, 2016) .................................................................................19

*Ozga v. U.S. Remodelers, Inc.*,
 No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196
 (N.D. Cal. Aug. 9, 2010) ...................................................................................11

*Pelletz v. Weyerhaeuser Co.*,
 592 F. Supp. 2d 1322 (W.D. Wash. 2009) ........................................................25

*People Who Care v. Rockford Bd. of Educ.*,
 90 F.3d 1307 (7th Cir. 1996) ............................................................................19

*Perez v. Ruben & Rosenthal, Inc.*,
 No. 13-cv-1024-CAB (RBB), 2014 U.S. Dist. LEXIS 192265
 (S.D. Cal. Apr. 14, 2014) ..................................................................................14

*POM Wonderful, LLC v. Purely Juice, Inc.*,
 No. CV 07-2633 CAS (JWJx), 2008 U.S. Dist. LEXIS 110460
 (C.D. Cal. Sept. 22, 2008) .................................................................................21

*Rider v. San Diego*,
 11 Cal. App. 4th 1410 (1992) ...........................................................................23

*Rodriguez v. West Publ'g Co.*,
  563 F.3d 948 (9th Cir. 2009)...............................................................3, 4, 10, 24

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
  155 Cal. App. 3d 738 (1984)...............................................................17

*Serrano v. Priest*,
  20 Cal. 3d 25 (1977) ...............................................................14, 17, 23

*Serrano v. Stefan Merli Plastering Co., Inc.*,
  52 Cal. 4th 1018 (2011) ...............................................................15

*Serrano v. Unruh*,
  32 Cal. 3d 621 (1982) ...............................................................19

*Shirrod v. Dir., OWCP*,
  809 F.3d 1082 (9th Cir. 2015)...............................................................19

*In re Simon v. Toshiba America*,
  No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501
  (N.D. Cal. Apr. 30, 2010) ...............................................................25

*State of California v. Meyer*,
  174 Cal. App. 3d 1061 (1985)...............................................................18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)...............................................................16, 23

*Steiner v. Am. Broad. Co., Inc.*,
  248 Fed. Appx. 780 (9th Cir. 2007) ...............................................................18

*SternwestCorp. v. Ash*,
  183 Cal. App. 3d 74 (1986)...............................................................18

*In re TD Ameritrade Account Holder Litig.*,
  No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222
  (N.D. Cal. Sept. 12, 2011)...............................................................3

*Thayer v. Wells Fargo Bank*,
  92 Cal. App. 4th 819 (2001) ...............................................................17, 18

*Torres v. Bernstein, Shapiro & Assocs., LLC*,
  No. 2:10-cv-2507 KJM DAD, 2012 U.S. Dist. LEXIS 87013
  (E.D. Cal. June 21, 2012)...............................................................16

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ...............................................................10

*United States v. McInnes*,
  556 F.2d 436 (9th Cir. 1977)...............................................................6

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
   896 F.2d 403 (9th Cir. 1990)..................................................................................19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)................................................................................3, 6

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ..................................................................24, 25

*Vasquez v. Super. Ct.*,
   4 Cal. 3d 800 (1971) ..........................................................................................14

*In re Vitamin Cases*,
   110 Cal. App. 4th 1041 (2003) ............................................................................18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)..............................................................................18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 76093
   (N.D. Cal. May 17, 2017) ....................................................................................20

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ....................................................................18, 19, 21

*Williams v. Costco Wholesale Corp.*,
   No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 67731
   (S.D. Cal. July 7, 2010)......................................................................................11

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ................................................................22

*Zhang v. Super. Ct.*,
   57 Cal. 4th 364 (2013) .......................................................................................15

**Statutes and Rules**

15 U.S.C.
   §1692k(a) ......................................................................................................6, 8
   §1692k(a)(2)(B) ..................................................................................................8
   §1692k(b) ...........................................................................................................8
   §1692k(b)(2) .......................................................................................................8

Cal. Civ. Code
   §1788.17......................................................................................................6, 8
   §1788.30(c) .......................................................................................................14

Cal. Code Civ. P. §1021.5.....................................................................................*passim*

Fed. R. Civ. P.

Rule 23 ....................................................................................................12, 13

Rule 23(c)(2)(B).............................................................................................12

Rule 23(e) ...................................................................................................3, 12

Rule 23(e)(1)(C)...............................................................................................3

Rule 23(e)(2) ................................................................................................2, 3

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Phillip R. Corvello and Amira Jackmon ("Plaintiffs") submit this memorandum in support of their motion for final approval of class action settlement and request for an award of attorneys' fees and reimbursement of expenses. *See Corvello*, ECF No. 251-1 (the Stipulation and Class Action Settlement Agreement (the "Settlement" or "Agreement")).[1]

## I.   INTRODUCTION

Plaintiffs seek final approval of the proposed Settlement of this Litigation. The Settlement was reached following seven years of vigorous litigation, including extensive fact and expert discovery, motion to dismiss briefing before this Court and the Ninth Circuit, a motion for class certification, motion for summary judgment, and trial preparation. Under the Class Settlement Agreement, in exchange for a narrow release of the certified claims, the Class recovers $750,000, representing 150% of the maximum monetary relief available to it following the ruling on Wells Fargo's motion for summary judgment. Wells Fargo has also agreed to not oppose Class Counsel's attorneys' fees and expenses not to exceed $540,590, and to pay Class Representative service awards, and reasonable Class Notice and administrative costs.

The Settlement represents an excellent recovery for the Class—as indicated by the fact that as of October 16, 2017, there are no objections and only four opt-out requests (out of nearly 11,500 class loans).[2] *See* Declaration of Loree B. Kovach Implementation of Notice Program filed contemporaneously herewith ("Kovach Decl."), ¶¶16-17.

The requested award of attorneys' fees and expenses, which Wells Fargo has agreed to not oppose, is well within the range established by the case law. Class Counsel are entitled to the proposed award of attorneys' fees and expenses pursuant to the fee-shifting provision of the Rosenthal Fair Debt Collections Practices Act (the "Rosenthal Act"), California Code of

---

[1]   Capitalized terms have the same meaning as set forth in the Settlement Agreement.
[2]   The deadline to opt out or object to the Settlement is October 31, 2017. Pursuant to the Preliminary Approval Order (ECF No. 221), Plaintiffs will respond to any objections on or before November 16, 2017.

1    Civil Procedure §1021.5, and by agreement of the parties pursuant to the Settlement

2    Agreement. The Settlement provides that Wells Fargo will not oppose an award of attorneys'

3    fees and expenses up to $540,590.06. Plaintiffs' Counsel have prosecuted this action on a

4    completely contingent basis. Thus, and as detailed below, the attorneys' fees award (after

5    deducting the requested expenses) amounts to a fractional multiplier of 0.56 of Class

6    Counsel's time. When the requested fees are combined with the fees Wells Fargo has agreed to

7    pay in connection with the Class Representative's individual claims, Class Counsel will

8    receive 85% of their total lodestar.

9         As demonstrated below, the proposed Settlement is, under all circumstances, "fair,

10   reasonable and adequate" under Fed. R. Civ. P. 23(e)(2) and thus warrants final approval by

11   this Court. Finally, the Court should approve the negotiated amount of attorneys' fees and

12   expenses and class representative service awards.

13   **II.      HISTORY OF THE LITIGATION**

14        This Litigation has been hard-fought for seven years. It has involved extensive fact and

15   expert discovery, 92,000 pages of produced documents, 21 depositions, extensive motion

16   practice that includes pleadings attacks, class certification, and summary judgment, an appeal,

17   and trial preparation up through just before the start of trial. Rather than repeat it here,

18   Plaintiffs incorporate by reference the full recitation of the litigation history set forth in the

19   motion for preliminary approval and in the Declaration of Timothy G. Blood submitted with

20   that motion. *See Corvello*, ECF Nos. 214 (Motion for Preliminary Approval), 214-1 (Blood

21   Preliminary Approval Declaration).

22   **III.     THE SETTLEMENT MERITS FINAL APPROVAL**

23        The proposed Settlement is fair, reasonable and adequate and reflects careful

24   consideration by both Parties of the benefits, burdens, and risks associated with continued

25   litigation of the actions. Accordingly, Plaintiffs respectfully submit that this Court should grant

26   final approval of their Settlement Agreement and order that relief be given to the Class.

27        **A.     The Standards for Final Approval of Class Action Settlements**

28        Pursuant to Rule 23(e), after directing notice to all Class Members in a reasonable

manner and prior to granting final approval of a proposed settlement, the Court must conduct a fairness hearing and determine whether the settlement's terms, as a whole, are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (the court's role is to determine whether the settlement is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned"); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion."); *see generally Manual for Complex Litigation (Fourth)* §21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §11:41 (4th ed. 2002).[3]  In making its determination, "[i]t is neither for the court to reach any ultimate conclusion regarding the merits of the dispute, nor to second guess the settlement terms." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at *11-12 (N.D. Cal. Sept. 12, 2011) (citing *Officers for Justice*, 688 F.2d at 625).

Strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length and size of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits ….").

Several non-exhaustive factors are universally recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

---

[3]  Internal citations are omitted and emphasis is in original, unless stated otherwise.

1    experience and views of counsel; and (7) the reaction of the class members to the proposed

2    settlement. *See Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625.

3    Moreover, the Court should give a presumption of fairness to arm's-length settlements reached

4    by experienced counsel. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the

5    product of an arms-length, non-collusive, negotiated resolution"). Each of these factors fully

6    supports approval of the Settlement at hand.

7          **B.     The Settlement Agreement Is Fair, Reasonable and Adequate**

8         The Settlement is fair as to the Class, in that each Class Member will be paid an equal

9    share of $750,000 (the "Settlement Payments"). Agreement, §4.1. Each Settlement Payment

10   will be about $65, and possibly more depending on the number of additional opt outs. No one

11   will need to make a claim for his or her payment or take any other action in response to the

12   Class Notice. Instead, the Settlement Administrator will send checks by U.S. mail to each

13   Class Member. *Id.*, §2.2. The $750,000 total award represents 150% premium over the

14   $500,000 statutory damages cap provided for in the Rosenthal Act. The Settlement release

15   matches this award amount because it is limited to the Certified Claims. Class Members retain

16   their non-certified individual claims (subject to applicable statutes of limitations).

17        None of the $750,000 will be returned to Wells Fargo. For any money remaining after

18   distribution, either because of un-cashed checks or a Class Member cannot be located, the

19   amount of money will be redistributed pro rata to those Class Members who cashed their

20   Settlement Payment ("Redistributed Payments"), unless the Redistributed Payments would

21   amount to less than $5 per Class Member, in which case the leftover funds will be distributed

22   *cy pres*. Any monies remaining from the Redistributed Payment checks that are not negotiated

23   within 90 calendar days of issuance will be distributed as a *cy pres* award to the non-profit

24   Community Housing Council of Fresno ("CHC"). *Id.*, §9.2. CHC is a non-profit that provides

25   a variety of HUD approved education, advocacy and counseling services, which is

26   "specifically devoted to helping homeowners seeking mortgage modifications and facing

27   foreclosure." *See Corvello*, ECF No. 214-6 (Declaration of John Shore re Community Housing

28   Council of Fresno), ¶¶2-3; *see also id.*, ¶2 (CHC "is a HUD approved Housing Counseling

1    Agency for Default and Loss Mitigation Counseling."). CHC's education and advocacy is

2    provided to homeowners throughout California and beyond, and it would use any *cy pres*

3    distribution to "meet the high demand CHC continues to experience for mortgage default

4    education and counseling." *Id.*, ¶8. Here, CHC readily satisfies the requirements for a *cy pres*

5    award. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011).

C.    **The Settlement Was Reached After Serious, Informed, and Non-Collusive
      Arm's-Length Negotiations**

8    The Settlement was reached after extensive arm's-length settlement negotiations and

9    participation in settlement conferences with Magistrate Judge Corley. Settlements that are

10   products of such negotiations are considered presumptively fair and reasonable. *See In re*

11   *Immune Response Securities Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("[T]he fact

12   that the settlement agreement was reached in arm's length negotiations after relevant discovery

13   [has] taken place create[s] a presumption that the agreement is fair.") (quoting *Linney v.*

14   *Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal.

15   July 18, 1997) *aff'd*, 151 F.3d 1234 (9th Cir. 1998)); *see also Cohorst v. BRE Properties, Inc.*,

16   No. 3:10-CV-2666-JM-BGS, 2011 U.S. Dist. LEXIS 151719, at *35 (S.D. Cal. Nov. 14, 2011)

17   *report and recommendation adopted as modified*, 2012 U.S. Dist. LEXIS 5387 (S.D. Cal. Jan.

18   18, 2012) ("For example, voluntary mediation[s] before a retired judge [] are highly indicative

19   of fairness."); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480-SVW (FFMx), 2010

20   U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement

21   was reached through arms-length negotiation between experienced parties whose negotiations

22   were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

23   Here, counsel for the Parties each zealously negotiated on behalf of their clients' best

24   interests. Class Counsel, who are experienced in prosecuting complex class actions, had a

25   "clear view of the strengths and weaknesses" of their case, and thus were in a strong position

26   to make an informed decision regarding the reasonableness of a potential settlement. *Chun-*

27   *Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010). Despite their good-

28   faith efforts during the settlement conferences led by Magistrate Judge Corley, the Parties were

1   unable to find common ground, with Wells Fargo maintaining that it would not be prepared to

2   enter into meaningful settlement discussions until after summary judgment. Once the Court

3   issued its ruling on summary judgment, the Parties restarted settlement discussions. With a

4   clear view of the strengths and weaknesses of the claims, and after numerous discussions and

5   proposals, the Parties ultimately agreed to the proposed Settlement. Furthermore, the

6   experience of counsel and the fair result reached are illustrative of the arms-length negotiations

7   that led to the Settlement.

8       **D.     The Strengths of Plaintiffs' Case and Risks Inherent in Continued**
9              **Litigation Favor Approval**

10      Settlements resolve the inherent uncertainty on the merits, and are therefore strongly

11  favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950;

12  *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). This action is not unique in this

13  regard—the Parties disagree about the merits, and there is substantial uncertainty about the

14  Action's ultimate outcome. While Plaintiffs believe their case is strong, the Court's ruling on

15  Wells Fargo's motion for summary judgment struck a blow to the Class' request for remedies.

16  Nonetheless, the Settlement provides greater relief than the Class could receive after trial and

17  preserves a Class Member's ability to seek those other remedies.

18      Assuming the litigation proceeded rather than settled, the hurdles that Plaintiffs face

19  prior to a successful verdict at trial are substantial, and the potential upside, limited by the

20  remaining claims and remedies. The Court certified claims under the Rosenthal Act and the

21  UCL for class treatment. Nevertheless, as a result of the summary judgment order, only the

22  Rosenthal Act claim was left for the Class. *See Corvello*, ECF No. 203. The Court also

23  substantially limited this Rosenthal Act claim. The remedies under the Rosenthal Act include

24  statutory and actual damages, restitution, injunctive relief, a statutory penalty, and an award of

25  fees and expenses to the prevailing party. *See* Cal. Civ. Code §1788.17; 15 U.S.C. §1692k(a).

26  But any basis for recovering Plaintiffs' TPP payments as actual damages or restitution under

27  the Rosenthal Act was also foreclosed by the Court's order. While Plaintiffs sought damages

28  and restitution in an amount equaling Class Members' TPP payments, the Court found that a

1   refund of the TPP payments was not appropriate:

> 2   By making the TPP payments, the borrowers had the right to stay in their
> homes. The plaintiffs do not dispute that class members would have lost this
> 3   right if they hadn't made the TPP payments. But they have not presented any
> theory of restitution that accounts for this benefit…The potential ability of
> 4   borrowers to take advantage of Wells Fargo's institutional limitations by
> staying in their homes without making any payments could not possibly justify
> 5   restitution of the full TPP payment amounts.

6   Order at 5. Left without an ability to recover their TPP payments, the maximum potential

7   recovery for Class Members was a $500,000 statutory penalty award under the Rosenthal Act.

8       There was also some risk that Plaintiffs would not prevail on the merits of the

9   Rosenthal Act claim at trial. The Court's summary judgment order did not decide whether the

10   objective, least sophisticated borrower may have been deceived or misled by the TPP. Indeed,

11   Wells Fargo argued that its conduct complied with HAMP's supplemental directives and

12   Treasury's guidelines, that it was required by Treasury to use the TPP form at issue, and that

13   the TPP could not be reasonably read or interpreted to automatically provide all Class

14   Members with a permanent modification at the end of the three or four-month trial period.

15   According to Wells Fargo, because Class Members did not satisfy the TPP's requirements,

16   they could have no claim the TPP was deceptive. *See Corvello*, ECF No. 184 at 3.

17       Wells Fargo retained several experts in support of its arguments. Marcel Bryar, a

18   former Fannie Mae employee who oversaw HAMP's 2009 rollout to Wells Fargo and other

19   participating banks, testified about Treasury's goals and intentions with HAMP, as well as

20   HAMP's requirements for Wells Fargo. According to Mr. Bryar, Plaintiffs' interpretation of

21   the TPP "is inconsistent with HAMP's guidelines and the program's primary goal" and

22   Treasury intended to convey in the TPP that "borrowers were not guaranteed a permanent

23   modification, especially those borrowers who had not yet delivered the documentation

24   necessary to verify their income." Bryar Report, ¶¶17-18. Wells Fargo also retained Professor

25   Bruce Carlin, a consumer finance and financial literacy expert, who opined about rational

26   economic behavior, and the clarity and reasonable borrower interpretation of the TPP.

27   According to Professor Carlin, the TPP "clearly laid out the responsibilities of distressed

28   borrowers [and] the specific actions they had to undertake in order to be eligible for the

1    permanent HAMP modification." Carlin Report, ¶11. Professor Carlin also opined that "it was

2    unlikely that the least sophisticated debtor would conclude" that a TPP decision would be

3    rendered within three or four months, and in any event, it was rational for Class Members to

4    enroll in the TPP to delay foreclosure even though they knew they might not qualify for a

5    permanent modification. *Id.*, ¶¶11, 17.

6        Although a violation of the Rosenthal Act subjects Wells Fargo to a civil penalty of up

7    to $500,000 in a class action, the civil penalty that could be awarded is discretionary and no

8    award is automatic. *See* Cal. Civ. Code §1788.17; 15 U.S.C. §§1692k(a)-(b); *Gaudin v. Saxon*

9    *Mortg. Servs.*, 297 F.R.D. 417, 430 (N.D. Cal. 2013) ("Determining damages from the

10   proposed Rosenthal Act violation may not be as formulaic as Plaintiff suggests. The $500,000

11   statutory damages amount in 15 U.S.C. §1692k(a)(2)(B) is a ceiling rather than an automatic

12   entitlement."); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir.

13   2011) (affirming jury award of $112,500 to class members on a Rosenthal Act claim). Wells

14   Fargo disputes the evidence supporting the factors that would be considered in determining the

15   statutory damage award. *See* 15 U.S.C. §1692k(b)(2) (factors used to determine the

16   penalty amount include "the frequency and persistence of noncompliance … the nature of

17   noncompliance … and the extent to which the debt collector's noncompliance was

18   intentional"). Thus, even if Plaintiffs had prevailed on the merits there was no guarantee the

19   full Rosenthal Act statutory penalty would be awarded, or any at all.

20       Given the uncertainties and limited upside of continued litigation, this factor weighs in

21   support final approval of the Settlement Agreement.

22       **E.    The Risk, Complexity, Expense, and Duration of the Litigation Favor**
             **Approval**

23

24       The risk, expense, complexity, and duration of the case if litigated rather than settled

25   weighs heavily in favor of final approval of the Settlement. Given the posture of the Litigation

26   and the amount of the Settlement, there is little upside to continue litigation. The Settlement

27   achieves now more than the Class could reasonably hope to obtain in this case, absent success

28   on a risky and lengthy appeal. Meanwhile, significant risk exists, as shown by the Court's

1    ruling on Wells Fargo's motion for summary judgment.

2          Here, the proposed Settlement provides substantial benefits to all Class Members who

3    do not need to do anything to receive the Settlement Payments. The proposed Settlement

4    provides this guaranteed recovery for the Class, while obviating the risks and delays of

5    continued litigation, trial and appeal. *See Create-A-Card, Inc. v. INTUIT, Inc*., No. CV-07-

6    6452 WHA, 2009 U.S. Dist. LEXIS 93989, at *13 (N.D. Cal. Sept. 22, 2009). The expense,

7    complexity, and duration of litigation are significant factors considered in evaluating the

8    reasonableness of a settlement. Litigating this class action through trial would be time-

9    consuming and expensive, only to obtain less than is immediately available through the

10   Settlement. Indeed, should Class Counsel prosecute the Rosenthal Act claims against Wells

11   Fargo to conclusion there is a very real risk that Class Members may receive nothing. That a

12   settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See

13   Nobles v. MBNA Corp*., No. C 06-3723 CRB, 2009 U.S. Dist. LEXIS 59435, at *15 (N.D. Cal.

14   June 29, 2009) ("The risks and certainty of recovery in continued litigation are factors for the

15   Court to balance in determining whether the Settlement is fair."); *Kim v. Space Pencil, Inc.*,

16   No. C 11-03796 LB, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) ("The

17   substantial and immediate relief provided to the Class under the Settlement weighs heavily in

18   favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as

19   well as the financial wherewithal of the defendant.").

20         By reaching this Settlement, the Parties establish a means for prompt resolution of

21   Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful

22   benefits to Class Members. Given the alternative of continued, complex litigation before this

23   Court, the risks involved in such litigation that Class Members might get nothing, and the

24   possibility of further appellate litigation, the availability of prompt relief under the Settlement

25   is highly beneficial to the Class.

26         **F.      The Amount Achieved Under the Settlement Favors Approval**

27         The Settlement Agreement provides real and substantial relief for Class Members, who

28   do not need to do anything to receive the Settlement Payments. Indeed, the Settlement

1  Payments exceed the amount that could be obtained if trial was a complete success.

2  Nevertheless, in evaluating the fairness of the consideration offered in settlement, it is

3  not the role of the court to second-guess the negotiated resolution of the parties. "'[T]he

4  court's intrusion upon what is otherwise a private consensual agreement negotiated between

5  the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment

6  that the agreement is not the product of fraud or overreaching by, or collusion between, the

7  negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate

8  to all concerned.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting

9  *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not

10  whether the settlement could have been better in some fashion, but whether it is fair. *Id.*

11  "Settlement is the offspring of compromise; the question we address is not whether the final

12  product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

13  collusion." *Hanlon*, 150 F.3d at 1027.

14  **G.      Experience and Views of Counsel Favor Approval**

15  Courts recognize that the opinions of experienced counsel supporting a settlement,

16  especially after vigorous arm's-length negotiations, are entitled to considerable weight. *See*

17  *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1079 (C.D. Cal. 2010) (holding that

18  class counsel's views that settlement was reasonable weighed in favor of settlement); *Ellis v.*

19  *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd*, 661 F.2d 939 (9th Cir.

20  1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after

21  hard-fought negotiations is entitled to considerable weight.").

22  Class Counsel have substantial experience serving as class counsel in hundreds of

23  actions. Class Counsel's views and recommendations concerning the Settlement are the

24  product of thorough analysis and consideration of the issues and risks of continued litigation.

25  Class Counsel believes that the results achieved by the Settlement are eminently fair, adequate

26  and reasonable. *See* Blood Preliminary Approval Decl., ¶33.

27

28

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

### H.    The Reaction of the Class Members Favors Final Approval

2

Courts have likewise recognized that a favorable reaction by class members to the

3

proposed settlement strongly supports final approval. *See Chun-Hoon*, 716 F. Supp. 2d at 852

4

("The reaction of class members to the proposed settlement, or perhaps more accurately the

5

absence of a negative reaction, strongly supports settlement."). Class members must be

6

allowed the opportunity to review and object to both the preliminary notice of settlement and

7

the plaintiff's application for attorneys' fees prior to final approval. *See In re Mercury*

8

*Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010). If, after having a full

9

opportunity to object to all aspects of a settlement, no class members objected to or opted-out

10

of the settlement, then that is an important factor in evaluating the fairness of the settlement.

11

*See, e.g., Ozga v. U.S. Remodelers, Inc.*, No. C 09-05112 JSW, 2010 U.S. Dist. LEXIS 91196,

12

at *5 (N.D. Cal. Aug. 9, 2010) (in granting final approval of a settlement class, court

13

considered that the "overall reaction to the Settlement has been positive," there were no

14

objections to the Settlement and "[n]o Class Member appeared at the final approval hearing to

15

object"); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist.

16

LEXIS 67731, at *13 (S.D. Cal. July 7, 2010) (holding that "reaction of the class members

17

weighs in favor of granting final approval" where "not one class member has filed an objection

18

or a request for exclusion") (citing *In re Austrian & German Bank Holocaust Litig.*, 80 F.

19

Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that

20

fact can be viewed as indicative of the adequacy of the settlement.")).

21

Here, the reaction of Class Members is overwhelmingly positive. As of October 16,

22

2017, Class Counsel and the Settlement Administrator have not received any objections (and

23

none have been filed) and just four requests for exclusion (representing only about .0002% of

24

the Class). *See* Blood Final Approval Decl., ¶18; Kovach Decl., ¶¶16-17.[4] This should be

25

viewed as a positive reaction. *See, e.g., Galluci v. Boiron, Inc.*, No. 11cv2039 JAH (NLS),

26

2012 U.S. Dist. LEXIS 157039, at *19 (S.D. Cal. Oct. 31, 2012) ("The response of the Class

27

───────────────

28

[4]    "Blood Final Approval Decl." references the concurrently submitted Declaration of
Timothy G. Blood in Support of Motion for Final Approval of Class Action Settlement.

1  to this action, the certification of a class, and the Settlement ... strongly favors final approval of

2  the Settlement. Out of the estimated millions who received Notice [] only two class members

3  submitted valid requests for exclusion. Moreover, only three Objections were filed[.]");

4  *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS

5  160052, at *14, *17, *19 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class

6  electing to opt out weighed in favor of final approval and the adequacy of the amount offered

7  in settlement); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D.

8  Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement

9  raises a strong presumption that the terms of a proposed class settlement action are favorable

10  to the class members"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir.

11  2004) (affirming approval of a class action settlement where forty-five objections were

12  received out of 90,000 notices).

13      In sum, the Settlement is the product of arms'-length negotiations among the Parties,

14  well informed of the relative strengths and weaknesses of their claims and defenses. The

15  Settlement is fair, adequate and reasonable, and warrants final approval under Rule 23(e).

16  **IV.  CLASS NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS**

17      The notice provided to the Settlement Class was adequate and satisfies Rule 23 and all

18  other due process requirements. Rule 23 requires that "the court … direct to class members the

19  best notice that is practicable under the circumstances, including individual notice to all

20  members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The

21  notice must be reasonably calculated to apprise the Settlement Class of the pendency of the

22  settlement and afford them an opportunity to present their objections or opt-out. *See Eisen v.*

23  *Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*.,

24  339 U.S. 306, 315 (1950).

25      The Class Notice Plan provided under the Settlement was reasonably calculated to

26  apprise Settlement Class Members of the pendency of the Litigation and their right to object or

27  exclude themselves from the Settlement. This Court previously approved the form and manner

28  of Class Notice, which was modeled after and consistent with "The Federal Judicial Center's

1    'Illustrative' Forms of Class Action Notices." *See* http://www.fjc.gov/ (last visited October 16,

2    2017); *see also* Fed. R. Civ. P. 23 Advisory Committee Notes (2003) ("The Federal Judicial

3    Center has created illustrative clear-notice forms that provide a helpful starting point for

4    actions similar to those described in the forms."); *Johns v. Bayer Corp.*, No. 09cv1935 AJB

5    (DHB), 2013 U.S. Dist. LEXIS 14933, at *6 (S.D. Cal. Feb. 1, 2013) ("the form and

6    information contained within the notice is based on and consistent with the Federal Judicial

7    Center's notices and satisfy the requirements of Rule 23 and due process"). As detailed in the

8    concurrently filed declaration from the Settlement Administrator, the Class Notice Plan was

9    executed as previously detailed, and resulted in direct Mail Notice being sent to over 97% of

10   the Class. *See* Kovach Decl., ¶12. In addition, the Settlement Website and toll-free hotline

11   have been established and visited by Class Members. *Id.*, ¶¶13-14. The Class Notice Plan has

12   also resulted in Class Members reaching out to Class Counsel. Blood Final Approval Decl., ¶3.

13   **V.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF FEES AND**
14        **EXPENSES**

15        In exchange for a narrow release of UCL and Rosenthal Act claims, the Settlement

16   provides to Class Members the substantial benefits described above. The Settlement's benefits

17   were achieved only after years of litigation, which included a successful appeal before the

18   Ninth Circuit and prevailing at class certification. Moreover, the proposed fee and expense

19   award does not reduce Class Member's individual recoveries.

20        In diversity actions as here, "the Ninth Circuit applies state law [to] determine[] the

21   right to fees and the method for calculating fees." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 642

22   (S.D. Cal. 2011), *aff'd*, 473 Fed. Appx. 716 (9th Cir. 2012) (citing *Mangold v. Cal. Pub. Utils.*

23   *Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). Here, Class Counsel are entitled to an award of

24   attorneys' fees and expenses pursuant to the fee-shifting provision of Rosenthal Act, California

25   Code of Civil Procedure §1021.5, and pursuant to the terms of the Settlement Agreement.

26        **A.    Attorneys' Fees and Expenses Under the Rosenthal Act**

27        Pursuant to the Rosenthal Act's mandatory fee-shifting provision, "the prevailing party

28   shall be entitled to costs of the action" and "reasonable attorney's fees." Cal. Civ. Code

§1788.30(c); *see also Perez v. Ruben & Rosenthal, Inc.*, No. 13-cv-1024-CAB (RBB), 2014 U.S. Dist. LEXIS 192265, at *6 (S.D. Cal. Apr. 14, 2014) ("the Rosenthal Act provide[s] for a mandatory award of reasonable attorney's fees and costs to a successful claimant"). Courts apply such mandatory fee-shifting language "even where the litigation is resolved by a pretrial settlement agreement." *Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178-79 (2007) (fee-shifting provision under the CLRA); *see also Catala v. Resurgent Capital Servs. L.P.*, No. 08cv2401 NLS, 2010 U.S. Dist. LEXIS 63501, at *16 (S.D. Cal. June 22, 2010) (Rosenthal Act settlement).

Here, Class Counsel's efforts led to the Settlement that provides 150% of the maximum relief Class Members could have received after a successful trial and leaves Class Members with the ability to sue Wells Fargo for breach of the subject contract. Under these circumstances, Class Counsel are entitled to the reasonable fee award.

## B.  Attorneys' Fees and Expenses Under C.C.P. §1021.5

Class Counsel are also entitled to an award of attorneys' fees under the "private attorney general" doctrine codified at C.C.P. §1021.5. The private attorney general doctrine rests on the policy of encouraging private actions to vindicate important rights affecting the public interest. *Serrano v. Priest*, 20 Cal. 3d 25, 44-45 (1977). It recognizes that "'without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.'" *Ctr. for Biological Diversity v. Cal. Fish and Game Comm'n*, 195 Cal. App. 4th 128, 135 (2011).

In California, consumer protection actions have long been recognized as vital to the public interest. *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000). *See also Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 47 (2000) (consumer class actions perform "essential enforcement services" without which "it will otherwise be economic for defendants to increase injurious behavior"); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971). Many actions enforcing consumer rights under the UCL have resulted in §1021.5 fee awards. *Friedman v. 24 Hour Fitness USA, Inc.*, No. 06-cv-6282 AHM (CTx), 2010 U.S. Dist. LEXIS 143816, at *21-22 (C.D. Cal. July 12, 2010) (fee-shifting statutes and section 1021.5 supported

a fee award in connection with settlement in a RICO and UCL action challenging deceptive gym membership charges); *Amaral v. Cintas Corp., No. 2*, 163 Cal. App. 4th 1157, (2008) (fees awarded under section 1021.5 in UCL action challenging failure to pay a living wage); *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329, 377-78 (2017) (awarding fees under 1021.5 in UCL employment action); *Henderson v. J.M. Smucker Co.*, No. CV 10-4524-GHK (VBKx), 2013 U.S. Dist. LEXIS 87030, at *41 (N.D. Cal. June 19, 2013) (awarding fees under 1021.5 in UCL action challenging healthfulness representations of products containing trans fats); *see also Zhang v. Super. Ct.*, 57 Cal. 4th 364, 371 n.4 (2013) ("Although the UCL does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as a private attorney general under Code of Civil Procedure section 1021.5.").

The background of this Litigation is the foreclosure crisis that struck during the financial crisis following the bursting of the U.S. housing bubble in 2007. In response to the crisis, the Making Home Affordable program was created, of which HAMP was its centerpiece. *Corvello v. Wells Fargo Bank*, *NA*, 728 F.3d 878, 880 (9th Cir. 2013). This Litigation challenged unfair and deceptive conduct arising out of HAMP. Here, it is virtually axiomatic that the Litigation resulted in enforcement of an important right; namely the right of California borrowers to be provided with truthful and non-deceptive mortgage modification documents. *See Serrano v. Stefan Merli Plastering Co., Inc.*, 52 Cal. 4th 1018, 1026 (2011) ("'The enforcement of an important right affecting the public interest implies that [defendants] have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring enforcement through litigation.'"). By virtue of the enforcement of this important right, as well as the significant direct benefits this Settlement provides Class Members and this Litigation provided other borrowers, and the fact that private enforcement was necessary here due to the lack of governmental action on these issues, Class Counsel are entitled to an award of attorneys' fees under the private attorney general doctrine, C.C.P. §1021.5.

## C.     Attorneys' Fees and Expenses Under the Settlement Agreement

Finally, through the Settlement, the Parties entered into a contract where Wells Fargo has agreed not to oppose Class Counsel's request for a fee and expenses award of up to

1    $540,590.06. Agreement, §§10.1-10.2. Class Counsel are entitled to fees pursuant to this

2    agreement. California Code of Civil Procedure §1021. As this amount is a negotiated amount,

3    it reflects the amount Defendant is willing to pay and the amount Class Counsel is willing to

4    accept for they work they have performed.

5    **VI.     THE FEE AMOUNT SOUGHT IS REASONABLE**

6         Plaintiffs seek, and Defendant has agreed not to oppose, an award of attorneys' fees of

7    $440,641.00, which represents a fractional multiplier of 0.56 to Class Counsel's lodestar of

8    $780,682.75 during the Class Claims Period. Plaintiffs also seek reimbursement of $99,949.06

9    in expenses relating to the Class Claims Period.

10        **A.     The Lodestar Method Should Be Used to Calculate Attorneys' Fees**

11        Where, as here, there is a fee-shifting statute, the Ninth Circuit instructs district courts

12   to use the lodestar method to calculate reasonable attorneys' fees. *Camacho v. Bridgeport Fin.,*

13   *Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (FDCPA settlement; lodestar method must be used

14   "[w]hen a statute provides for such fees"); *Bankston v. Phycom Corp.*, No. C 07-3982 JF

15   (PVT), 2008 U.S. Dist. LEXIS 83073, at *8 (N.D. Cal. Sept. 25, 2008) ("In FDCPA and

16   RFDCPA cases, courts use the lodestar method to calculate attorneys' fees."); *Cuevas v. Check*

17   *Resolution Servs.*, No. 2:12-cv-00981 KJM KJN, 2013 U.S. Dist. LEXIS 71375, at *34 (E.D.

18   Cal. May 17, 2013) (same); *Torres v. Bernstein, Shapiro & Assocs., LLC*, No. 2:10-cv-2507

19   KJM DAD, 2012 U.S. Dist. LEXIS 87013, at *15 (E.D. Cal. June 21, 2012) (same); *see also*

20   *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003) (evaluating a proposed settlement,

21   stating "Under a fee-shifting statute, the court must calculate awards for attorneys' fees using

22   the lodestar method").

23        Using this method for calculating fees, the proposed award is fair and reasonable.

24        **B.     The Requested Fractional Multiplier Fee Award Is Reasonable**

25        Under the lodestar/multiplier method, trial courts first calculate the lodestar, consisting

26   of "***all*** the hours ***reasonably spent***, including those relating solely to the fee," times reasonable

27   hourly rates. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001); *see also Hensley v. Eckhart*,

28   461 U.S. 424, 433 (1983). Although the lodestar figure "presumptively provides an accurate

1    measure of reasonable attorney's fees," that figure may be augmented or multiplied to reflect

2    additional factors in determining a reasonable attorney fee award. *Harris v. Marhoefer*, 24

3    F.3d 16, 18 (9th Cir. 1994); *Hensley*, 461 U.S. at 429; *Kerr v. Screen Extras Guild, Inc.*, 526

4    F.2d 67, 70 (9th Cir. 1975); *Ketchum*, 24 Cal. 4th at 1138 ("the unadorned lodestar reflects the

5    general local hourly rate for a ***fee-bearing*** case; it does ***not*** include any compensation for

6    contingent risk, extraordinary skill, or any other factors a trial court may consider"). When

7    determining the multiplier, trial courts should consider all factors relevant to a given case.

8    *Lealao v. Beneficial California*, 82 Cal. App. 4th 19, 40 (2000). The purpose of using the

9    lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on

10   straight hourly fees that are payable only if they win, so an enhancement helps determine a fee

11   that is commensurate with what attorneys could expect to be compensated for similar service

12   in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal.

13   App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to

14   undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50 (adjusted lodestar

15   should not be significantly different from the percentage fee freely negotiated in comparable

16   litigation). In determining the multiplier, courts have considered a range of relevant factors. *Id.*

17   at 40. The factors California courts have looked to include:

18   • the benefits obtained or the results achieved (*City of Oakland v. Oakland
         Raiders*, 203 Cal. App. 3d 78, 80 (1988); *Lealao*, 82 Cal. App. 4th at 41;
19       *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 838 (2001));

20   • the novelty and difficulty of the questions involved and the skill displayed in
         presenting the issues (*Serrano*, 20 Cal. 3d at 49);

21   • the contingencies involved in prosecuting the action and obtaining fees (*id.*;
         *Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 583 (2004));

22   • the delay in receiving fees (*Graham*, 34 Cal. 4th at 583; *City of Oakland*, 203
         Cal. App. at 85);

23   • the promptness of resolution (*Lealao*, 82 Cal. App. 4th at 52; *In re Vitamin
         Cases*, 110 Cal. App. 4th 1041, 1058-59 (2003));

24   • the multiplier that will result in a reasonable percentage of the value of the
         settlement (*Chavez v. Netflix*, 162 Cal. App. 4th 43, 63 (2008)); and

25   • the "public service element ... and motivation to represent consumers and
         enforce laws." *State of California v. Meyer*, 174 Cal. App. 3d 1061, 1073
26       (1985); *Thayer*, 92 Cal. App. 4th at 839 (meager fee awards will discourage
         able counsel from engaging in public interest litigation, which should be
27       encouraged).

28

"Multipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001). The court in *Glendora Cmty. Redev. Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *SternwestCorp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (multiplier of 3.65); *Keith v. Volpe*, 501 F. Supp. 403, 414 (C.D. Cal. 1980) (multiplier of 3.5); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *4-5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3).

In this case, Class Counsel are seeking an amount that is less than their lodestar. Class Counsel's lodestar during the Class Claims Period is $440,641.00, based on 1,323.60 hours of work. *See* Blood Final Approval Decl., ¶9; Fredman Final Approval Decl., ¶9; Loeser Final Approval Decl., ¶13.[5] Accordingly, based on just Class Counsel's time, the requested $440,641.00 fee award would represent a fractional multiplier of 0.56.[6] In fact, this does not even take into account the lodestar of the other Plaintiffs' Counsel. In light of the exceptional results obtained, the efficiency with which the case was litigated, the risk, difficulty and the public service rendered by this action and the work on the approval process, settlement and *cy pres* administration, and potential appeals, the requested fee is fair and reasonable.

## 1. The Hourly Rates Are Reasonable

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the forum where the

---

[5]     "Fredman Final Approval Decl." and "Loeser Final Approval Decl." reference the concurrently submitted declarations of co-Class Counsel, Peter Fredmand and Thomas Loeser.
[6]     Class Counsel's total lodestar and expenses throughout the entire Litigation (*i.e.*, time and expenses relating not just to the Class Claims Period) are $3,323,570.00 and $211,896.36, respectively. Thus, for both the Class and individual settlement agreements, Class Counsel would receive 85% of their aggregate lodestar. *See* Blood Final Approval Decl., ¶17; Fredman Final Approval Decl., ¶¶9, 12; Loeser Final Approval Decl., ¶¶9, 16.

district court sits is recognized as the "relevant community." *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Thus, Plaintiffs' Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133. *See also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which 'reasonable market value' is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount to which attorneys of like skill in the area would typically be entitled.") (citations omitted).[7]

Class Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See, e.g.*, Blood Final Approval Decl., ¶8 (citing cases); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2014 U.S. Dist. LEXIS 162106, at *192 (S.D. Cal. Nov. 18, 2014) (approving hourly rates of Blood Hurst & O'Reardon, LLP as "typical rates for attorneys of comparable experience"); *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. 175515, at *54-55 (N.D. Cal. Dec. 19, 2016) (approving as "in line with market rates of this district" the hourly rates of Hagens Berman: $525-$950 for partners; $250-$605 for associates; $300-$350 for staff and contract attorneys; and $125-$265 for translators, paralegals and paralegal assistants).[8]

Class Counsel's rates also compare very favorably with rates approved by other trial

---

[7] An attorney's actual billing rate for similar work is presumptively appropriate. *See Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

[8] *See also Hartless v. Clorox Company*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (approving BHO's hourly rates: "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMC), 2013 U.S. Dist. LEXIS 163118, at *22-23 (S.D. Cal. Nov. 14, 2013) (approving hourly rates of BHO as "fall[ing] within typical rates for attorneys of comparable experience"); *Johnson v. General Mills, Inc.*, No. SACV 10-006 CJC (ANx), 2013 U.S. Dist. LEXIS 90338, at *19-21 and n.3 (C.D. Cal. June 17, 2013) (approving hourly rates and time spent by BHO, stating "[t]he Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates") (citing BHO's firm resume).

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

00127101

courts in class action litigation, and by what attorneys of comparable skill charge in the Northern District of California. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 76093, at *726 (N.D. Cal. May 17, 2017) (approving "billing rates ranging from $310 to $1,650 for partners, $185 to $850 for associates, and $125 to $450 for paralegals"); *Nitsch v. DreamWorks Animation SKG, Inc.*, No. 14-CV-04062-LHK, 2017 U.S. Dist. LEXIS 86124, at *31-33 (N.D. Cal. June 5, 2017) (approving partner rates up to $1,200 as fair and reasonable for the relevant community); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (approving hourly rates of $475-$975 for partners, $300-$490 for associates, and $150-$430 for paralegals); Blood Final Approval Decl., Ex. 2 (the 2014 National Law Journal Billing Survey provides the following for San Francisco-based firms: Morrison & Foerster ($595-$1,195 for partners, and $230-$725 for associates); and Cooley ($660-$990 for partners, and $335-$640 for associates)). Finally, Class Counsel have submitted sworn declarations attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this Litigation. *See* Declarations of Class Counsel.

### 2.     The Hours Expended Are Reasonable

The number of hours spent by Class Counsel is reasonable. The requested fee is for work performed during the time periods coinciding with work exclusively on behalf of the Class (the "Class Claims Period"), and not the time spent in whole or part on Plaintiffs' individual claims, which is subject to the fee provisions of the individual settlement agreements disclosed in the Blood Preliminary Approval Declaration. *See Corvello*, ECF No. 214-1.

The Litigation has lasted seven years and involved hard-fought litigation involving significant motion practice and discovery, including motions to dismiss, class certification and summary judgment, the production and subsequent analysis of approximately 92,000 pages of documents, 21 depositions, and the use of seven experts. *See* Blood Preliminary Approval Decl., ¶¶10-11, 16. The first portion of the Class Claims Period (from approximately June

1  2015 – July 2016) encompasses a period of substantial litigation: class certification briefing,

2  including supplemental briefing requested by the Court, briefing in response to Wells Fargo's

3  motion for clarification of the certification order, oral argument before this Court, and

4  contested motions for approval of notice of pendency and for leave to file a first amended

5  complaint to conform to the class certification order. *See Corvello*, ECF Nos. 75-81, 96-98,

6  104, 111, 115, 123, 125, 127, 129, 132, 134, 143, 153, 158, 160. The second portion of the

7  Class Claims Period encompasses the period from when the motion for preliminary approval

8  was filed (June 30, 2017) through the present, and includes oral argument on preliminary

9  approval, class member communications and settlement administration, and final approval

10  matters. *See Corvello*, ECF Nos. 214-215, 217, 219. Thus, the 1,323.60 total hours spent by

11  Class Counsel during the Class Claims Period is reasonable.[9]

12        Moreover, Class Counsel's work is not yet done. Class Counsel still need to:

13  (1) prepare for and attend the final approval hearing, which will include research and drafting

14  of the reply papers and response to objectors, if any; (2) oversee the claims administration

15  process, including addressing any claim review issues and monitoring payments to the

16  Settlement Class; and (3) handle any appeals. If there are appeals, hundreds of thousands of

17  dollars of additional attorney time may be incurred. None of this additional time will be

18  compensated.

19        **3.**      **The Requested Fees Are Reasonable in Light of the *Kerr* Factors**

20        In considering the reasonableness of attorneys' fees under a lodestar calculation, courts

21

22  [9]      Counsel need only submit summaries of their hours incurred; submission of billing records are not required. *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez*, 162 Cal. App. 4th at

23  64 ("timesheets are not required of class counsel to support fee awards in class action cases."); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may

24  rely on summaries of the total number of hours spent by counsel); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at n.3 (citing *Lobatz* and approving class counsel's hours without detailed

25  billing records, stating "the hours spent by counsel do not appear to be unreasonable in light of the extensive litigation … and other time-intensive tasks"); *POM Wonderful, LLC v. Purely*

26  *Juice, Inc.*, No. CV 07-2633 CAS (JWJx), 2008 U.S. Dist. LEXIS 110460, at *10-11 (C.D. Cal. Sept. 22, 2008); *Hemphil v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D.

27  Cal. 2004) (declining review of detailed time records where no evidence of collusion); s*ee also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's

28  reliance on time summaries of counsel proper).

consider the novelty and complexity of the litigation, skill and experience of counsel and the results obtained. *Kerr*, 526 F.2d at 70*; Blum*, 465 U.S. at 898-900; *Foos v. Ann, Inc*., No. 11cv2794 L (MDD), 2013 U.S. Dist. LEXIS 136918, at *11-12 (S.D. Cal. Sept. 24, 2013) ("After computing the 'lodestar,' the district court may then adjust the figure upward or downward taking into consideration [*Kerr*'s] twelve 'reasonableness' factors").

As demonstrated by the pleadings battle which went to the Ninth Circuit and resulted in a landmark opinion, the motion for class certification, which required several rounds of briefing, the large amount of fact and expert discovery, and Wells Fargo's motion for summary judgment, this Litigation concerned a number of complex legal and factual issues.

As demonstrated in Class Counsel's firm resumes, Class Counsel are experienced and skilled class action attorneys specifically in consumer litigation. *See Corvello*, ECF Nos. 117-19, 117-20, 117-21. Prosecuting consumer class actions such as this requires counsel with experience in class action litigation, and state consumer protection laws. Class Counsel have this experience. *Id.*

The skill and competence of opposing counsel should be considered. *See*, *e.g.*, *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that plaintiff's counsel faced "established and skillful defense lawyers"); *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (same). Wells Fargo is represented by a team of experienced attorneys from K&L Gates LLP, a firm skilled in class action defense and litigation. The K&L Gates team was headed by Irene Freidel, David Christensen, and Jennifer Nagle, partners in the firm's Boston office, whose practice focuses on complex litigation, with an emphasis on consumer finance litigation.[10]

An award of $440,641.00 for attorneys' fees is reasonable and should be approved.

### C.    Plaintiffs' Expenses Are Reasonable and Compensable

California and the Ninth Circuit allow recovery of litigation costs in the context of class action settlements. *See Staton*, 327 F.3d at 974; *Serrano*, 20 Cal. 3d at 35; *Rider v. San*

---

[10]    As of July 1, 2017, Ms. Freidel is no longer at K&L Gates.

1   *Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (1992); *see also* H. Newberg & A. Conte, *Newberg on*

2   *Class Actions*, §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable

3   expenses that would typically be billed to paying clients in non-contingency matters." *In re*

4   *Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v.*

5   *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

6       Class Counsel have submitted declarations attesting to the expenses incurred in this

7   Litigation—in the aggregate, $211,896.36 was invested over the more than seven years spent

8   on this Litigation.[11] In connection with this Settlement, Class Counsel request reimbursement

9   for $99,949.06 in out-of-pocket expenses relating to the Class Claims Period. As detailed in

10  their declarations, Class Counsel incurred these costs for, *inter alia*, electronic litigation

11  database support, filing fees, travel, computer research, photocopies, postage, transcripts, and

12  telephone charges. All of these expenses were reasonably and necessarily incurred, and are of

13  the sort that would typically be billed to paying clients in the marketplace. *See In re Immune*

14  *Response Sec. Litig.*, 497 F. Supp. 2d at 1177-78 (awarding as reasonable and necessary,

15  reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone,

16  and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class

17  action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Beane v.*

18  *Bank of N.Y. Mellon*, No. 07 Civ. 09444 (RMB), 2009 U.S. Dist. LEXIS 27504, at *25-26

19  (S.D.N.Y. Mar. 31, 2009) (awarding as "properly chargeable to the Settlement Fund" because

20  they "are the type for which the paying, arms' length market reimburses attorneys"

21  reimbursement for court fees, photocopying and reproduction, deposition transcripts, postage

22  and messenger services, transportation and lodging, telephone bills, and expert and electronic

23  litigation database support). Thus, Class Counsel's application for reimbursement of

24  $99,949.06 in expenses should be approved.

25

26

27

28

---

[11]      *See* Blood Final Approval Decl., ¶12; Fredman Final Approval Decl., ¶12; Loeser Final Approval Decl., ¶16.

1

**D.      The Class Representative Service Awards Should Be Approved**

2      "Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958

3 (citing 4 William B. Rubenstein, et al., *Newberg on Class Actions* §11:38 (4th ed. 2008); *see*

4 *also Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010) (same). The

5 Ninth Circuit recognizes that service awards "are intended to compensate class representatives

6 for work done on behalf of the class, to make up for financial or reputational risk undertaken in

7 bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

8 general." *Rodriguez*, 563 F.3d at 958-59; *see also Edwards v. National Milk Producers*

9 *Federation*, No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214, at *42 (N.D. Cal. June 26,

10 2017) ("Service awards for class representatives are provided to encourage individuals to

11 undertake the responsibilities of representing the class and to recognize the time and effort

12 spent on the case."). Service awards are committed to the sound discretion of the trial court

13 and should be awarded based upon the court's consideration of, *inter alia*, the amount of time

14 and effort spent on the litigation, the duration of the litigation and the degree of personal gain

15 obtained as a result of the litigation. *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294,

16 299 (N.D. Cal. 1995).

17      Here, Class Counsel respectfully request that the Court approve a service award of

18 $5,000 to each of the Class Representatives in recognition of their contributions toward the

19 successful prosecution of this litigation. Plaintiffs Corvello and Jackmon have devoted

20 substantial time and effort to this Litigation. Plaintiffs have participated in the discovery

21 process, provided written responses to requests, repeatedly checked for and provided requested

22 documents, sat for their depositions, and despite the length history of this Litigation, requested

23 and continued to receive litigation updates on almost a monthly basis. Plaintiffs were prepared

24 and committed to devoting substantial time to the upcoming trial as well. *See* Declaration of

25 Phillip R. Corvello in Support of Application for Service Award; Declaration of Amira

26 Jackmon in Support of Application for Service Award; *see also* Blood Preliminary Approval

27 Decl., ¶¶13-14;. Further, Wells Fargo does not oppose the payment of these service awards.

28 Agreement, §10.3.

00127101

The requested service award falls squarely in line with amounts awarded in comparable cases. For instance, affirming $5,000 service awards to each of nine class representatives, the Ninth Circuit observed that "[t]he amount sought and awarded was relatively small, well within the usual norms of modest compensation paid to class representatives for services performed in the class action." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015); *see also e.g.*, *Faiman v. AT&T Mobility, LLC*, No. C06-04622 MHP, 2011 U.S. Dist. LEXIS 15825, at *15 (N.D. Cal. Feb. 16, 2011) ("incentive payments of $5,000 are presumptively reasonable"); *In re Simon v. Toshiba America*, No. C 07-06202 MHP, 2010 U.S. Dist. LEXIS 42501, at *12-13 (N.D. Cal. Apr. 30, 2010) ("In this district, incentive payments of $5,000 are presumptively reasonable."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving $5,000 incentive awards); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class) (compiling cases); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1330 (W.D. Wash. 2009) ("When compared to service awards in other cases, the $7,500 payments requested here are justified."); *Van Vranken*, 901 F. Supp. at 300 (approving service award of $50,000); *Edwards*, 2017 U.S. Dist. LEXIS 145214, at *42-43 ("the requested awards of $5,000 each are well within the usual norms of modest compensation paid to class representatives").

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement, and approve Class Counsel's application for attorneys' fees and expenses and service awards for the Plaintiffs.

Respectfully submitted,

Dated: October 16, 2017

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
PAULA R. BROWN (254142)

By:          *s/ Timothy G. Blood*
             TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
pbrown@bholaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN (Pro Hac Vice)
THOMAS E. LOESER (202724)
1918 Eighth Avenue, Suite 330
Seattle, WA  98101
Tel: 206/623-7292
206/623-0594 (fax)
steve@hbsslaw.com
toml@hbsslaw.com

LAW OFFICE OF PETER FREDMAN PC
PETER B. FREDMAN (189097)
125 University Ave., Suite 102
Berkeley, CA  94710
Tel: 510/868-2626
510/868-2627 (fax)
peter@peterfredmanlaw.com

*Class Counsel*

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

00127101

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 16, 2017.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

Case No. 3:10-cv-05072-VC
Case No. 3:11-cv-03884-VC

00127101

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT